## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | | |
|---|---|---|
| MARILYN MOORE, et al., individually and on behalf of all others similarly situated | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 3:18-cv-00410 |
| WESTGATE RESORTS, LTD., et al. | ) ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Westgate Resorts, Ltd., L.P. a/k/a Westgate Resorts, Ltd., Central Florida Investments, Inc., Westgate Resorts, Inc., Westgate Marketing, LLC, Westgate Vacation Villas, LLC, and CFI Resorts Management, Inc. (collectively, where appropriate, "Westgate" or "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), and 12(f), respectfully submit this brief in support of their motion to dismiss this action due to lack of personal jurisdiction for certain of the Defendants and for failure to state a claim as to certain claims, and their motion to strike Plaintiffs' class allegations and jury demand.

## I.
## INTRODUCTION

Named Plaintiffs are six individuals or married couples, who own timeshare interests in the Westgate Smoky Mountain Resort in Gatlinburg, Tennessee (the "Resort").[1] Half the Plaintiffs are serial purchasers at the Resort, having read, had explained and signed the transaction documents two or more times. They attempt to assert numerous claims arising from allegations that Defendants misrepresented and failed to disclose facts in connection with their

---

[1] All parties who have generally appeared have agreed to stipulate to dismissal of claims by Plaintiffs Robert Self and Doris Lashay Smith under Rule 21. The stipulation will be filed in the immediate future.

individual purchases, and then breached the contracts by denying Plaintiffs use of the Resort, including in the aftermath of a fire that destroyed a significant percentage of the Resort.

As set forth below, several Defendants are improper parties because they have no connection to Plaintiffs' allegations, and the Court lacks personal jurisdiction. Plaintiffs' claims are also nothing more than individualized attempts to avoid contractual obligations under valid, binding agreements. Their claims are baseless, as Plaintiffs signed documents that conspicuously establish Plaintiffs' allegations are false, making it impossible to assert claims for which relief may be granted. Plaintiffs' civil conspiracy allegations also fail to state a claim because there was no unlawful act, and Plaintiffs have failed to adequately allege any agreement among the Defendants. Most of Plaintiffs' other claims are also barred by the statutes of limitations, and contractual disclosures conclusively negate their tolling theories.

Finally, Plaintiffs improperly seek to certify a class of timeshare owners based on highly individualized—and indeed unique—allegations of unjust enrichment, fraud, misrepresentation, and breach of contract. These class allegations involve individual issues spanning over a decade that predominate over common questions, cannot support class certification, and should be dismissed and stricken. Plaintiffs have also improperly demanded a trial by jury, as each of the Plaintiffs signed an enforceable jury waiver, and their jury demand should be stricken.

## II.
## STATEMENT OF FACTS[2]

### A.     Jurisdictional Facts

Westgate Resorts, Ltd.[3] is the developer of the Resort.[4]  The Resort is composed of

---

[2] Other than the jurisdictional facts, and the actual contract documents referenced by Plaintiffs in their Complaint, both of which are supplied by Defendants, the Statement of Facts is taken from Plaintiffs' Original Complaint. Defendants take these allegations as true only for purposes of this Motion.
[3] Incorrectly named as "Westgate Resorts, Ltd., L.P. a/k/a Westgate Resorts, Ltd."
[4] *See* Exhibit A (Affidavit of John Willman).

2

vacation accommodation units in which owners, like Plaintiffs, purchase a deeded fractional interest, and based on that ownership, may stay at the Resort, subject to certain terms and conditions.[5]  Westgate Marketing, LLC provides sales and marketing services for the Resort, including employing the individuals who discuss potential ownership with prospective owners.[6]  CFI Resorts Management, Inc. manages the Resort, including the service for timeshare owners to make reservations to stay at the Resort.[7]

Westgate Resorts, Inc., Westgate Vacation Villas, LLC, and Central Florida Investments, Inc. are improper parties who have no connection to Plaintiffs' allegations and over whom this Court lacks personal jurisdiction.  More specifically, Westgate Resorts, Inc. is the general partner of Westgate Resorts, Ltd.; it is incorporated in Florida and has its principal place of business in Florida, and it has no contacts with Tennessee, other than that it is the general partner of Westgate Resorts, Ltd.[8]  Westgate Vacation Villas, LLC is organized in Florida and its members are citizens of Florida, and it has no contacts with Tennessee.[9]  Central Florida Investments, Inc. is the parent company to Westgate Resorts, Ltd.[10]  It is incorporated in Florida and has its principal place of business in Florida, and it has no minimum contacts with Tennessee.[11]

**B.**     **Timeshare Plaintiffs**

**i.  Named Plaintiff Marilyn Moore**

Plaintiff Marilyn Moore ("Moore") is a Tennessee resident who initially purchased a timeshare interest at the Resort in August 2008.[12]  She was initially satisfied, but in 2010 and

---

[5] *See* Exhibit A (Affidavit of John Willman).
[6] *See* Exhibit A (Affidavit of John Willman).
[7] *See* Exhibit A (Affidavit of John Willman).
[8] *See* Exhibit A (Affidavit of John Willman).
[9] *See* Exhibit A (Affidavit of John Willman).
[10] *See* Exhibit A (Affidavit of John Willman).
[11] *See* Exhibit A (Affidavit of John Willman).
[12] *See* DE32 at ¶ 69.

2011, she claims to have had difficulty making reservations.[13] On November 16, 2012, Moore upgraded her unit.[14] In November 2013, Moore again upgraded her unit.[15] She alleges Defendants told her the unit would be available anytime with proper advance notice.[16] She also alleges that no one disclosed to her that the Resort was allegedly "oversold"[17] or that the timeshare interests she purchased were "floating use" plans.[18] Moore conveniently omits that the worst natural disaster in Tennessee history destroyed a significant percentage of the Resort in 2016, which obviously had some effect on availability of accommodations.[19] She also claims Defendants failed to disclose the Public Offering Statement and her rescission right, claiming that Defendants—*for 1 of her 3 purchases*—hid those documents in a secret pocket.[20]

Although Moore references important documents relating to her 3 nearly identical purchases, she neither attaches nor incorporates those documents. Those documents establish that her factual allegations are false, as she signed her name adjacent to conspicuous disclosures negating her allegations. More specifically, she signed a Contract on November 19, 2013, which states that she is purchasing an "All Season – Float Week / Float Unit."[21] The Contract provides, in all capital letters, directly above her signature, that she had a right to rescind the Contract.[22] The second page of the Contract included an acknowledgement that she had received the Public Offering Statement.[23] The Contract also contains a jury waiver.[24] Moore also signed a separate Receipt for documents, acknowledging she received documents in paper form and on a CD-

---

[13] *See* DE32 at ¶ 71.
[14] *See* DE32 at ¶ 73.
[15] *See* DE32 at ¶ 76.
[16] *See* DE32 at ¶ 70.
[17] *See* DE32 at ¶ 70; 73.
[18] *See* DE32 at ¶¶ 70-71; 73; 75.
[19] *See* Exhibit A (Affidavit of John Willman).
[20] *See* DE32 at ¶ 74; 76-77.
[21] *See* Exhibit B (Moore Contract for Purchase and Sale). Moore executed substantially similar documents for her prior timeshare purchases from Westgate Resorts, Ltd.
[22] *See* Exhibit B (Moore Contract for Purchase and Sale).
[23] *See* Exhibit B (Moore Contract for Purchase and Sale).
[24] *See* Exhibit B (Moore Contract for Purchase and Sale).

4

ROM, including the Public Offering Statement.[25]  That same document again disclosed the right to rescind.[26] Moore also signed an Acknowledgement in which she initialed the following:

1. I understand the idea of interval ownership.

9. I have read and understand the terms and conditions of the Purchase Agreement and all closing documents.

10. I understand that the occupancy limit of my accommodations at The Resort is. . . .

    1 BEDROOM DELUXE          1 BEDROOM GRAND

    FRI-SAT-SUN BASED ON AVAILBILITY     All Seasons – Float Week / Float Unit

12. I understand that by participating in the Floating Use Plan I am not entitled to the use of the specific Unit for the specific Unit Week owned, but rather that the possession and use rights are released in consideration for receiving the right to make a reservation under the Floating Use Plan.[27]

On May 19, 2014, Westgate Resorts, Ltd. recorded a General Warranty Deed conveying the timeshare interest to Moore.[28]

### ii.  Named Plaintiffs Ryan and Laura Spado

Plaintiffs Ryan and Laura Spado ("Spado") are South Carolina residents who initially purchased a timeshare interest at the Resort in July 2008.[29]  In 2010, the Spados used the timeshare, but claim it was not the correct unit.[30]  In August 2010 and July 2012, the Spados upgraded their unit.[31]  The Spados' remaining allegations are similar to Moore's.[32]  Like Moore, the Spados reference important documents relating to their 3 nearly identical purchases, but they neither attach nor incorporate them.  Those documents establish that the Spados' factual allegations are false; they signed adjacent to conspicuous disclosures negating their allegations.

---

[25] *See* Exhibit C (Moore Receipt for Timeshare Documents).
[26] *See* Exhibit C (Moore Receipt for Timeshare Documents).
[27] *See* Exhibit D (Moore Acknowledgement of Representations).
[28] *See* Exhibit E (Moore Deed)
[29] *See* DE32 at ¶ 62.
[30] *See* DE32 at ¶ 64.
[31] *See* DE32 at ¶¶ 64; 65.
[32] *See* DE32 at ¶¶ 66, 67, 63.

The Spados' Contract was dated July 6, 2012,[33] and Westgate Resorts, Ltd. recorded a Deed to them on July 5, 2013.[34]

### iii.  Named Plaintiff Cynthia Loveless

Plaintiff Cynthia Loveless ("Loveless") is a Tennessee resident who purchased a timeshare interest at the Resort on September 27, 2015.[35]  Loveless' remaining allegations are similar to Moore's,[36] except that she also claims Defendants produced a credit card authorization form with a signature that she denies was hers.[37] Like the others, Loveless references important documents relating to her purchase, but she does not attach or incorporate them.  Those documents establish that Loveless' factual allegations are false; she signed adjacent to conspicuous disclosures negating her allegations.  Loveless' Contract was dated September 27, 2015,[38] and Westgate Resorts, Ltd. recorded a Deed to her on September 28, 2015.[39]

### iv.  Named Plaintiffs Ellen & Larry Gilliland

Plaintiffs Ellen and Larry Gilliland ("Gilliland") are Florida residents who initially purchased two timeshare interests at the Resort on December 14, 2015.[40] They claim Defendants incorrectly told them they could refinance the mortgage on their purchase, but that they were unable to do so.[41]  Their remaining allegations are similar to Moore's.[42]  Like other Plaintiffs, Gilliland reference important documents relating to their purchases, but they do not attach or

---

[33] *See* Exhibit F (Spado Contract); Exhibit G (Spado Receipt); Exhibit H (Spado Acknowledgement).  The Spados also reference a Foreclosure and Trade Addendum, which informed them that the interest they purchased could not be deeded until Westgate received the interest from a pending trade-in or foreclosure against another owner.  *See* DE32 at ¶ 67; *see also* Exhibit I (Spado Addendum).
[34] *See* Exhibit J (Spado Deed)
[35] *See* DE32 at ¶ 81.
[36] *See* DE32 at ¶ 81-83.
[37] *See* DE32 at ¶ 85.
[38] *See* Exhibit K (Loveless Contract); Exhibit L (Loveless Receipt); Exhibit M (Loveless Acknowledgement).  Ms. Loveless also signed a Data Entry Review form which conspicuously referenced that she was purchasing a Floating Use Plan, and that her use of the Resort was subject to availability.  *See* Exhibit N (Loveless Data Entry Review).
[39] *See* Exhibit O (Loveless Deed)
[40] *See* DE32 at ¶ 87.
[41] *See* DE32 at ¶ 88-89.
[42] *See* DE32 at ¶¶ 90-94.

incorporate any of the documents. Those documents establish that the Gilliland's factual allegations are false; they signed adjacent to conspicuous disclosures negating their allegations. The Gillilands' first Contract was in December 2015,[43] their upgraded second contract was dated May 24, 2016,[44] and Westgate Resorts, Ltd. recorded a Deed to them on June 21, 2016.[45]

### v. Named Plaintiffs Gerold Gallegos and Deborah Campbell

Plaintiffs Gerold Gallegos and Deborah Campbell ("Gallegos") are Texas residents who purchased a timeshare interest at the Resort on October 4, 2017.[46] They claim they attempted to rescind their purchase for a refund,[47] but that they were unable to successfully do so.[48] Their remaining allegations are similar to Moore's.[49] Like other Plaintiffs, Gallegos references important documents relating to their purchase, but they do not attach or incorporate those documents. Those documents establish that Gallegos' factual allegations are false; they signed adjacent to conspicuous disclosures negating their allegations. Gallegos' Contract was dated October 4, 2017,[50] and Westgate Resorts, Ltd. recorded a Deed to Gallegos on October 5, 2017.[51]

### vi. Named Plaintiffs Brian and Danyelle Miller

Timeshare Plaintiffs Brian and Danyelle Miller ("Miller") are Illinois residents who purchased a timeshare interest at the Resort on March 23, 2018.[52] Miller's remaining allegations are similar to Moore's.[53] Like other Plaintiffs, Miller references important documents relating to

---

[43] *See* Exhibit P (Gilliland Contract); Exhibit Q (Gilliland Receipt); Exhibit R (Gilliland Acknowledgement). They also signed a Data Entry Review form which conspicuously referenced that they were purchasing a Floating Use Plan, and that their use of the Resort was subject to availability. *See* Exhibit S (Gilliland Review).
[44] *See* Exhibit T (Gilliland Contract); Exhibit U (Gilliland Receipt); Exhibit V (Gilliland Acknowledgement).
[45] *See* Exhibit W (Gilliland Deed)
[46] Gallegos incorrectly state the purchase date as September 30, 2017. *See* DE32 at ¶ 96.
[47] Curiously, Gallegos and Campbell allege that they attempted to rescind their purchase on October 1, 2017 [sic]; three days before they ever purchased the timeshare interest.
[48] *See* DE32 at ¶¶ 104-105.
[49] *See* DE32 at ¶¶ 100, 102-103, 106.
[50] *See* Exhibit X (Gallegos Contract); Exhibit Y (Gallegos Receipt); Exhibit Z (Gallegos Acknowledgment).
[51] *See* Exhibit AA (Gallegos Deed).
[52] *See* DE32 at ¶ 116.
[53] *See* DE32 at ¶¶ 119-123.

7

their purchase, but they do not attach or incorporate those documents. Those documents establish that Miller's factual allegations are false; they signed adjacent to conspicuous disclosures negating their allegations. Miller's Contract was dated March 23, 2018,[54] and Westgate Resorts, Ltd. recorded a Deed to Miller on March 26, 2018.[55]

## C.    Proposed Class

With limited exceptions Plaintiffs seek to represent a class of similarly situated individuals defined as:

> All residents of the United States and its territories who purchased from Westgate a "floating use plan" vacation timeshare property at the Westgate Smoky Mountain Resort at Gatlinburg since September 25, 2008.[56]

## III.
## ARGUMENT

## A.    Rule 12(b)(2): Lack of Personal Jurisdiction Over Certain Defendants

General personal jurisdiction may exist "even if the action is unrelated to the defendant's contacts with the state," *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005), and it is generally determined by the defendant's "place of incorporation and principal place of business," *First Comm. Bank, N.A. v. First Tenn. Bank*, N.A. 489 S.W. 3d (Tenn. 2015).   Alternatively, general jurisdiction may exist in exceptional cases where a defendant's operations in a particular forum may be "so substantial and of such a nature as to render the corporation at home in that State."   *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014); *First Comm. Bank*, 489 S.W.3d at 385 (company "that operates in many places can scarcely be deemed at home in all.").

Specific jurisdiction exists only "when a defendant has minimum contacts with the forum state and the cause of action arises out of those contacts," *id.* (citing *Goodyear Dunlap Tires*

---

[54] *See* Exhibit BB (Miller Contract for Purchase and Sale); Exhibit CC (Miller Receipt for Timeshare Documents); Exhibit DD (Miller Acknowledgment of Representations).
[55] *See* Exhibit EE (Miller Deed).
[56] *See* DE32 at ¶ 124.

*Ops. v. Brown*, 564 U.S. 915 (2011)), and a nonresident corporation is "subject to specific personal jurisdiction" only where there is a showing that "sufficient minimum contacts exist," *First Comm. Bank*, 489 S.W. 3d at 388.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Intera*, 428 F.3d at 615 (quoting *S. Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Under the constitutional standard, the Court must consider whether each defendant "has purposefully targeted Tennessee to the extent that the defendant should reasonably anticipate being haled into court [there]." *First Comm. Bank*, 489 S.W. 3d at 389.

A plaintiff carries the burden of proof on jurisdictional facts and must "set forth specific facts that support a finding of jurisdiction… [since] the complaint must have 'established with reasonable particularity' those specific facts that support jurisdiction." *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 251 (6th Cir. 2009) (quotations omitted). Boilerplate and conclusory allegations are never sufficient to meet Rule 8's pleading standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (general standard); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (same); *Palnik*, 344 F. App'x at 251 (jurisdiction).

Plaintiffs have failed to sufficiently allege jurisdictional facts to establish that Westgate Resorts, Inc., Westgate Vacation Villas, LLC, or Central Florida Investments, Inc. are subject to personal jurisdiction in Tennessee. As set forth above and in the attached affidavit, these Defendants do not, as a matter of fact, have sufficient contacts with Tennessee to be subject to personal jurisdiction in Tennessee. Westgate Resorts, Inc. is the general partner of Westgate Resorts, Ltd., but otherwise has no involvement with the allegations of this case or contacts with

9

Tennessee. Under Tennessee law, a limited partnership is itself an entity, and its general partner may be a separate entity; the general partner is not deemed to be doing business in Tennessee solely because it is the general partner of an entity that does business in Tennessee. TENN. CODE ANN. § 61-2-902(3)(b). Thus, the contacts Westgate Resorts, Ltd. has with Tennessee are not imputed to Westgate Resorts, Inc., and it is not subject to personal jurisdiction.

Westgate Vacation Villas, LLC's sole business is as a separate resort in Florida, and its manager is Westgate Resorts, Inc. Neither it nor Westgate Resorts, Inc. have any involvement with the allegations of this case or contacts with Tennessee, other than that Westgate Resorts, Inc. is the general partner of Westgate Resorts, Ltd. Because Westgate Resorts, Ltd.'s contacts with Tennessee cannot be imputed to Westgate Resorts, Inc., those contacts certainly cannot be imputed to Westgate Vacation Villas, LLC. TENN. CODE ANN. § 61-2-902(3)(b). For the foregoing reasons, Westgate Vacation Villas, LLC is not subject to personal jurisdiction.

Finally, Central Florida Investments, Inc. is the ultimate parent company of Westgate Resorts, Ltd., but otherwise has no involvement with the allegations of this case or contacts with Tennessee. In Tennessee, a parent corporation is presumed to be treated as a separate entity. *See McConkey v. McGhan Medical Corp*., 144 F.Supp.2d 958, 962 (E.D. Tenn. 2000). This presumption is only overcome "upon a showing that the corporation is a mere sham or dummy." *Id*. Here, there are insufficient allegations and no evidence from which the Court could conclude that Westgate Resorts, Ltd. is a sham or dummy corporation. Accordingly, its corporate existence should not be disregarded, its Tennessee contacts should not be imputed to Central Florida Investments, Inc., and Central Florida Investments, Inc. is not subject to personal jurisdiction.

**B.       Rule 12(b)(6): The Complaint Should be Dismissed for Failure to State a Claim**

Plaintiffs' allegations fail to state a claim because the contracts at issue establish that Defendants did not violate the Tennessee Timeshare Act, that no fraudulent statements or misrepresentations were made, and that Defendants did not breach the contracts. Plaintiffs' unjust enrichment claims also fail because there are express contracts governing Plaintiffs' relationships with Defendants, and their civil conspiracy claims fail because there were no unlawful acts and because Plaintiffs failed to adequately allege any agreement among Defendants. Many of Plaintiffs' claims are also barred by the applicable limitations periods.

### 1. Rule 12(b)(6): Pleading Standards

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. A "sheer possibility that the defendant has acted unlawfully" is insufficient, and "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555-56. To avoid dismissal, the complaint must contain factual allegations that plausibly give rise to an entitlement to relief. *Id.* at 679.

When examining the merits of a Rule 12(b)(6) motion, the complaint's factual allegations are accepted as true and construed most favorably to the plaintiff. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). While "well-pleaded" factual allegations are accepted as true, the Court does not have any obligation to accept as true unwarranted factual inferences, non-factual allegations of the elements of a cause of action, or legal conclusions. *Iqbal,* 556 U.S. at 678-79; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Further, the Court is not "constrained

to accept as truth conflicting pleadings . . . contradicted either by statements in the complaint itself or by documents upon which its pleadings rely." *Jimmerson v. Wilson & Associates, PLLC*, No. 15-1020, 2015 WL 1888636, at *3 (W.D. Tenn. Apr. 24, 2015)(quoting *In re Livent, Inc. Noteholders Secs. Litig.,* 151 F.Supp.2d 371, 405 (S.D.N.Y.2001)). Further, "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Creelgroup, Inc. v. NGS Am., Inc.,* 518 F. App'x 343, 347 (6th Cir.2013) (quoting *Williams v. CitiMortgage, Inc.,* 498 F. App'x 532, 536 (6th Cir.2012)).[57]

**2. Plaintiffs' Claims are Barred by Underlying Contracts/ Disclosures**

Where a plaintiff alleges claims that are contradicted by a written contract to which the plaintiff is a party, then the claims fail as a matter of law and should be dismissed. *See, e.g., DBI Investments, LLC v. Blavin*, 617 Fed. Appx. 374, 384-87 (6th Cir. 2015) (applying Michigan law). Tennessee law is substantially similar to the Michigan law applied in *Blavin*. *See Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 892 (Tenn. Ct. App. 2000) ("the provision of the agreement says what it means and means what it says"); *accord Ingram v. Cendant Mobility Fin. Co.*, 215 S.W.3d 367 (Tenn. Ct. App. 2006) (same result where written contract expressly disclaims reliance on alleged oral representations); *Stiers v. State Farm Ins.*, No. 3:11-CV-437, 2012 WL 2405982, *6-7 (E.D. Tenn. 2012) (unjust enrichment claim fails where there is an express contract); *Doe v. HCA Health Serv. of Tenn., Inc.*, 46 S.W.3d 191 (Tenn. 2001) (same).

Here, all the Plaintiffs' Contracts provide—on the first page, in plain language—that they

---

57. *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (court may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.); *see also Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327, at 762 (2d ed. 1990)) (Where a plaintiff fails to attach an instrument to the complaint, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim.).

are purchasing a floating use plan.[58]  The Contracts also provide—on the first page, in all capital letters, and directly above the Plaintiffs' signatures—that the Contracts may be rescinded.[59]  In addition to the Contracts, each of the Plaintiffs executed Receipts, reciting in short and plain terms that they received the Public Offering Statement and other documents, and often reciting again that they have a right to rescind their Contracts.[60]  Plaintiffs also signed Acknowledgements where they initialed next to specific statements, written in layman's terms, confirming that they understand interval ownership and the floating use plan, specifically that they are releasing their right to reserve a specific unit in exchange for the ability to make a reservation in the floating use plan, *subject to availability*.[61]  These undisputed documents form the underlying agreements between Plaintiffs and Defendants—indeed, Plaintiffs invoke them when they assert breach of contract claims—but these documents completely refute Plaintiffs' allegations of oral misrepresentations, that Defendants hid documents, that Defendants failed to disclose material facts, and that Defendants delayed in deeding the timeshare interests.  As in *DBI Investments, LLC v. Blavin*, these documents—which are referenced in Plaintiffs' Complaint and are central to their allegations—defeat Timeshare Plaintiffs' claims as a matter of law.  For the foregoing reasons, Plaintiffs Tennessee Timeshare Act claims (Count I and II), unjust enrichment claims (Count III), fraudulent misrepresentation and fraudulent inducement (Count IV and V), negligent misrepresentation (Count VI), and breach of contract claims (County VII and VIII) should be dismissed for failure to state a claim.

### 3. Civil Conspiracy Allegations Fail to State a Claim

---

[58] *See* Exhibit B (Moore Contract); Exhibit F (Spado Contract); Exhibit K (Loveless Contract); Exhibit P (Gilliland Contract); Exhibit T (Gilliland Contract); Exhibit X (Gallegos Contract); Exhibit BB (Miller Contract).

[59] *See id.*

[60] *See* Exhibit C (Moore Receipt); Exhibit G (Spado Receipt); Exhibit L (Loveless Receipt); Exhibit Q (Gilliland Receipt); Exhibit U (Gilliland Receipt); Exhibit Y (Gallagos Receipt); Exhibit CC (Miller Receipt).

[61] *See* Exhibit D (Moore Acknowledgement); Exhibit H (Spado Acknowledgement); Exhibit M (Loveless Acknowledgement); Exhibit R (Gilliland Acknowledgement); Exhibit V (Gilliland Acknowledgement); Exhibit Z (Gallegos Acknowledgement); Exhibit DD (Miller Acknowledgement).

4260064.1

"An actionable civil conspiracy is a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703 (Tenn. 2002). Civil conspiracy, standing alone and without an underlying tort, is not actionable. *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 179-80 (Tenn. Ct. App. 2007). Because Plaintiffs' allegations fail to state a claim for the alleged underlying causes of action, *see* discussion *supra*, Plaintiffs' civil conspiracy allegations also fail to state a claim.

Further, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Thus, "pleading requirements governing civil conspiracies are relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *see also Fremont Reorganizing Corp. v. Duke*, 811 F.Supp.2d 1323, 1341-42 (E.D. Mich. 2011) (allegations of wrongdoing by multiple defendants are insufficient to state a conspiracy absent factual allegations of an agreement among them). Plaintiffs generically allege all Defendants had an agreement to commit unlawful acts, but Plaintiffs do not allege any facts forming the basis of their allegation that an agreement existed. Accordingly, Plaintiffs have failed to state a claim for civil conspiracy (Count IX).

4. **Plaintiffs' Claims are Barred by Limitations**

Limitations defenses may be raised in a motion to dismiss when it is apparent from the face of the complaint that the limitations period has passed. *See, e.g., Hoover v. Langston Equipment Assocs.*, 958 F.2d 742, 744 (6th Cir. 1992). It is clear from the face of Plaintiffs'

complaint that many of their claims are untimely, and Plaintiffs' attempts to invoke the discovery rule, fraudulent concealment, and equitable estoppel are insufficient to toll limitations.

a.    Applicable Limitations Periods

Claims for civil conspiracy are subject to a one-year statute of limitations. TENN. CODE ANN. § 28-3-10; *see also Braswell v. Carothers*, 863 S.W.2d 722, 725 (Tenn. Ct. App. 1993). Such claims accrue when an overt act in furtherance of the alleged conspiracy causes damage. *Withrow v. First Tenn. Bank Nat'l Ass'n*, No. 3:04-CV-546, 2006 WL 2981295, *3 (E.D. Tenn. Oct. 16, 2006) (citing *Budget Rent-A-Car v. Car Servs.*, 469 S.W.2d 360, 362 (Tenn. 1971)). Claims for fraudulent misrepresentation, fraud in the inducement, and negligent misrepresentation are subject to a three-year limitations period. *Precision Tracking Sol., Inc. v. Spireon, Inc.*, 2014 WL 3058396, 4 (E.D. Tenn. 2014) (citing *Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977)); *see also* TENN. CODE ANN. § 28-3-105. Similarly, the limitations period for unjust enrichment claims is determined by the gravamen of the complaint, and a three-year limitations period applies where, as here, the alleged harm was caused by fraud or misrepresentations. *Id.* Breach of contract claims must be commenced within six years of when the cause of action accrued. TENN. CODE ANN. § 28-3-109(a)(3).

b.    Applicable Statute of Repose Limitations

Claims under the Tennessee Timeshare Act ("TTA") must be commenced within four years of the date of the purchase contract at issue, even if the payment obligations extend past that date. TENN. CODE ANN. § 66-32-119. This is a statute of repose because it runs from the date of the contract of purchase, without regard to discovery. *See generally*, *Damron v. Media Gen., Inc.*, 3 S.W. 3d 510 (M.D. Tenn. 1999). In an analogous context, Tennessee courts have rejected the proposition that fraudulent concealment can toll the Products Liability Act's statute

of repose due to the "absence of language affirming the supplemental nature of equitable principles and the failure to specifically amend the statue to except fraudulent concealment." *Hayes v. General Motors Corp.*, 94 F. 3d 644 (W.D. Tenn. 1996). Similarly, where TTA contains other exceptions, such as breaches of ongoing contractual obligations, clauses of fraudulent concealment remain wholly absent from the timeshare chapter. Hence, "although presented with the opportunity, the legislature did not include fraudulent concealment as an exception." *See id.* As such, claims under the TTA are barred after four years from the date the product was first purchased and cannot be extended by Plaintiffs' tolling theories (detailed further below). *See Spence v. Miles Lab., Inc.*, 810 F. Supp. 952, 958 (E.D. Tenn. 1992).

c.  Discovery Rule, Fraudulent Concealment, & Equitable Estoppel

The Tennessee "discovery rule" may equitably toll limitations such that "a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012). This is generally referred to "constructive notice" or "inquiry notice," because the limitations period begins to run once a plaintiff gains information sufficient to alert a reasonable person of the need to investigate an injury. *Id.* The discovery rule does not apply to contract actions. *Dean Witter Reynolds, Inc. v. McCoy*, 853 F. Supp. 1023, 1036 (E.D. Tenn. 1994).

Equitable estoppel is synonymous with fraudulent concealment. *See, e.g., Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883 (6th Cir. 2004). It is an exception to the general rule that ignorance or failure to discover the existence of a cause of action does not toll limitations. *Mackey v. Judy's Foods, Inc.*, 654 F. Supp. 1465, 1484 (M.D. Tenn. 1987). To

16

invoke this theory, a plaintiff must establish: (1) the defendant took affirmative action to conceal the cause of action or failed to disclose material facts despite a duty to do so; (2) the plaintiff could not have discovered the cause of action despite reasonable care and diligence; and (3) the defendant had knowledge of the facts giving rise to the cause of action. *Pero's Steak & Spaghetti House v. Lee*, 80 S.W.3d 614 (Tenn. 2002). If the party "might, with ordinary care and attention, have reasonably detected it, he reasonably had actual knowledge of it." *Mackey*, 654 F. Supp. at 1484-85. To plead this exception, plaintiffs must allege the diligence employed and the circumstances of Plaintiff discovering the claim, and the delay in asserting the claim must be consistent with the required diligence. *Id.* at 1485. Even if the delay is justified, suit still must be filed within a reasonable time after discovery. *Brick Church Trans., Inc. v. So. Pilot Ins. Co.*, 140 S.W.3d 324, 336 (Tenn. Ct. App. 2003).

      d.     <u>Plaintiffs' Claims Barred By Limitations</u>

Plaintiff Moore's TTA claims, unjust enrichment claims, fraud and misrepresentation claims, and civil conspiracy claims are all barred by the applicable statutes of limitations. Moore signed three contracts with Westgate from 2008 to November 2013, the last of which was signed more than four years before she filed suit on September 25, 2018. Following the limitations set forth by the statute of repose, Plaintiff's claims of point of sale fraud arising from her Contract signed more than four years before the filing of the Complaint are time-barred without regard to the discovery rule or allegations of fraudulent concealment.

Even assuming *arguendo* that this Court does not apply the statute of repose, Plaintiff's claims are still time-barred. Any alleged violation of the TTA would have occurred on or about the time she signed the contract, the alleged fraud and misrepresentations would have occurred prior to that time, and any conspiracy would have been consummated at that time. Further, the

discovery rule does not toll the limitations periods because—if the facts were as Moore alleged, which Defendants deny—she was or should have been on notice of her claims since her first purchase in 2008. Then, in 2010, she alleges she could not secure a reservation, and from that time forward, she was or should have been on notice that Westgate had provided her false information, failed to disclose certain information, or was not going to honor her requests for reservations. Despite all this, Moore upgraded her timeshare interest in November 2012, and she claims she was still unable to secure a reservation thereafter such that she certainly was or should have been on notice of her claims since November 2012. If that was not enough, she upgraded again in November 2013, undeniably putting her on notice of her claims since at least that time.

Similarly, fraudulent concealment and equitable estoppel do not toll the limitations periods. More specifically, despite Moore's allegations, it is clear that Westgate disclosed all the documents and information she claims to have not received, since she signed conspicuous disclosures indicating she received same. At a minimum, Moore had inquiry notice that she should have investigated if she believed she did not have all the documents for which she provided a signed acknowledgment. Thus, Westgate did not take affirmative action to conceal any cause of action or fail to disclose material facts. Further, Moore could have discovered any alleged concealment, and she actually alleges she was aware of a problem in 2010, yet she did nothing until she filed suit in September 2018. She certainly has not alleged the diligence she exercised, how she was unable to discover her causes of action despite that diligence, or when she discovered her causes of action. Accordingly, the applicable limitations periods were not tolled, and it is apparent from the face of Moore's Compliant that her claims are barred by limitations (Counts I, II, III, IV, V, VI, IX). Named Plaintiffs Spados' claims are nearly identical to Moore's claims—they purchased in 2008, had complaints in 2010, and upgraded in 2010 and

2012—and their claims are similarly barred by the applicable statutes of limitations (Counts I, II, III, IV, V, VI, IX).

With respect to Named Plaintiffs Cynthia Loveless (late 2015 purchase), the Gillilands (late 2015 purchase), and Gallegos (September 30, 2017 purchase), they made their initial purchases within three years of filing suit. However, they allege they became aware of problems immediately—Loveless claims she could never make a reservation, the Gillilands claim they upgraded six months later after realizing they did not purchase what they thought they had and could not reserve what they expected, and Gallegos claims he tried to cancel his purchase the following day. Loveless and the Gillilands knew or should have known of their claims in 2016, including that multiple entities were involved in the timeshare transactions, yet they did not file suit until September 25, 2018. Gallegos knew or should have known of their claims on October 1, 2017, yet they did not file suit until December 21, 2018. Accordingly, these Plaintiffs' conspiracy claims are barred by limitations (County IX).

## C.     Rule 12(b)(6) and Rule 12(f): Class Allegations Should Be Dismissed and/or Stricken

For the reasons set forth above, Plaintiffs' Complaint should be dismissed in its entirety. However, to the extent the Court finds Plaintiffs have adequately pled any of their claims, Plaintiffs' class allegations should separately still be dismissed and/or stricken because the claims, as alleged, are not appropriate for class treatment.

The Rule 12(b)(6) standard is set forth above. A Rule 12(f) motion to strike class allegations is also permissible. *See, e.g., Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) (striking class allegations on deceptive marketing claim). In *Pilgrim*, the Sixth Circuit noted that Rule 23(c)(1)(A) directs the court to decide whether to certify a class "at an early practicable time," and nothing in the rules requires the court to wait on a motion by the

plaintiff.  *Id.* at 949 (citing 7AA Charles Allen Wright et al., *Federal Practice & Procedure* § 1785; *Vinole v. Country Home Loans, Inc.*, 571 F.3d 935, 941-44 (9th Cir. 2009); *Cook County College Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 884-85 (7th Cir. 1972)); *see also Smith v. Bayer Corp. (In re Baycol Prods. Litig.)*, 593 F.3d 716, 721 n. 2 (8th Cir. 2010). Although a determination on class certification may be deferred to allow discovery "if the existing record is inadequate," *In re Am. Med. Sys.*, 75 F.3d 1069, 1096 (6th Cir. 1996), that proposition does not apply when it is clear from the face of the complaint that a proposed class cannot satisfy Rule 23's requirements. *See, e.g., Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) (collecting cases).

Courts have stricken class allegations when, for example, the claims are governed by too many different states' laws, *Pilgrim*, *supra*, and when individual issues predominate, *Bearden, supra*.  In *Bearden*, the court noted in a products liability case that unjust enrichment claims are not appropriate for class treatment because there must be an individualized assessment for each purchaser to determine whether the benefit he conferred was unjust in relation to what he received, or the injury he sustained.  2010 WL 1223936 at *10-11.

As to Plaintiffs' Tennessee Timeshare Act claims (Counts I and II), Defendants' standard transactional documents make disclosures and disclaimers in compliance with the Act.  To the extent Timeshare Plaintiffs may be able to state a claim individually that they did not receive the documents they acknowledged receiving in writing—which is denied—such a claim is inappropriate for class treatment because there would have to be an individual assessment as to what the salesperson stated to the purchaser, whether the form disclosures and disclaimers were used, and whether documents were provided; this is not a situation where form documents establish a universal violation.  Notably, Plaintiffs' First Amended Complaint contemplates that

at least some named Plaintiffs' closing documents were not in the alleged secret pocket, and that other named Plaintiffs and that at least some putative class members were informed of the documents that Plaintiffs complain they were not given. DE32 at ¶¶74, 77 (removing allegations that Spados' documents were in "secret" pocket); ¶¶96-106 (no "secret" pocket allegations as to Gallegos & Campbell; they acknowledge receiving CD with their documents); DE32 at ¶ 57 (adding allegation that "at various times" Class Members may not have received documents). Moreover, it is not plausible that Defendants have thousands of purchasers acknowledge receipt of documents not provided, yet only a handful of purchasers claim to have not received the documents. These allegations should be dismissed and/or stricken.

As to Plaintiffs' unjust enrichment claims (Count III), Plaintiffs will have to establish the absence of a contract—which is absurd given their breach of contract claims and the clear existence of the contracts—in addition to establishing that Plaintiffs conferred a benefit on Defendants, that Defendants appreciated that benefit, and that it would be inequitable for Defendants to retain that benefit. *See, e.g., Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). This necessarily involves an individualized inquiry as to what the putative class members—the purchasers—were told when they purchased, what their contracts state, whether they were able to make reservations at the Resort,[62] whether they used the Resort's accommodations or other benefits, and the alleged harm. Such individualized inquiries are inappropriate for class treatment because common questions do not predominate. *See, e.g., Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) (striking class allegations of unjust enrichment); *Crouch v. Bridge Terminal Transp., Inc.*, No. M2001-00789-COA-R3-CV, 2002 WL 772998 (Tenn. Ct. App. 2002) (affirming denial of class certification for quasi-contract claims).

---

[62] *See* Exhibit A (Affidavit of John Willman).

Similarly, as to Plaintiffs' fraud and misrepresentation claims (Counts IV, V, and VI), Plaintiffs would have to prove, *inter alia*, that Defendants, in thousands of unique, face-to-face sales presentations made by hundreds of different salespersons, made representations or failed to disclose material facts when they had a duty to do so, that the putative class members—the purchasers—relied on those misrepresentations or omissions, that they were harmed, and the degree to which they were harmed. *See, e.g., Metro. Gov't of Nashville & Davidson Cty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992) (fraud); *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000) (misrepresentation).

Unsurprisingly, the Tennessee Supreme Court has held that fraud and misrepresentation claims are generally inappropriate for class treatment under Tennessee law because common questions do not predominate.[63] *See, e.g., Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311-13 (Tenn. 2008) (whether fraud claim is suitable for class treatment depends on the representations made; oral misrepresentations inappropriate for class treatment) (citing *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 189 (3rd Cir. 2001)); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (affirming denial of class certification because individual reliance was at the factual core of a class wide fraud claim); *see also Gov. Emp. Ins. Co. v. Bloodworth*, No. M2003-02986-COA-R10-CV, 2007 WL 1966022, *2 (Tenn. Ct. App. 2007) (vacating class certification in fraud and misrepresentation claims).[64]  Given the elements of the fraud and misrepresentation claims, the fact that the alleged fraud and misrepresentations consist of oral statements and not standardized documents, the lack of uniformity of the alleged fraud

---

[63] The predominance requirement in Federal Rule of Civil Procedure 23 and Tennessee Rule of Civil Procedure 23.02(3) are substantially similar and authorities from one jurisdiction are persuasive in the other. *Gov. Emp. Ins. Co. v. Bloodworth*, 2007 WL 1966022, *2 (Tenn. Ct. App. 2007).

[64] In other contexts, courts have dismissed class allegations involving similarly individualized assessments. *See, e.g., Haynes v. Harris*, No. 01A01-9810-CV-00518, 1999 WL 317946, * 2-3 (Tenn. Ct. App. 1999) (dismissing class allegations of a conspiracy to interfere with civil rights); *Brown v. Tenn. Title Loans, Inc.*, 328 S.W.3d 850 (Tenn. 2010) (dismissing class allegations under Tennessee Consumer Protection Act).

and misrepresentations even amongst the Named Plaintiffs, the issue of reliance, and the issue of harm, class treatment is inappropriate. Plaintiffs' class allegations for fraud and misrepresentation claims should be dismissed and/or stricken

With respect to Plaintiffs' breach of contract claims, they must establish that Defendants materially breached the contracts. *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). This necessarily involves an assessment of the timeshare interest each putative class member purchased—there are many options and variations[65]—what the contract requires with respect to reserving the Resort, an individualized assessment of what reservations Plaintiffs requested, and what accommodations were provided, to determine if there was a material breach. Thus, Plaintiffs' class allegations for breach of contract claims should be dismissed for failure to state a claim and stricken because common issues do not predominate.

Finally, as to all of these claims, Plaintiffs seek class certification for purchases occurring as early as 2008. As noted above, many of the Named Plaintiffs' claims are barred by limitations, and certainly any claims for any class members arising as early as 2008 would be barred by limitations. The fact that Plaintiffs seek to certify a class that necessarily includes individuals whose claims, if any, would be barred by limitations, and the fact that Plaintiffs' proposed putative class members would necessarily have to allege and establish individualized theories to toll limitations, further underscores that Plaintiffs' claims are not appropriate for class treatment and their claims should be dismissed and stricken.

Finally, Plaintiffs' class allegations should be stricken because the allegations are nothing more than an attempt to extort a large settlement. As discussed above, documents for the Named Plaintiffs establish that Plaintiffs signed contractual disclosures defeating their claims as a matter of law. At least two circuits have rejected class treatment, even where it might otherwise be

---

[65] *See* Exhibit A (Affidavit of John Willman).

justified, when seemingly meritless claims are asserted to obtain a class certification and seek a blackmail settlement. *See, e.g., In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995); *Castano v. American Tobacco Co.*, 84 F.3d 734, 746 (5th Cir. 1996).

**D.      Rule 12(f): Jury Demand Should Be Stricken**

As noted above, each of the Plaintiffs' Contracts include a jury waiver.[66]  A party may contractually waive its Seventh Amendment right to a jury trial, and federal law governs the enforcement of a jury waiver. *Westgate GV at the Woods LLC v. Dickson*, No. 10-03269-CV-S-DGK, 2010 WL 4721245, *2 (W.D. Mo. Nov. 15, 2010) (citing *Simler v. Conner*, 372 U.S. 221, 222 (1963)) (ruling on motion to strike jury demand based on identical contract and identical jury waiver).  Waivers must be "knowingly and voluntarily" to be valid. *Id.* (citing *Popular Leasing USA, Inc. v. Nat'l Restoration Sys., Inc.*, No. 4:04-CV-01629, 2005 WL 2033423, *2 (E.D. Mo. Aug. 23, 2005)).  In the Sixth Circuit, the party seeking to avoid waiver bears the burden of proving that the lack of knowing and voluntary consent. *Id.* (citing *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir. 1985)).

Courts consider various factors to determine whether a party's waiver was knowing and voluntary, including whether the waiver is on a standardized form agreement, font size and type, set off in a paragraph of its own, in a take-it-or-leave-it or negotiated contract, and the length of the contract. *Id.*  The Eastern District of Missouri has found the same waiver at issue in this lawsuit to be knowing and voluntary. *Id.* at *2-3 (preprinted, standardized, take-it-or-leave-it contract with waiver on reverse side did not bar enforceability; 10 days to rescind and months to review earlier contracts, provision being separated in its own subparagraph under an unambiguous paragraph heading, and entire contract being two pages long all suggest valid

---

[66] *See* Exhibit B (Moore Contract); Exhibit F (Spado Contract); Exhibit K (Loveless Contract); Exhibit P (Gilliland Contract 12-14-2015); Exhibit T (Gilliland Contract 5-24-2016); Exhibit X (Gallegos Contract); Exhibit BB (Miller Contract).  *See also* Exhibit A (Affidavit of John Willman) (all contracts since at least 2008).

waiver). Courts have also considered and rejected arguments that this same waiver provision is not knowing and voluntary based on the unsophistication of the purchaser and alleged unequal bargaining power. *Id.*; *Advantage Windows, Inc. v. Zacarias*, No. E2014-00122-COA-R3-CV, 2014 WL 4403106, *4 (Tenn. Ct. App. Sept. 8, 2014) (contracting party presumed to have knowledge of contract's contents). For the foregoing reasons, Plaintiffs' jury waivers were knowing and voluntary, and therefore enforceable, and Plaintiffs' jury demand should be stricken.

## IV.
## CONCLUSION

For the foregoing reasons, Defendants request that this Court dismiss this action.

Respectfully submitted this 25th day of January, 2019.

**WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER, PLLC**

By: *s/ Robert L. Vance*
    Gregory C. Logue (BPR #012157)
    Robert L. Vance (BPR #021733)
900 Riverview Tower, 900 S. Gay Street
Knoxville, TN 37902-1810
Telephone: (865) 215-1000
Facsimile: (865) 215-1001
glogue@wmbac.com
bvance@wmbac.com

**GREENSPOON MARDER, LLP**
Richard W. Epstein, Esq. (FL Bar #229091)
Jeffrey A. Backman, Esq. FL Bar #662501)
B. Eliot New, Esq. (FL Bar #1008211)
*Admitted Pro Hac Vice*
200 East Broward Blvd., Ste. 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
Richard.Epstein@gmlaw.com
Jeffrey.Backman@gmlaw.com
Eliot.New@gmlaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By: _s/_ Robert L. Vance _____

4260064.1