# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

| | |
|---|---|
| MARILYN MOORE, et al., individually and on behalf of all others similarly situated | ) ) ) |
| Plaintiffs, | ) ) |
| v. | )     CASE NO.: 3:18-cv-00410 ) |
| WESTGATE RESORTS, LTD., et al. | ) ) |
| Defendants. | ) |

## RESORT DEFENDANTS' MOTION FOR PROTECTIVE ORDER FOR TIMESHARE RESELLER SUBPOENAS

Defendants Westgate Resorts, Ltd., CFI Resorts Management, Inc., and Westgate Marketing, LLC ("Resort Defendants"), pursuant to Federal Rules 26 and 45, file this Motion for Protective Order for Timeshare Reseller Subpoenas, seeking a protective order because the discovery sought is outside the scope of permissible discovery, disproportional to the needs of the case, and unduly burdensome.

## I.
### INTRODUCTION

Once again, Plaintiffs are conducting discovery in search of a claim. Plaintiffs assert fraud-based claims allegedly arising from oral misrepresentations during timeshare sales presentations, and they seek to represent a class of over 73,000 timeshare owners at the Westgate Smoky Mountain Resort ("Resort"), from 2008 to the present. Some of the Plaintiffs complain that sales representatives told them that they could resell the timeshares they were purchasing, typically for more than what Plaintiffs were paying. But, Plaintiffs signed contracts and acknowledgements directly contradicting their claims. And, Plaintiffs testified they never even tried to sell their timeshare. Nonetheless, they now seek discovery from non-party timeshare

1

resellers/brokers, presumably in a misguided effort to investigate the potential resale price. Exhibit 1. The Court should enter a protective order.

By way of background, each Plaintiff purchased different timeshares; they were different sizes, available for use in different years, available for use in different seasons, some still under construction, and all at different heights on the mountain, etc.:

    Spado (2008):[1]    1 Bedroom Standard
                              Even Years
                              Week 25
                              Unit 2084-301C
                              All Season
                              Floating

    Spado (2010):[2]    1 Bedroom Deluxe / Studio Deluxe
                              Even Years
                              Week 28 / 32
                              Unit 2044-201H / 2044-201I
                              All Season
                              Floating

    Spado (2012):[3]    1 Bedroom Deluxe / 1 Bedroom Deluxe
                              Even Years
                              Week 15 / 48
                              Unit 2067-671A / 2067-671B
                              All Season
                              Floating

    Moore (2008):[4]    1 Bedroom Standard
                              Even Years
                              Week 3
                              Unit 2083-302C
                              Value Season
                              Floating

    Moore (2012):[5]    1 Bedroom Deluxe
                              Even Years
                              Week 34

---

[1] Exhibit 2.
[2] Exhibit 3.
[3] Exhibit 4.
[4] Exhibit 5.
[5] Exhibit 6.

|  |  |
|---|---|
|  | Unit 2073-101A<br>All Season<br>Floating |
| Moore (2013):[6] | 1 Bedroom Deluxe / 1 Bedroom Grand<br>Whole Years<br>Week 17 / 21<br>Unit 5000-405Q / 5000-407P<br>All Season<br>Floating |
| Gilliland (2015):[7] | 1 Bedroom Deluxe / 1 Bedroom Standard<br>Whole Years<br>Week 1 / 3<br>Unit 2082-101A / 2082-301C<br>Value Season<br>Floating |
| Gilliland (2016):[8] | 1 Bedroom Deluxe / 1 Bedroom Standard<br>Whole Years<br>Week 13 / 44<br>Unit 2084-303C / 2083-102A<br>All Season<br>Floating |
| Gallegos (2017):[9] | 1 Bedroom Deluxe<br>Even Years<br>Week 38<br>Unit 2080-203H<br>All Season<br>Floating |
| Miller (2018):[10] | 1 Bedroom Deluxe<br>Whole Years<br>Week 1<br>Unit 2073-102A<br>Value Season<br>Floating |

---

[6] Exhibit 7.
[7] Exhibit 8.
[8] Exhibit 9.
[9] Exhibit 10.
[10] Exhibit 11.

As noted on Plaintiffs' contracts, in all capital letters, Plaintiffs acknowledged that purchasers of resold timeshares would have "severely limited opportunity to reserve occupancy" at the Resort. Exhibit 3, 4, 6, 7, 8, 9, 10, 11. Every Plaintiff also signed—and some signed multiple times—acknowledgements that they were not buying the timeshare for investment or resale purposes.

> [Initials] I/we understand that no representations have been made as to investment potential or resale potential. I/we do, however, understand I/we have the right to sell or transfer any right to ownership. I/we acknowledge that I/we have purchased primarily for personal use and not for investment purposes.

*See, e.g.,* Exhibits 12 – 21. Most notably, each Plaintiff testified they had never attempted to resell their timeshare. *See, e.g.,* Exhibit 22 (R. Spado) at 269:13-15; Exhibit 23 (E. Gilliland) at 52:13 – 14; Exhibit 24 (Gallegos) at 192:4 – 7; Exhibit 25 (D. Miller) at 51:7 – 9.

Despite this case not being about reselling timeshares or resale values, and Plaintiffs never even attempting to sell their timeshares, Plaintiffs now seek discovery from seven non-parties relating to resales. Exhibit 1. Plaintiffs served notices of the subpoenas on December 11, 2019, Exhibit 1, and these subpoenas were presumably served on their intended recipients, Timeshares Only, LLC, V.I. Network, Inc., VP Resales, LLC, Bay Tree Solutions, Inc., Premiere Timeshare Resale, Sellmytimesharenow, LLC, and Timeshare Resale Vacations, LLC (collectively "Timeshare Resellers").

Among other documents and ESI, these subpoenas seek from the non-party Timeshare Resellers documents reflecting the number of sales/resales and sales price of every timeshare sale and resale at the Resort since 2008, all communications with Defendants, and all communications with any timeshare owner. Exhibit 1. The requests are not limited in any way, not by the seller or type of seller, not to any unit type, interval week, odd or even year, floating use, etc. Exhibit 1.

Plaintiffs claim that this non-party discovery is relevant to establish the value of the timeshares Plaintiffs purchased, supposedly to determine their claimed damages. However, as noted above, any purchaser of a resold timeshare has "severely limited" rights to use the Resort under the timeshare plan, which means that their purchases do not include the same rights as those of Plaintiffs. These Plaintiffs, on yet another fishing expedition, seek expansive discovery as to sales price of apples, supposedly to prove the value of oranges. There are many ways to prove the value of something—and an entire body of licensed professionals who appraise real property interests for a living—but there is basis to believe that the prices of a bunch of different apples are relevant to the values of a separate set of different oranges. The discovery Plaintiffs seek from the Timeshare Resellers would not bear on any fact relevant to Plaintiffs' claims, and this broad discovery would not be proportional to the Plaintiffs' individual or class claims. Finally, as to at least a third of the requests—communications with Defendants—the documents would be available to Resort Defendants. However, Plaintiffs have never requested the documents from Resort Defendants or established that the documents would be discoverable, and Plaintiffs should not be permitted to use subpoenas to circumvent the discovery rules. For these reasons, the Court should prohibit Plaintiffs' fishing expedition in search of a class claim, and their efforts to unnecessarily increase the cost of litigation.

## II.
### APPLICABLE AUTHORITY

With respect to the permissible scope of a subpoena, Rule 45 is silent, but courts apply the Rule 26 standard. *See Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, 294 F.R.D. 87 (S.D. Ohio 2013). Once an objection has been raised, the party seeking the discovery must demonstrate its relevance. *Id.* The Rule 26 standard is:

5

(1) *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b). Rule 26 further provides a mechanism to address improper discovery requests:

(2) *Limitations on Frequency and Extent.*
. . . .
(C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
  (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
  (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
  (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

FED. R. CIV. P. 26(b)(2). Rule 26 also provides the mechanism for a party to seek a protective order:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (A) forbidding the disclosure or discovery;
> (B) specifying terms, including time and place or the allocation of expense, for the disclosure or discovery;
> (C) prescribing a discovery method other than the one selected by the party seeking discovery;

6

> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
> . . . .

FED. R. CIV. P. 26(c)(1). Simply stated, a subpoena may not be used to circumvent the discovery rules. *See, e.g., Olmstead v. Fentress County*, No. 2:16-cv-00046, 2018 WL 6198428, *3-4 (M.D. Tenn. Nov. 28, 2018)

### III.
### MOTION FOR PROTECTIVE ORDER

The Court should enter a protective order, prohibiting the discovery Plaintiffs seek from the non-party Timeshare Resellers. Although not raised directly in this Motion, Plaintiffs' subpoenas to the non-party Timeshare Resellers would be unduly burdensome to the Timeshare Resellers, due to their overbreadth—i.e., all documents and ESI since 2008—an issue at least some of the Timeshare Resellers intend to raise in objections to the subpoenas.

Nonetheless, for purposes of this motion, Plaintiffs' subpoenas to the non-party Timeshare Resellers seek documents relating to the sale/resale and sales prices of every timeshare at the Resort. Exhibit 1 at No. 1. The request is not limited in any way. But, even if it were limited, such documents would have no bearing on any issue in the case and would not make any fact of consequence more or less likely to be true. When a request seeks documents not relevant to any issue in the case, the request is necessarily disproportionate to the needs of the case and outside the scope of permissible discovery.

Next, Plaintiffs seek "all communications" with Defendants relating to any sale or resale of a timeshare since 2008. Exhibit 1 at No. 2. This case is not about resales at all, and it certainly is not about Resort Defendants' dealings with Timeshare Resellers. Any communications between Resort Defendants and the Timeshare Resellers would have no bearing on any issue in the case and would not make any fact of consequence any more or less likely to

7

Case 3:18-cv-00410-DCLC-HBG   Document 84   Filed 12/24/19   Page 7 of 10   PageID #: 2186

be true.  The request is overly broad and disproportionate to the needs of the case.  Even if the discovery sought were otherwise discoverable—which is denied—same could be obtained from Resort Defendants, but Plaintiffs have not even sought to obtain such documents from Resort Defendants.

Finally, Plaintiffs seek "all communications" with the over 73,000 timeshare owners at the Resort relating to any sale or resale of a timeshare since 2008.  Exhibit 1 at No. 3.  Again, this case is not about resales, and individualized discovery as to over 73,000 putative class members is illogical, improper, outside the scope of discovery, and disproportionate to the needs of the case.  Such communications would have no bearing on any issue in the case and would not make any fact of consequence any more or less likely to be true.

For the reasons set forth above, the Court should enter a protective order to prevent Plaintiffs from improperly seeking discovery outside the scope of permissible discovery and discovery not proportional to the needs of the case, and from improperly attempting to circumvent the rules of discovery.  Given the facts at issue in the case, and the undisputed facts, and the reality that the amount of data and documents Plaintiffs are seeking would not be relevant to any issue in the case, the subpoenas are also unduly burdensome to all parties.  The Court should also enter a protective order to prevent Plaintiffs from seeking to annoy and harass Resort Defendants to unnecessarily increase the cost of litigation and sow discord between Resort Defendants and non-parties involved in the timeshare business.  Finally, the Court should enter a protective order because, to the extent the discovery sought is otherwise discoverable—which is denied—same could be obtained from Resort Defendants.

8

Case 3:18-cv-00410-DCLC-HBG   Document 84   Filed 12/24/19   Page 8 of 10   PageID #: 2187

# V.
## CONCLUSION

The Court should enter a protective order prohibiting the discovery sought by the subpoenas to non-party Timeshare Resellers for the reasons set forth above, and to prevent Plaintiffs from abusing the discovery process.

## **CERTIFICATE OF CONFERENCE**

I hereby certify that the parties have conferred in good faith by telephone in an attempt to resolve the issues raised by the motion. The parties have been unable to resolve these issues.

By: /s/ B. Eliot New
B. Eliot New, *Pro Hac Vice*

DATED: December 24, 2019

**GREENSPOON MARDER, LLP**

By: /s/ B. Eliot New
Richard W. Epstein (FL Bar #229091)
Jeffrey A. Backman (FL Bar #662501)
B. Eliot New (FL Bar #1008211)
*Admitted Pro Hac Vice*
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
(954) 491-1120
Richard.Epstein@gmlaw.com
Jeffrey.Backman@gmlaw.com
Eliot.New@gmlaw.com

**WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER PLLC**
Gregory C. Logue (BPR #012157)
Robert L. Vance (BPR #021733)
900 Riverview Tower, 900 S. Gay Street
Knoxville, TN 37902-1810
Telephone: (865) 215-1000
Facsimile: (865) 215-1001
glogue@wmbac.com
bvance@wmbac.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 24, 2019, a copy of the foregoing filing was filed electronically such that notice of this filing will be sent by the Court's electronic filing system. Any party who does not receive this filing through the Court's electronic filing system will be served by U.S. Mail.

By: /s/ B. Eliot New
B. Eliot New, *Pro Hac Vice*