UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARILYN MOORE, *et al.*,        ) | |
|           ) | |
|          Plaintiffs,       ) | |
|           ) | |
| v.               ) | No. 3:18-CV-410-DCLC-HBG |
|           ) | |
|           ) | |
| WESTGATE RESORTS, *et al.*,    ) | |
|           ) | |
|          Defendants.      ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court are the following Motions: (1) Plaintiffs' Motion to Compel Production of Discovery and Memorandum of Law in Support [Doc. 62], filed on September 6, 2019; and (2) Plaintiffs' Motion for Entry of Order Regarding Discovery of Electronically Stored Information [Doc. 63], also filed on September 6, 2019. The parties first appeared before the Court for a motion hearing on October 23, 2019. Attorneys Wayne Ritchie, II, and Kenneth Byrd appeared on behalf of Plaintiffs. Attorneys Benjamin New and Gregory Logue appeared on behalf of Defendants. The parties subsequently appeared before the Court via telephone on October 30, 2019 to specifically address Plaintiffs' Motion for Entry of Order Regarding Discovery of Electronically Stored Information [Doc. 63]. Attorneys Ritchie and Byrd, as well as Attorneys Mark Chalos and Chris Coleman, appeared on behalf of Plaintiffs. Attorneys New and Logue appeared on behalf of Defendants. Following the telephone hearing, the Court allowed the parties to file supplemental briefing and propose sample orders regarding the discovery of electronically stored information ("ESI").

The Court has considered the filings in this case, and for the reasons further explained below, Plaintiffs' Motion to Compel [**Doc. 62**] will be **GRANTED IN PART and DENIED IN PART**, while Plaintiffs' Motion for Entry of Order Regarding Discovery of Electronically Stored Information [**Doc. 63**] will be **DENIED**.

## I.    BACKGROUND

Plaintiffs commenced this action on behalf of a Proposed Class on September 25, 2018. [Doc. 1].  Plaintiffs then filed a Second Amended Complaint, alleging that a number of individuals purchased "floating use plan" timeshare properties at the Westgate Smoky Mountain Resort ("the Resort") from September 25, 2008 through the date of certification and were similarly injured by Defendants' omissions.  [Doc. 46 at ¶ 114].  Plaintiffs allege that Defendants oversold timeshares and omitted material facts to induce the Proposed Class to purchase or upgrade units, pressured prospective buyers via their marketing strategies, omitted material facts and disclosures, including those required by the Tennessee Timeshare Act to induce buying units or upgrades, and failed to disclose material information regarding Plaintiffs' rights—including the right of rescission.  [*Id.* at ¶¶ 147–50, 162, 174–76, 196–202]; *see, e.g.*, [Doc. 62 at 6].  Plaintiffs bring suit against Defendants Westgate Resorts, Ltd., Westgate Marketing, LLC, and CFI Resorts Management, Inc. (collectively referred to as the "Resort Defendants"), as well as Defendants Central Florida Investments, Inc., Westgate Vacation Villas, LLC, and Westgate Resorts, Inc. (collectively referred to as the "Non-Resort Defendants").  [*Id.* at 11].

Plaintiffs are now seeking precertification discovery beyond the class representatives, and subsequently filed two sets of Interrogatories and two sets of Requests for Production of Documents on Defendants.  [*Id.*].  Plaintiffs served their First Set of Interrogatories and Requests for Production on Defendants on February 15, 2019, and their Second Set of Interrogatories and

Requests for Production on Defendants on March 1, 2019. [Docs. 62-2 & 62-3]. Defendants served their responses and objections to Plaintiffs' Requests for Production and Interrogatories on April 1, 2019. [*Id.*]. Counsel for Plaintiffs and Counsel for the Resort Defendants engaged in two meet and confer sessions in May of 2019, and on August 13, 2019. *See* [Doc. 2-1 at ¶ 8].

## II.     POSITIONS OF THE PARTIES

Plaintiffs seek [Doc. 62] for the Court to order Defendants to produce the responsive documents to their Requests for Production, as well as to respond to both sets of Interrogatories. Plaintiffs have detailed categories of discovery sought, along with citations to specific Requests for Production and Interrogatories. [*Id.* at 8–11]. Plaintiffs claim that their discovery requests are narrow and reasonable, and that they are entitled to establish the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(2). Plaintiffs further assert that Defendants' current production of discovery is inadequate, as Defendants failed to conduct basic searches for ESI, or disclose the location or custodians of relevant ESI. Additionally, Plaintiffs claim that Defendants' objection to producing discovery not directly related to the Named Plaintiffs is improper, as Plaintiffs assert that courts routinely allow discovery to enable Named Plaintiffs to establish their grounds for class certification.

Plaintiffs proceed to state that discovery pertinent to Defendants' sales and marketing practices, employment and managerial policies, the Proposed Class members' rights under the Tennessee Timeshare Act, Resort Defendants' reservation and booking records, and issues of personal jurisdiction over the Non-Resort Defendants are warranted and properly discoverable. Plaintiffs assert that Defendants improperly generally objected to all of Plaintiffs' Requests for Production and Interrogatories, and discovery is necessarily broad at the early stage of litigation to encompass an alleged pattern of conduct. Plaintiffs also claim that Defendants' objections on

the grounds of cost are improper as Defendants are in possession of almost all of the relevant discovery and Defendants have failed to establish that the data, the production of which they argue would be costly, was inaccessible. Plaintiffs claim that the requested discovery is readily accessible by Defendants through their databases and records. Lastly, Plaintiffs maintain that Defendants' cited cases in support of the remaining objections are distinguishable regarding discovery produced from related litigations and related to complaints filed against Defendants by individuals other than the Named Plaintiffs.

The Non-Resort Defendants respond [Doc. 68], claiming that they are improper parties because they have no connections to Plaintiffs' allegations and the Court lacks personal jurisdiction over them. First, the Non-Resort Defendants claim that the Court should exercise its discretion to stay discovery pending the outcome of the filed Motion to Dismiss for lack of personal jurisdiction [Doc. 48], asserting that the requested discovery is not likely to result in evidence to overcome the motion to dismiss. Further, the Non-Resort Defendants maintain that documents do not exist that detail their connection with Tennessee, because such connections do not exist. The Non-Resort Defendants claim that the Affidavit of John Willman, Treasurer and Vice President for Defendant Westgate Resorts, Ltd. [Doc. 48-1], submitted as an exhibit to the Motion to Dismiss, states the relationship between the respective Defendants and establishes why the Non-Resort Defendants are not subject to personal jurisdiction. However, the Non-Resort Defendants also claim that to the extent the Court allows limited discovery, such discovery should be limited to only addressing issues of personal jurisdiction, and Plaintiffs' jurisdictional discovery requests are overbroad and not proportional.

The Resort Defendants respond [Doc. 70] that they did not limit their discovery responses to only the Named Plaintiffs, as they have produced over 17,000 documents, including data

reflecting the identities and purchase details of every resort owner during the proposed class period of 11 years, as well as data at monthly snapshots detailing the number of units available for reservations and the reservations made by all owners during this time period. Therefore, the Resort Defendants also maintain that they should not be required to produce the requested discovery, as the Named Plaintiffs seek to maintain a class of over 73,000 timeshare owners based on their highly-individualized fraud claims over a decade period.

Further, the Resort Defendants state that they have provided the training and employee manuals for sales and closing representatives, full discovery as to the Named Plaintiffs, all complaints levied against any of the sales or closing representatives involved in the transactions with the Named Plaintiffs, as well as other policy-level documents. The Resort Defendants assert that Plaintiffs' discovery requests are vague and overbroad, as well as not proportional to the needs of the case, and seek owner-specific discovery for highly individualized potential fraud claims. Additionally, the Resort Defendants state that they are working in good faith to produce supplemental documents related to certain requests. Lastly, the Resort Defendants also claim that Plaintiffs' motion is procedurally improper, as the Resort Defendants made legitimate objections in good faith to Plaintiffs' discovery requests, and allege that Plaintiffs now seek to compel responses to a new set of discovery requests.

Plaintiffs then replied [Doc. 73] that they were not seeking to compel responses to a new set of discovery requests; rather, in their Motion to Compel, they summarized the previously served Interrogatories and Requests for Production into categories for the benefit of the Court. Additionally, in response to the Resort Defendants, Plaintiffs assert that the Resort Defendants explicitly limited their discovery responses as to the Named Plaintiffs—for example, in response to Plaintiffs' request for allegations of concealment of information from or misrepresentations

made to owners or prospective owners, the Resort Defendants only provided documents regarding reservation complaints made by the Named Plaintiffs or about their sales agents.  Plaintiffs also state that the Resort Defendants did not allege that the requested discovery was not relevant, and that their requests are reasonable and proportional.  With respect to the Non-Resort Defendants, Plaintiffs asserts that they are entitled to discovery regarding the Non-Resort Defendants' contacts with Tennessee, and the jurisdictional discovery requests are not overbroad.

## III.   DISCOVERY STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad."  *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)).  Courts have cautioned, however, that "[d]iscovery requests are not limitless, and parties must be prohibited from taking 'fishing expeditions' in hopes of developing meritorious claims."  *Bentley v. Paul B. Hall Reg'l Med. Ctr.*, No. 7:15-CV-97-ART-EBA, 2016 WL 7976040, at *1 (E.D. Ky. Apr. 14, 2016).  "[T]he [C]ourt retains the final discretion to determine whether a discovery request is broad or oppressive."  *Id.* (citing *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  Further, the proponent of a motion to compel discovery bears the initial burden of demonstrating relevance.  *See Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309–10 (W.D. Tenn. 2008).

With respect to precertification discovery, such discovery is:

> [L]imited and in the discretion of the court. Generally, a plaintiff bears the burden of advancing a prima facie showing that the class action requirements of [Rule 23] are satisfied, or that discovery is likely to produce substantiation of the class allegations. [D]iscovery often has been used to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation.

*Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 WL 1658643, at *6 (E.D. Mich. May 11, 2012) (internal citations and quotation marks omitted); *see, e.g.*, *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006). "The permitted discovery should be broad enough to give plaintiffs a realistic opportunity to satisfy the Rule 23 requirements, but narrow enough to prevent defendants from being unduly burdened by discovery that is irrelevant, privileged, or confidential." *Firneno v. Nationwide Mktg. Servs., Inc.*, No. 14-CV-10104, 2016 WL 11582360, at *2 (E.D. Mich. Mar. 24, 2016) (citing *Nash v. City of Oakwood*, 90 F.R.D. 633, 636 (S.D. Ohio 1981)). "Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification . . . Unnecessarily broad discovery will not benefit either party." *Firneno*, 2016 WL 11582360, at *2 (quoting *Nash*, 90 F.R.D. at 636). Additionally, "the need for precertification discovery is subject to limitations within the discretion of the Court." *Miller v. Kent Nutrition Grp., Inc.*, No. 1:15 CV 2116, 2018 WL 2266866, at *2 (N.D. Ohio Feb. 27, 2018) (internal citation omitted).

## IV.    PLAINTIFFS' MOTION TO COMPEL

In reviewing Plaintiffs' requested relief, the Court will analyze the categories, supported by citations to specific discovery requests, as set forth in Plaintiffs' Motion to Compel, which the parties also utilized in their arguments during the October 23, 2019 hearing.

## A. Jurisdictional Discovery of Non-Resort Defendants

Plaintiffs maintain that issues of personal jurisdiction are properly discoverable, and the Non-Resort Defendants have refused to respond to Plaintiffs' discovery requests on the grounds that they are not subject to the Court's personal jurisdiction. [Doc. 62 at 21]. Further, Plaintiffs maintain that Resort Defendants have failed to provide documents detailing the connection Non-Resort Defendants have with the state. [*Id.*].

As the Court has previously detailed, Non-Resort Defendants claim that Plaintiffs failed to plead facts necessary to establish personal jurisdiction, and seek for the Court to deny Plaintiffs' Motion to Compel with respect to the jurisdictional discovery. [Doc. 68 at 4]. However, if the Court allows limited discovery, Non-Resort Defendants request that this discovery should be limited to only addressing issues of personal jurisdiction, and that Plaintiffs' jurisdictional discovery requests are overbroad and not proportional.

Here, the Court declines to stay discovery pending the resolution of the Non-Resort Defendants' Motion to Dismiss [Doc. 48], and will allow limited jurisdictional discovery of the Non-Resort Defendants. However, the Court agrees that several of Plaintiffs' discovery requests are overbroad and not proportional to the needs of the present case, especially prior to a motion for class certification. Therefore, the Court will allow limited jurisdictional discovery to the extent set forth in this opinion to establish the relationship that the Non-Resort Defendants have with the Resort Defendants and the forum state.

## B. Discovery Regarding Relationship Non-Resort Defendants Have with Resort Defendants and Tennessee

Plaintiffs seek discovery establishing the relationship that the Non-Resort Defendants have with the Resort Defendants,[1] discovery related to the Non-Resort Defendants' connections with the state of Tennessee,[2] and documents establishing Defendants' profits, losses, sources of revenue, and reports detailing the relationships between the respective Defendants.[3] Plaintiffs state that the Non-Resort Defendants improperly objected that the Court lacks personal jurisdiction, while the Resort Defendants have not produced any documents or discovery related to the connection between the respective parties. [Doc. 62 at 8, 12, 21]. For example, Plaintiffs assert that Non-Resort Defendant Central Florida Investments, Inc., is involved in handling the "property and affairs" of the Gatlinburg Owners' Association and is a subsidiary of Resort Defendant CFI Resorts Management, Inc. [*Id.* at 21–22]. With respect to discovery related to Defendants' profits, losses, and sources of revenue, Plaintiffs assert that Defendants have only produced "HOA budgets" that "offer rudimentary information on association fees charged based on the type of unit." [*Id.* at 10].

Resort Defendants maintain that such requests are overly broad and not proportional with respect to the needs of this case, as, for example, several of Plaintiffs' discovery requests would require Defendants to produce essentially all contracts and financial documents related to the operation of the Resort. Further, Resort Defendants assert that the Non-Resort Defendants have no involvement with the Resort, the respective Defendants' budgets are not relevant to the case,

---

[1] Plaintiffs assert that they requested this information though Request for Production Nos. 19, 22, 23, and 24, as well as Interrogatory Nos. 7 and 9.

[2] Plaintiffs assert that they requested this information though Request for Production Nos. 19, 22, 23, 24, 34, and 36, as well as Interrogatory Nos. 6 and 7.

[3] Plaintiffs assert that they requested this information though Request for Production Nos. 27, 28, 30, and 31, as well as Interrogatory No. 9.

and Defendants maintain numerous bank accounts and use accounting software to track revenue and expenses. Resort Defendants state that they do not object to producing documents reflecting current board members and executive leadership of the Defendants, as well as documents identifying the organizational relationships between the Defendants, but the remainder of the requests are overly broad and the Defendants have numerous financial and business arrangements not related to the pending suit.

The Non-Resort Defendants similarly claim that they do not have any offices in Tennessee, and have no financial or business arrangements related to the Resort or Tennessee, other than through Defendant Central Florida Investments, Inc., which processes credit card payments for the Resort. Further, the Non-Resort Defendants maintain that the requested documents do not relate to the issue of whether they are subject to personal jurisdiction in Tennessee, and responding to requests for their expansive financial record-keeping and budgets would be unduly burdensome. Lastly, the Non-Resort Defendants incorporate the objections asserted by the Resort Defendants.

Here, the Court has reviewed the factors set forth in Rule 26(b), and finds that several of Plaintiffs' requests are overly broad and not proportional to the needs of this case, especially prior to a motion for class certification. Plaintiffs seek discovery involving all financial and business arrangements of the Defendants, such as requiring Defendants to compile every financial arrangement involving a Defendant, the location of all property owned by the Defendants in the United States, any communication involving an individual in Tennessee, and the financial structure of the Defendants. Plaintiffs fail to explain why such wide-ranging financial information is necessary, or narrow their requests to the specific causes of action. Although the Court has allowed limited jurisdictional discovery, granting Plaintiffs Motion to Compel under such broad requests would constitute a fishing expedition into Defendants' financial and accounting practices.

However, Defendants shall provide any documents establishing the formal business relationship between the respective Defendants, including any documents identifying the corporate and organizational relationships between Defendants. Non-Resort Defendants shall provide any contracts involving the Resort and Defendant Central Florida Investments, Inc., or any contract directly involving the Resort and a Non-Resort Defendant. All Defendants shall provide documentation of their current board leadership and executive leadership, as well as the responsibilities of all board committees, task forces, or working groups. Further, Defendants have stated that they would produce a contract between Westgate Marketing, LLC and Westgate Resorts, LLC, as it did not relate to entity formation, which they will be required to produce if they have not already done so.

Plaintiffs also request all documents relating to the statements of fact set forth in support of Non-Resort Defendants' Motion to Dismiss [Doc. 48], as well as all documents referred to or consulted with in connection with the preparation of the Affidavit of John Willman [Doc. 48-1]. Defendants maintain that Mr. Willman did not refer to or consult any documents in connection with his affidavit. The Court further agrees that requiring Defendants to produce all documents related to his affidavit, describing the responsibilities of the respective Defendants and their relationships to Tennessee, would be overly broad and not proportional to the needs of this case.

Therefore, Plaintiffs' Motion to Compel will be denied with respect to RFP Nos. 19, 22, 27, 28, 30, 31, 34, and 36 as well as Interrogatory Nos. 6 and 9; granted in part and denied in part with respect to RFP No. 24 and Interrogatory No. 7; and granted with respect to RFP No. 23.

### B.    Discovery Regarding Booking and Reservation Issues

Plaintiffs also seek discovery regarding how timeshare bookings are managed, why booking requests are denied, the decision-making process and strategies associated with booking

timeshare units, as well as discovery related to how Defendants handle reservation calls and booking requests.[4]  [Doc. 62 at 8, 20–21].  Plaintiffs assert that this discovery is relevant to the issue of unavailability, and Defendants have already produced the comment sheets for the named Plaintiffs, which tracked the Defendants' interactions with customers.  Plaintiffs maintain that Defendants have produced a spreadsheet with only the names, date of purchase, and other "rudimentary information on the unit," such as the number of bedrooms and portion of the year, for allegedly all timeshare owners.  [*Id.* at 20].  Further, Defendants also produced a spreadsheet offering a monthly summary of unit availability, occupancy rate, and the number of vacant rooms.  Therefore, Plaintiffs assert that Defendants should be required to produce the comment sheet for all timeshare owners, as it has been demonstrated that Defendants have electronic access to these records, and such sheets are illustrative of booking and reservation problems.

The Resort Defendants respond that they have previously produced policy level documents reflecting the process of booking and reserving timeshare units, as well as data reflecting the identity and purchase details of every timeshare owner during the proposed eleven-year class period and data depicting the monthly snapshots showing the number of units available for reservations and the reservations made by all owners during this period.  Defendants claim that producing comment sheets for all 73,000 accounts would be excessive and not proportional to the needs of the case, as well as not being relevant towards the class certification requirements.  Further, Defendants maintain that the comment sheets would have to be exported and reviewed for privilege, although no privileged information was found in reviewing the accounts of the named Plaintiffs.  Lastly, Defendants assert that to determine whether an owner could book a particular

---

[4] Plaintiffs assert that they requested this information though Request for Production Nos. 2 and 3, as well as Interrogatory No. 3.

unit on a certain date would require an individualized inquiry due to the large number of factors involved.

Here, the Court agrees that Plaintiffs' discovery requests involving Defendants' booking and reservation policies are overly broad and not proportional to the needs of this case. Defendants have produced monthly snapshots depicting the availability of timeshare units over a monthly period, as well as the purchase information of all timeshare owners during the proposed class period. Further, the Court notes that Plaintiffs' requests would unduly burden Defendants by requiring them to provide all documents relating to the over 73,000 timeshare owners during the proposed class period. Moreover, Plaintiffs' discovery requests focus on the merits of Plaintiffs' case, rather than the Rule 23 requirements for class certification.

While Plaintiffs claim that Defendants have refused to produce discovery that does not directly involve the Named Plaintiffs, the Court finds that Defendants' production so far in this respect is proportional to the needs of this case prior to a motion for conditional certification. Plaintiffs cite to several cases, including *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-11505, 2012 WL 1658643, at *6 (E.D. Mich. May 11, 2012) and *Peters v. Credit Protection Ass'n*, No. 2:13-cv-767, 2014 WL 6687146, at *6 (S.D. Ohio Nov. 26, 2014), in support of their argument for more expansive precertification discovery. However, *Kane* and *Peters* both involved a motion to compel the production of names and contact information of putative class members—information which has already been provided in the present case. Similarly, Plaintiffs cite to an unreported order on a motion to compel from the Middle District of Tennessee, *Booker v. Cheadle Law*, No. 3:17-cv-394, Doc. 53 (M.D. Tenn. Oct. 3, 2018), to assert that Defendants are maintaining similar objections. However, in *Booker*, while the Court allowed discovery prior to a ruling on a motion for class certification, the defendant had failed to produce communications involving the named

plaintiff in a Fair Debt Collection Practices Act case, and the Court still found that several discovery requests were premature prior to class certification.

Ultimately, Defendants shall be required to produce the code sheets for the comments provided of the Named Plaintiffs, as well as any manuals or question and answer sheets for call center employees. However, Plaintiffs are not entitled to the comment sections for all reservations and customers, comprising of over 73,000 accounts, as such discovery is not proportional prior to a motion for class certification and would constitute an individualized inquiry into all potential claims. Therefore, Plaintiffs' Motion to Compel will be denied as to RFP No. 3 and Interrogatory No. 3, and will be granted in part and denied in part with respect to RFP No. 2.

### C. Discovery Regarding Training for Managers, Closing Officers, and Sales Representatives

Plaintiffs seek discovery establishing how managers, closing officers, and sales representatives are trained, including conducting both in-house sales and tours.[5] Plaintiffs state that although Defendants produced training manuals, they are requesting discovery regarding how the training manuals were developed. Plaintiffs provided an example of seeking communications of how training manuals were developed, such as communication regarding the development of training involving the right to rescind. Additionally, Plaintiffs assert that although Defendants produced "closing agent and 'Dayline Training Manuals,'" these manuals did not provide information regarding how in-house sales teams were trained to market or obtain unit upgrades. *See* [Doc. 62 at 17].

---

[5] Plaintiffs assert that they requested this information though Request for Production Nos. 5, 13, 14, and 20, as well as Interrogatory No. 2.

Defendants respond that they have produced the training and employee manuals for sales and closing representatives, and such relevant policy-level documents are sufficient for precertification discovery to establish whether a possible basis for class certification existed based on uniform practices. Additionally, Defendants claim that producing communications regarding the development of the training manuals would require a substantial review of email correspondence. Defendants further maintain that they produced the sales and closing agents involved in the Named Plaintiffs' transactions, as well as their dates of employment and reason for separation, but that to produce the personnel-related documents for hundreds of remaining employees is overly broad and not proportional to the needs of the case. Lastly, Defendants submit that sales and closing agents receive training with respect to other tasks that have no bearing on the sales or closing process, and the requested discovery seeks a description of all training to sales and closing agents over a ten-year period.

Here, the Court notes that Defendants have already produced the training and employee manuals for sales and closing representatives. Defendants have also produced the sales and closing representatives involved with the purchases of the Named Plaintiffs. Plaintiffs bear the burden of showing that the information sought in each request is relevant, satisfies Rule 26's proportionality requirement, and is necessary to substantial class allegations. The Court finds that requiring Defendants to further produce all sales or closing representatives at the Resort, communications related to the development of these manuals, or communications involving the training and compensation of sales and closing representatives would be unduly burdensome and not proportional to the needs of this case prior to a motion for class certification. Additionally, Plaintiffs' requests for discovery related to the manner in which decisions have been made to hire or terminate employees involving the Resort are overly broad, and Plaintiffs have failed to

demonstrate the relevance to the present claims. Therefore, Plaintiffs' Motion to Compel will be denied as to RFP Nos. 5, 14, 20, and Interrogatory No. 2, and will be granted in part as to RFP No. 13 only to the extent previously set forth in this Opinion.

### D.    Discovery Related to the Portfolios Handed to Customers

Plaintiffs seek for the Court to compel discovery related to portfolios handed to customers, which Plaintiffs allege contained a "secret pocket." [Doc. 62 at 9].[6] Plaintiffs claim that Defendants had in place a policy that required closing agents to place closing and disclosure documents into the secret pocket in the provided portfolios. Plaintiffs assert that Defendants have only produced a "single e-mail thread in which Defendants' Deeding Manager instructed Closing Agents to abandon the practice of placing disclosure documents in the 'Velcro pocket,'" as well as another "e-mail thread from 2018 [which] instructs a folder supplier not to include a 'hidden pocket.'" [*Id.* at 16–17]. Plaintiffs therefore seek the "communication detailing the reasoning behind Westgate's decision to have a secret pocket in the first place" or "any of the communications detailing the reasoning behind Westgate's decision to abandon that pocket." [*Id.* at 17].

Defendants stated that they have produced supplemental communications related to the security pocket, including an additional email thread giving instructions to closing agents relating to the security pocket. However, Defendants state that they do not object to providing additional communications relating to the use of a security pocket or the provided portfolios, assuming such correspondence exists. Therefore, Plaintiffs' Motion to Compel will be granted in part with respect to RFP No. 4, and Defendants shall provide an example of the portfolio utilized in each year of the

---

[6] Plaintiffs assert that they requested this information though Request for Production No. 4.

proposed class period, if available, as well as any communications regarding the implementation and removal of the alleged secret pocket.

### E. Discovery Related to Marketing Strategies and Contracts Between Owners and Defendants

Plaintiffs seek discovery related to Defendants' marketing strategies, whether owners were informed of their right of rescission, sales-strategy communications, and the relationship and marketing strategies between Resort Defendants and Non-Resort Defendants.[7]  Additionally, Plaintiffs seek discovery establishing the contracts between timeshare owners and Defendants, including the records of how unit upgrades were marketed to owners.[8]  Plaintiffs assert that this information is relevant to questions of commonality and typicality, and to establish that Defendants omitted or concealed material information.  Moreover, Plaintiffs state that Defendants have produced some advertisements and flyers, but have not produced any communications about the decisions behind marketing strategies.

Plaintiffs point to deposition testimony from sales manager Glenn Brown which they claim suggests that Defendants had a separate sales department to market upgrades to owners.  Plaintiffs also point to Mr. Brown's deposition testimony regarding the utilization of marketing throughout the local area to transport people to the facility for a sales pitch.  Therefore, Plaintiffs state that they are seeking marketing documents regarding whether Defendants intentionally targeted upgrades from owners, or internal documentation of how individuals were selected to be targeted for a pitch regarding upgrades. While Plaintiffs agree that Defendants have produced policy-level

---

[7] Plaintiffs assert that they requested this information though Request for Production Nos. 18, 20, and 21, as well as Interrogatory No. 4.

[8] Plaintiffs assert that they requested this information though Request for Production Nos. 18, 20, and 21.

documents, they provide the example of seeking emails where employees were encouraged to market or sell units in ways that were coercive or deceitful. Accordingly, Plaintiffs submit that the scope of discovery could be limited through identifying custodians and search terms.

Defendants respond that they have provided the training manuals for in-house sales representatives, and proffered that each time a timeshare owner arrives at the resort, the concierge asks to schedule an appointment, which is a non-mandatory meeting. Defendants assert that there is no allegation that Defendants intentionally booked timeshare owners in improper rooms to facilitate upgrades, and that they will produce all reservation-related policy documents. Defendants explain that marketing and promotion efforts for the Resorts have a distinct meaning from sales efforts in the timeshare industry. However, Defendants have stated in their Responses to Plaintiffs' first set of RFPs that they will produce "documents sufficient to reflect their marketing and promotion of the Resort, including off-premises contact marketing/promotion, owner referral marketing/promotion, and web-based marketing and promotion," but claim that the remaining requests are overly broad and not proportional to the needs of the case. *See* [Doc. 62-2 at 16]. Defendants allege that the definition of marketing would require Defendants to identify an extremely broad range of documents. Additionally, Defendants claim that such marketing documents do not relate to Plaintiffs' allegations that Defendants made misrepresentations and failed to disclose material or required information to the Named Plaintiffs, or oversold the Resort and breached its contracts with Named Plaintiffs.

Here, the Court agrees that the remaining requests are overly broad and not proportional to the needs of the case at this time. The Resort Defendants have already agreed to produce the sales and closing agents involved with the Named Plaintiffs, as well as their supervisors, their dates of employments and reasons for separation, and current personnel and training manuals for sales and

closing representatives. The requested discovery related to Defendants' broad marketing strategies and overall personnel decisions are overly broad, and Plaintiffs have failed to demonstrate the relevant to the present claims at this stage of litigation. Accordingly, Plaintiffs' Motion to Compel will be denied as to RFP Nos. 18, 20, and 21, as well as Interrogatory No. 4. However, Defendants will be required to produce the discovery which they stated they did not object to producing in their responses to Plaintiffs' discovery. Further, Defendants will be required to produce all training and policy level documents regarding how owners were informed of their right of rescission.

### F. Discovery Related to Management of Owner Payments, Escrow Payments, and Credit Checks on Timeshare Owners

Plaintiffs seek documents establishing how owner payments were managed, where funds were held or transferred, and how buyer creditworthiness was assessed.[9] Plaintiffs also seek discovery related to a potential buyer's creditworthiness or financial means, which are run prior to or during a customer's tour of the Resort.[10] Plaintiffs maintain that Defendants have not produced documents related to the owner payments of even the Named Plaintiffs, and that the Tennessee Timeshare Act requires all funds from a buyer to be held in a bank in Tennessee during the buyer's cancellation period. Further, Plaintiffs state that Non-Resort Defendant Central Florida Investments, Inc. claimed no contacts with Tennessee, and thus required funds are not being held in Tennessee. Plaintiffs have also alleged that Defendants violated the Tennessee Timeshare Act in their Amended Complaint. *See* [Doc. 32 at ¶ 164].

---

[9] Plaintiffs assert that they requested this information though Request for Production Nos. 7, 19, 22, 23, 24, and 26, as well as Interrogatory No. 8.

[10] Plaintiffs assert that they requested this information though Interrogatory No. 1.

Defendants again respond that Plaintiffs' discovery requests are overly broad and not proportional to the needs of the case. Defendants object to Plaintiffs' discovery requests related to Defendants' escrow accounts and financial information, as none of the Named Plaintiffs made any factual allegations relating to any impropriety regarding escrow accounts. Next, Defendants maintain that the conclusory statement in the Amended Complaint, without supporting factual allegations, does not warrant widespread discovery into Defendants' finances. Further, Defendants claim that the requested documents, for thousands of timeshare transactions, include an accounting of escrowed funds, insurance agreements, disbursements from escrow, and general ledgers of accounts. Defendants submit that the Resort Defendants' cash management systems and procedures are not relevant to Plaintiffs' allegations, no Named Plaintiffs made any allegations about the credit check process, and a loan application was produced. Defendants also state that the credit checks were produced for the Named Plaintiffs.

Here, the Court again agrees with Defendants that they have produced the relevant discovery, and the remainder of Plaintiffs' requests are overly broad and not proportional to the needs of the case. Plaintiffs request wide-ranging discovery related to Defendants' finances and accounting practices based upon a single, broad allegation in the Complaint. Ultimately, Plaintiffs' Motion to Compel will be denied as to RFP Nos. 7, 19, 22, and 26, as well as Interrogatory No. 8. However, Plaintiffs' Motion to Compel will be granted with respect to RFP No. 23, and granted in part and denied in part with respect to RFP No. 24, as set forth in Section B. *See infra* Section IV (B).

**G.      Discovery Relating to Compliance with the Tennessee Time-Share Act**

Plaintiffs similarly seek documents establishing how Defendants ensured compliance with the Tennessee Timeshare Act, specifically involving the required disclosures to owners and what

20

closing officers, sales representatives, or managers were trained and encouraged to say during pitches and stages of the unit purchase.[11]  Plaintiffs assert that Tennessee Code Annotated § 66-32-113 defines "advertisement" as including a verbal offer made by an individual, and Defendants have not produced any discovery demonstrating internal or external efforts to comply with the Tennessee Timeshare Act.  Lastly, Plaintiffs allege that such discovery is relevant due to their allegations that Defendants violated the Tennessee Timeshare Act by omitting disclosures related to Plaintiffs' rights and failing to adequately notify potential class members of their rights, such as the right to rescind.

Defendants assert that the Tennessee Timeshare Act is a comprehensive statutory scheme with several requirements, and that they have produced the required declarations as to the Named Plaintiffs.  While Defendants state that they do not object to producing its registrations and public offering statements, they assert that the remainder of these requests are overly broad and not proportional to the needs of the case, due to the breadth of the Tennessee Timeshare Act. Defendants maintain that the Tennessee Timeshare Act governs or restricts numerous aspects of Defendants' business operations which are not at issue in the present case.

Defendants shall be required to produce any registrations and public offering statements provided to the Named Plaintiffs, but not all communications or documents related to these subjects requested in Plaintiffs' discovery.  The Court agrees with Defendants that much of the requested discovery, such as all documents relating to compliance with the Tennessee Timeshare Act, is overly broad and not proportional to the needs of the case.  Plaintiffs have failed to

---

[11] Plaintiffs assert that they requested this information though Request for Production Nos. 4, 6, 8, 9, 17, and 29.

demonstrate the relevance of all communications related to the delivery of warranty deeds, or all documents related to any public offering statements provided to Named Plaintiffs or obtaining signatures.  The Court again notes the lack of specific requests in Plaintiffs' discovery related to the Tennessee Timeshare Act.  Therefore, Plaintiffs' Motion to Compel will be denied as to RFP Nos. 6, 8, 9, 17, and 29.  Plaintiffs' Motion to Compel will be granted in part with respect to RFP No. 4 only to the extent set forth in section D.  *See infra* Section IV (D).

> ### H. Discovery Regarding Complaints by Buyers or Owners Involving Unavailability, Concealment of Information, or Attempts to Rescind

Plaintiffs seek discovery of documents related to complaints by buyers or owners in the Proposed Class Period involving concealment of information or omissions or attempts to rescind the purchases, as well as documents related to complaints by buyers or owners in the class period involving unavailability of units for booking overnight stays.[12]  Plaintiffs maintain that the requested discovery relates to the "heart of complaints by members of the entire Proposed Class that a pattern of omissions are occurring and Class Members are being prevented from rescinding or even knowing that they have a right to rescind."  [Doc. 62 at 10].  Plaintiffs further allege that Defendants' provided discovery—complaints against the sales representatives and closing officers involved with the Named Plaintiffs—demonstrates that this information can easily be provided to all such employees.

Defendants assert that the discovery requests related to complaints of concealment of information or misrepresentation, as well as various other complaints by Owners, "seek[s] precisely the information that the Sixth Circuit has deemed inappropriate for class certification—

---

[12] Plaintiffs assert that they requested this information though Request for Production Nos. 10 and 15.

that is, information on potential class members that may have suffered a violation of the *same provision of law* rather than the *same injury* as the Named Plaintiffs." [Doc. 70 at 8–9]. Therefore, Defendants assert that the requested discovery constitutes individualized discovery for every putative class member, and is not proportional to precertification discovery. Defendants state that they have produced the complaints or responses made by Named Plaintiffs, or against any sales or closing agents involved in the transactions with Named Plaintiffs. However, Defendants maintain that the requested discovery would require the Defendants to review every document that could constitute an informal communication of unhappiness over a ten-year period, review these complaints to determine whether they review to fraud, omissions, breach of contract, unavailability, or violations of the Tennessee Timeshare Act, and then identify all other documents and communications regarding to the complaint.

Ultimately, the Court agrees with Defendants that the requested discovery categorized in this section constitutes individualized discovery for every potential class member, and is not appropriate for precertification discovery. *See Clarke v. Baptist Mem'l Healthcare Corp.*, No. 2:06-CV-02377-MAV, 2008 WL 11320263, at *3 (W.D. Tenn. Jan. 29, 2008) ("[I]nvestigating matters specifically involving the underlying alleged conspiracy relates to the merits of the litigation and is improper at the class certification stage") (internal citations omitted)). Plaintiffs seek all documents related to any allegations or complaints of concealment or misrepresentations, or any complaints by owners relating to allegations of fraud, omissions, breach of contract, unavailability, or violations of the Tennessee Timeshare Act. At this stage of the litigation, such requests are overly broad and are unduly burdensome. *See, e.g.*, *Brent v. Wayne County Dep't of Human Servs.*, No. 11-10724, 2011 WL 4507323 (E.D. Mich. Sep. 29, 2011) (holding discovery request for "all documentation regarding complaints made against the facility and/or its

23

employees" in § 1983 claim against children's home was "overly broad and not limited to the relevant documents"). Ultimately, this category of requested discovery goes toward the merits of the claim of every putative class member, rather than the Rule 23 requirements. Therefore, Defendants will only be required to produce any complaints and communications regarding the complaints involving the Named Plaintiffs. Accordingly, Plaintiffs' Motion to Compel will be granted in part and denied in part with respect to RFP Nos. 10 and 15.

## I.    Discovery Regarding Promotion/Retraining/Termination Decisions

Lastly, Plaintiffs seek documents and communications detailing how promotion, retraining, or termination decisions were made;[13] as well as discovery related to the employment dates and reasons for separation for sales representatives, closing agents, and managers.[14] Plaintiffs maintain that Defendants have not produced any discovery involving terminated employees, despite the testimony of Glenn Brown during his deposition that he received a daily sheet of all sales representatives currently employed and sales percentage numbers, as well as his acknowledgement that not meeting sales numbers was one of the two top reasons that sales representatives were terminated. *See* [Doc. 62 at 11]. Plaintiffs maintain that they are not seeking every personnel file, but if a sales agent was terminated for violating the Tennessee Timeshare Act or for aggressive sales tactics.

Defendants largely assert that the broad nature of the requested discovery is irrelevant to the pending claim and disproportional to the needs of the case, as it would constitute the personnel

---

[13] Plaintiffs assert that they requested this information though Request for Production No. 5.

[14] Plaintiffs assert that they requested this information though Request for Production No. 14.

file of every individual employed by the Resort Defendants over a ten-year period. Defendants maintain that they produced training manuals, compensation schedules, and other policy-level documents, as well as records of complaints against employees involved with the named Plaintiffs.

Here, the Court again agrees with Defendants that Plaintiffs' discovery requests on this subject are overly broad and not proportional to the needs of this case. Defendants have produced the training manuals for sales and closing agents, and the relevant documentation pertaining to the specific sales representatives and managers involved with the Named Plaintiffs. Plaintiffs' requested discovery is not narrow enough to prevent Defendants from being unduly burdened. By requesting such broad discovery related to the training and supervision of sales and closing agents at the Resort, or identifying all current and past sales and closing agents during the proposed class period, Plaintiffs seek large amounts of non-relevant personnel-related documents, as well as discovery largely focused on the merits of the case—rather than the Rule 23 requirements. *See, e.g.*, *Miranda v. Mahard Egg Farm, Inc.*, No. 4:19-CV-00092, 2019 WL 4573637, at *10 (E.D. Tex. Sept. 20, 2019) ("As to the unnamed employees, it would be unduly burdensome and expensive to gather every document ever created for each employee . . . Indeed, to order such discovery would be tantamount to judicially sanctioning a fishing expedition."). Therefore, Plaintiffs' Motion to Compel will be denied with respect to RFP Nos. 5 and 14.

## V.    ENTRY OF ORDER REGARDING ESI DISCOVERY

Plaintiffs also seek the entry of a proposed order regarding the discovery of ESI pursuant to Federal Rule of Civil Procedure 26. [Doc. 63]. Plaintiffs maintain that each of the Defendants have a significant volume of discoverable ESI, and the entry of the proposed order would facilitate the discovery of ESI. Therefore, Plaintiffs claim that an ESI order is necessary as Defendants utilize online database and booking software, as well as extensive and frequent communications

with employees, which Plaintiffs allege are discoverable. Plaintiffs state that the following general objections by Defendants remain: (1) that the proposed search methodology would include all documents and ESI; (2) the proposed ESI format and de-duplication protocol would require Defendants to hire a discovery vendor; and (3) the proposed protocol for Exception Logs for ESI that cannot be reviewed, produced, or imaged would be too onerous.

Defendants respond [Doc. 69] that they have already produced documents in native and .pdf format, with consecutive bates numbering, which were neatly organized with an index. However, Defendants assert that Plaintiffs' proposed discovery order would require them to hire a discovery vendor—which is disproportionate to the needs of this case. Defendants maintain that the proposed ESI protocol is unnecessarily burdensome, as the cost of hosting the hundreds of terabytes of data with a discovery vendor would amount to $13 per gigabyte per month. Further, Defendants state that Plaintiffs' motion specifies three categories of data which are requested in a different format than kept by Defendants in the usual course of business, including: (1) reservations and booking data sets encompassing daily occupancy rates for the past 11 years and owner complaints as to unavailability; (2) transactional documents as to all owners in the putative class period; and (3) communications relating to the promoting, retraining, terminating and training of its Defendants' sales representatives, managers and closing agents.

Plaintiffs reply [Doc. 72] that Defendants conflate the entry of an ESI protocol with an obligation to produce discovery, and that once an ESI protocol is in place, the parties can negotiate search terms and custodians. Plaintiffs assert that Defendants' sole objection to an ESI protocol is that the cost of securing a discovery vendor to produce ESI in searchable format, with load files and de-duplication and logging functions, would be unduly burdensome. Plaintiffs claim that the possible cost of ESI production is not a sufficient justification for failure to implement an ESI

protocol.  Ultimately, Plaintiffs claim that the "[e]ntry of an ESI [p]rotocol lays out the process for production, and prevents Defendants from . . . producing ESI in hard copy format, and simply asserting without basis that no metadata information exists."  [*Id.* at 5].

Following the telephone hearing, both parties submitted sample ESI orders.  Plaintiffs also filed the declaration of Philip Favro [Doc. 78-1], a consultant for an international electronic discovery firm, regarding the background of electronic discovery and why ESI protocols are a common practice and reduce the expense and burden of discovery in proposed class action matters. Mr. Favro's declaration also details how a properly negotiated and developed ESI protocol can decrease the concerns set forth by Defendants in the affidavit of John Willman.  Plaintiffs also submitted the filing of selected ESI orders entered by federal district courts in other similar class action cases.  [Docs. 79-1, 79-2, 79-3, 79-4, and 79-5].

Ultimately, the Court is not required to enter an order governing the protocol for pre-certification electronic discovery.  "[I]t is not the court's role to dictate how a party should search for relevant information absent a showing that the party has abdicated its responsibility." *Agerbrink v. Model Service LLC*, No. 14-Civ.-7841, 2017 WL 933095, *5 (S.D.N.Y. Mar. 8, 2017); *see also The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1 (2018) ("[A] responding party is best situated to preserve, search, and produce its own ESI.  [This] [p]rinciple . . . is grounded in reason, common sense, procedural rules, and common law, and is premised on each party fulfilling its discovery obligations without direction from the court or opposing counsel . . . unless a specific deficiency is shown in a party's production."), *cited with approval in Prasad v. George Washington Univ.*, 323 F.R.D. 88, 94 (D.D.C. 2017).

As the parties have failed to come to an agreement regarding any substantive issues regarding ESI discovery, the Court will decline to comb through the contrasting proposed orders; and rather, will direct the parties to undergo electronic discovery in compliance with the Federal Rules of Civil Procedure. In light of the Court's ruling on Plaintiffs' motion to compel, specifically regarding the three categories of data which Defendants state that Plaintiffs request in a different format than kept in a normal course of business, Plaintiffs' requested ESI protocol is unduly burdensome at this time. Again, several of Plaintiffs' concerns regarding ESI may be more properly addressed when more expansive discovery is produced following a motion for conditional certification. However, the Court reminds the parties of their obligations under Rule 26 and Rule 34 regarding electronic discovery.

As the parties cannot reach an agreement governing the production of ESI, the producing party can either proceed under its own obligations under the Rules of Civil Procedure, or a specific issue can be brought to the attention of the Court. Here, the parties are directed to meet and confer regarding custodians and search terms, as well as the overall production of ESI, in light of the Court's order on Plaintiffs' motion to compel. The Court notes that the implementation of an agreed ESI order or protocol would not govern the scope of required production, but rather the format and method of production of discoverable ESI. Therefore, Plaintiffs' Motion for Entry of Order Regarding Discovery of ESI [Doc. 63] will be **DENIED**.

## VI. CONCLUSION

Accordingly, for the reasons explained above, Plaintiffs' Motion to Compel the Production of Discovery [**Doc. 62**] is **GRANTED IN PART and DENIED IN PART**[15], while Plaintiffs' Motion for Entry of Order Regarding Discovery of Electronically Stored Information [**Doc. 63**] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

United States Magistrate Judge

---

[15] The Court acknowledges that due to the extensive range of issues presented by the parties, the present Order may not encompass all of the potential discovery disputes set forth in their briefings and at the motion hearings. However, the parties are again directed to meet and confer after reviewing the Order and then contact the Court about any remaining discovery disputes.