**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**KNOXVILLE DIVISION**

MARILYN MOORE, RYAN and LAURA
SPADO, ELLEN and LARRY GILLILAND,
GEROLD GALLEGOS and DEBORAH
CAMPBELL, BRIAN and  DANYELLE
MILLER, and TONYA MELFI, individually and
on behalf of all others similarly situated,

        Plaintiffs,

    v.

WESTGATE RESORTS, LTD., L.P. a/k/a
WESTGATE RESORTS, LTD., CENTRAL
FLORIDA INVESTMENTS, INC., WESTGATE
RESORTS, INC., WESTGATE MARKETING,
LLC, WESTGATE VACATION VILLAS, LLC,
and CFI RESORTS MANAGEMENT, INC.,

        Defendants.

CASE NO.: 3:18-cv-00410

CLASS ACTION

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFFS' THIRD AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND ......................................................................................... 1

    A.  Westgate's Scheme to Conceal Material Information from its Customers ............ 1

    B.  Plaintiffs' Timeshare Purchases ............................................................................ 2

III.  ARGUMENT ................................................................................................................. 3

    A.  Plaintiffs plausibly plead claims under the Tennessee Timeshare Act and Tennessee common law. ......................................................................................... 3

        1.  Legal Standard ............................................................................................. 3

        2.  Plaintiffs plausibly plead Tennessee Timeshare Act and common law claims. ................................................................................................... 3

    B.  Westgate's fraudulently induced contracts are no defense to fraud. ..................... 4

    C.  Plaintiffs properly plead claims for civil conspiracy. ............................................ 7

    D.  Westgate's untimeliness defenses fail at the pleading stage given Plaintiffs' well-pleaded allegations of fraudulent concealment ............................ 9

    E.  The Court has jurisdiction over all Defendants. .................................................. 14

        1.  Legal Standard ........................................................................................... 15

        2.  Consent Jurisdiction .................................................................................. 16

        3.  Specific Jurisdiction .................................................................................. 16

    F.  Westgate has not met its burden of showing that the class allegations should be stricken. .............................................................................................. 19

        1.  Legal Standard ........................................................................................... 19

        2.  Westgate only challenges predominance, but its challenge is premature. ................................................................................................... 20

        3.  Tennessee Timeshare Act .......................................................................... 21

        4.  Unjust Enrichment .................................................................................... 23

        5.  Fraud & Misrepresentation ....................................................................... 24

        6.  Breach of Contract .................................................................................... 25

        7.  Statute of Limitations ................................................................................ 25

    G.  Plaintiffs are entitled to a jury trial because the contract is void and was fraudulently induced. ......................................................................................... 26

**TABLE OF CONTENTS**
**(continued)**

IV.     CONCLUSION ............................................................................................................. 27

# TABLE OF AUTHORITIES

Page

**Cases**

*Amini v. Oberlin Coll.*,
  259 F.3d 493 (6th Cir. 2001) ................................................................. 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 3

*Bearden v. Honeywell Int'l, Inc.*,
  No. 3:09-01035, 2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) ......................... 24

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................. 3

*Berry v. Mortg. Elec. Registration Sys.*,
  No. W2013-00474-COA-R3CV, 2013 WL 5634472 (Tenn. Ct. App. Oct. 15, 2013)............. 14

*Brannon, et al. v. Westgate Resorts, Inc., et al.*,
  No. 6:19-cv-01750 (M.D. Fla. Sept. 9, 2019) ................................................. 15

*Braswell v. Carothers*,
  863 S.W.2d 722 (Tenn. Ct. App. 1993) ........................................................ 11

*Butler v. Butler*,
  No. W2007-01257-COA-R3-CV, 2008 WL 5396019 (Tenn. Ct. App. Dec. 23, 2008)... 5, 6, 13

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) ................................................................... 26

*Chenault v. Walker*,
  36 S.W.3d 45 (Tenn. 2001) ..................................................................... 19

*Childs v. United Cmty. Bank*,
  No. 3:08-CV-271, 2009 WL 2244634 (E.D. Tenn. July 24, 2009) ............................. 8

*Cope v. Metro. Life Ins. Co.*,
  82 Ohio St. 3d 426 (1998) ...................................................................... 5

*Crouch v. Bridge Terminal Transp., Inc.*,
  No. M2001-00789-COA-R3CV, 2002 WL 772998 (Tenn. Ct. App. Apr. 30, 2002) ............. 24

*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006) .................................................................. 22

*Data Disc, Inc. v. Systems Technology Associates, Inc.*,
  557 F.2d 1280 (9th Cir. 1977) ................................................................. 16

*Davenport v. State Farm Mut. Auto. Ins. Co.*,
  756 S.W.2d 678 (1988)......................................................................... 16

1928440.2

*DBI Investments, LLC v. Blavin*,
   617 F. App'x 374 (6th Cir. 2015) ............................................. 6

*Diamond Resorts Int'l, Inc. v. Phillips*,
   No. 3:17-CV-1124, 2018 WL 3326443 (M.D. Tenn. Jan. 24, 2018) ........................................ 7

*Fieger v. Cox*,
   524 F.3d 770 (6th Cir. 2008) ............................................... 8

*First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*,
   489 S.W.3d 369 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2511 (2016) ................. 16, 17

*Flatt v. Aspen Dental Mgmt., Inc.*,
   No. 2:18-CV-1278, 2019 WL 6044159 (S.D. Ohio Nov. 15, 2019) ........................................ 15

*Freeman Indus., LLC v. Eastman Chem. Co.*,
   172 S.W.3d 512 (Tenn. 2005) ............................................. 23

*Garrett v. J.D. Specialties, Inc.*,
   No. 2:09-CV-195, 2010 WL 3862891 (E.D. Tenn. Sept. 28, 2010) .......................... 4

*Goot v. Metro. Gov't of Nashville & Davidson Cnty.*,
   No. M2003-02013-COA-R3-CV, 2005 WL 3031638 (Tenn. Ct. App. Nov. 9, 2005) ............ 11

*Gutierrez v. Lynch*,
   826 F.2d 1534 (6th Cir. 1987) ............................................. 8

*Ham v. Swift Transp. Co. Inc.*,
   275 F.R.D. 475 (W.D. Tenn. 2011) ......................................... 23

*Hayes v. Washburn*,
   No. M2006-01135-COA-R3CV, 2007 WL 3202765 (Tenn. Ct. App. Oct. 31, 2007) ......... 5, 10

*In re Estate of Davis*,
   308 S.W.3d 832 (Tenn. 2010) ............................................... 9

*In re Polyurethane Foam Antitrust Litig.*,
   314 F.R.D. 226 (N.D. Ohio 2014) ......................................... 11

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) .......................................... 23

*Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*,
   No. M2015-02524-SC-R11-CV, 2019 WL 256716 (Tenn. Jan. 18, 2019) ............... 11

*Kincaid v. SouthTrust Bank*,
   221 S.W.3d 32 (Tenn. Ct. App. 2006) ...................................... 7

*Laundries, Inc. v. Coinmach Corp.*,
   No. M2011-01336-COA-R3CV, 2012 WL 982968 (Tenn. Ct. App. Mar. 20, 2012) ............... 7

*Lindenberg v. Jackson Nat'l Life Ins. Co.*,
912 F.3d 348 (6th Cir. 2018) ............................................................................ 26

*Llewellyn–Jones v. Metro Property Group, LLC*,
22 F.Supp.3d 760 (E.D. Mich. 2014) .................................................................. 6

*Lowell v. Summer Bay Mgmt., L.C.*,
No. 3:13-CV-229-TAV-CCS, 2014 WL 1092187 (E.D. Tenn. Mar. 17, 2014) ................ 21, 23

*Lyons v. Farmers Ins. Exch.*,
26 S.W.3d 888 (Tenn. Ct. App. 2000) .................................................................. 6

*Masada Inv. Corp. v. Allen*,
697 S.W.2d 332 (Tenn. 1985) ............................................................................ 18

*Matter of Rhone-Poulenc Rorer, Inc.*,
51 F.3d 1293 (7th Cir. 1995) ............................................................................ 26

*Messner v. Northshore Univ. Health Sys.*,
669 F.3d 802 (7th Cir. 2012) ............................................................................ 25

*Monroe v. FTS USA, LLC*,
860 F.3d 389 (6th Cir. 2017) ........................................................................ 22, 25

*Parko v. Shell Oil Co.*,
739 F.3d 1083 (7th Cir. 2014) .......................................................................... 22

*Phipps v. Wal-Mart Stores, Inc.*,
No. 3:12-01009, 2016 WL 10649206 (M.D. Tenn. Nov. 18, 2016) ......................... 19

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) ............................................................................ 20

*Preferred Capital, Inc. v. Assocs. in Urology*,
453 F.3d 718 (6th Cir. 2006) ............................................................................ 15

*Redwing v. Catholic Bishop for Diocese of Memphis*,
363 S.W.3d 436 (Tenn. 2012) ...................................................................... 11, 12

*S. Mach. Co. v. Mohasco Indus., Inc.*,
401 F.2d 374 (6th Cir. 1968) ........................................................................ 17, 18

*Serras v. First Tennessee Bank Nat. Ass'n*,
875 F.2d 1212 (6th Cir. 1989) .......................................................................... 16

*Sherrod v. Enigma Software Grp., USA, LLC*,
No. 2:13-cv-36, 2016 WL 25979 (S.D. Ohio Jan. 4, 2016) ............................... 19, 26

*Solo v. United Parcel Serv. Co.*,
819 F.3d 788 (6th Cir. 2016) ............................................................................ 23

*Stanfill v. Hardney*,
   No. M2004-02768-COA-R3-CV, 2007 WL 2827498 (Tenn. Ct. App. Sept. 27, 2007) ........... 8

*Stanifer v. Brannan*,
   564 F.3d 455 (6th Cir. 2009) ........................................................................................ 15

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................................... 21

*Suchanek v. Sturm Foods, Inc.*,
   764 F.3d 750 (7th Cir. 2014) ...................................................................................... 24

*SunTrust Bank v. Ritter*,
   No. E2017-01045-COA-R3-CV, 2018 WL 674000 (Tenn. Ct. App. Feb. 1, 2018) ............... 10

*Swafford v. Memphis Individual Practice Ass'n*,
   No. 02A01-9612-CV-00311, 1998 WL 281935 (Tenn. Ct. App. June 2, 1998) ............... 11, 14

*Theunissen v. Matthews d/b/a Matthews Lumber Transfer*,
   935 F.2d 1454 (6th Cir. 1991) ................................................................................. 15, 17

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
   71 S.W.3d 691 (Tenn. 2002) ........................................................................................ 9

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................................................... 20, 22, 24, 25

*U.S. v. Brookdale Senior Living Communities, Inc.*,
   892 F.3d 822 (6th Cir. 2018) ........................................................................................ 3

*United Agric. Servs., Inc. v. Scherer*,
   17 S.W.3d 252 (Tenn. Ct. App. 1999) ......................................................................... 17

*Webb v. First Tennessee Brokerage, Inc.*,
   No. E2012-00934-COA-R3-CV, 2013 WL 3941782 (Tenn. Ct. App. June 18, 2013) ........... 26

*Weberg v. Franks*,
   229 F.3d 514 (6th Cir. 2000) ........................................................................................ 9

*Wyatt v. Union Mortgage Co.*,
   598 P.2d 45 (Cal. 1979) ............................................................................................. 11

**Statutes**

28 U.S.C. § 1631 ........................................................................................................... 15

42 U.S.C. § 1983 ............................................................................................................. 8

42 U.S.C. § 1985 ............................................................................................................. 8

Tenn. Code Ann. § 20-2-201 ......................................................................................... 17

Tenn. Code Ann. § 20-2-223 ................................................................................... 17

Tenn. Code Ann. § 29-26-116(3) .............................................................................. 10

Tenn. Code Ann. § 29-28-103 .................................................................................. 10

Tenn. Code Ann. § 66-32-101, *et seq.* ............................................................. 3, 9, 21

**Rules**

4 Charles Alan Wright, Arthur R. Miller & Adam M. Steinman, Federal Practice & Procedure § 1067.3 (2015 4th ed.) .................................................................................. 16

**Treatises**

Tenn. Const. art. I, § 6 .............................................................................................. 26

1928440.2

# I. INTRODUCTION

Plaintiffs are six individuals or couples who purchased timeshare properties from Defendants Westgate Resorts, Ltd., Central Florida Investments, Inc., Westgate Resorts, Inc., Westgate Marketing, LLC, Westgate Vacation Villas, LLC, and CFI Resorts Management, Inc. (collectively, "Westgate"). This proposed class action alleges that Westgate cheated Plaintiffs (and the proposed class of many thousands of timeshare "buyers") by uniformly failing to disclose materials facts about the true nature of their "floating use" timeshares, including that owners would rarely, if ever, be able to use the units and/or floor plans they purchased, rendering them of little value. In short, Defendants uniformly failed to deliver what the proposed class members bargained for, in violation of Tennessee common law and the Tennessee Time-Share Act ("TTSA"). Westgate asks the Court to dismiss all claims at the threshold because, Westgate asserts, certain Plaintiffs fail to state claims for relief, the Court lacks personal jurisdiction over some defendants, and Plaintiffs' class allegations and jury demand should be stricken. But because Plaintiffs plausibly allege that Westgate employed a fraudulent scheme to induce their purchase of timeshare properties, fail to deliver the properties it promised, and prevent them from rescinding their transactions—long before (and after) any wildfires that Westgate now references—Westgate's motion should be denied.

# II. FACTUAL BACKGROUND

## A. Westgate's Scheme to Conceal Material Information from its Customers

Westgate's aggressive business model relies on one essential premise: it makes money by selling shares in timeshare units, not by customers using the weeks they have purchased in those units. As a result, Westgate has every incentive to sell as many fractional ownership interests as possible, delay the delivery of deeds to purchasers, and prevent them from using and occupying timeshare properties that Westgate could more profitably use to induce the next "mooches" —as one Westgate executive referred to its customers—to purchase a timeshare. Third Amended Complaint ("TAC") ¶¶

36-38. Its high-pressure sales tactics are designed to get unsuspecting customers to "buy today" so Westgate can "sell every unit 52 times." *Id.*

But Westgate purports to sell something far better than its customers actually receive. Westgate uniformly fails to adequately provide customers with legally required disclosures by refusing adequately to train and to supervise its sales agents—even encouraging them to lie in the context of high-pressure sales pitches. And Westgate fails to require that they disclose material information to prospective purchasers—in many cases providing them with a closing folio to use that contains a "secret pocket" where the closing officers can conceal legally required material disclosures, including about purchasers' statutory right to rescind their purchase, restrictions on use or occupancy, and the arrangements Westgate uses to manage the timeshare program.

As detailed in the TAC, Westgate also fails to provide purchasers adequate access to their timeshares. Westgate fails to adequately disclose to purchasers that their timeshare interest is not specific to a unit or floor-plan but will be subject to a "floating use" plan, and that, because Westgate oversells the Resort, availability will be severely limited.

B.    **Plaintiffs' Timeshare Purchases**[1]

Plaintiffs Marilyn Moore, Ryan and Laura Spado, Ellen and Larry Gilliland, Gerold Gallegos and Deborah Campbell, Brian and Danyelle Miller, and Tonya Melfi each experienced one or more high-pressure sales pitches from Westgate between 2008 and 2018. Each purchased a timeshare property from Westgate, whose agent never disclosed that they were not purchasing an entitlement to use a specific unit but were buying into a floating use plan, and that their ability to reserve the timeshare would be severely limited—in some cases not available at all for any reasonable use. None were told of their statutory right to rescind the purchase, and some Plaintiffs' closing documents,

---

[1] Plaintiffs' individual factual allegations are summarized here but set forth in detail in the Third Amended Complaint (TAC), ¶¶ 61-113.

including the legally required disclosures, were concealed in a black folio provided by Westgate.

Plaintiffs were not able to reserve their timeshare as reasonably expected based on Westgate's sales and marketing. In some cases, Plaintiffs who complained to Westgate about the lack of availability were sold purported "upgrades"—in which case Westgate profited two or three times from the same fraud. No Plaintiff would have purchased the timeshare unit had Westgate disclosed to them that they had a right to rescind the contract and prevented them from exercising that right, and/or that they would not be able to stay in an equivalent unit because the Resort was oversold. TAC ¶¶ 78, 87, 98, 106, 113, 186, 203.

All of the conduct detailed in the TAC amounts to a common scheme to violate Tennessee law and to swindle Plaintiffs and the proposed Class.

## III. ARGUMENT

### A. Plaintiffs plausibly plead claims under the Tennessee Timeshare Act and Tennessee common law.

#### 1. Legal Standard

In ruling on a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *U.S. v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822 (6th Cir. 2018). A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), meaning it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### 2. Plaintiffs plausibly plead Tennessee Timeshare Act and common law claims.

Plaintiffs allege two claims against Westgate under the Tennessee Timeshare Act, Tenn. Code Ann. § 66-32-101, *et seq.*, for (1) deliberately engaging in a scheme to prevent purchasers from

rescinding contracts, TAC ¶¶ 146-52, and (2) concealing material facts from consumers regarding the

lack of unit availability due to Defendants' practice of overselling the Resort, delaying the frequent

deliveries of deeds, failing to disclose consumers' statutory rights to rescind, and failing to maintain

legally required escrow accounts, TAC ¶¶ 155-65. Plaintiffs also plead claims for unjust enrichment,

fraudulent misrepresentation by omission, fraud in the inducement, negligent misrepresentation,

breach of contract, and civil conspiracy. With one exception (*see infra* Sec. III.C), Westgate does not

dispute that Plaintiffs plausibly plead the substantive elements of each claim.

### B.    Westgate's fraudulently induced contracts are no defense to fraud.

Westgate's primary defense on the merits is that the mountain of fine-print documents

Westgate claims Plaintiffs signed defeats Plaintiffs' claims sounding in fraud, negligence, unjust

enrichment, breach of contract, and the Tennessee Timeshare Act (Defs'. Br. In Supp. at 12-13). This

defense is wrong as a matter of law. And Westgate, of all defendants, should know this, since the

Tennessee Court of Appeals rejected the same argument when Westgate made it in *Overton v.*

*Westgate Resorts, Ltd., L.P.*, No. E2014-00303-COAR3CV, 2015 WL 399218 (Tenn. Ct. App. Jan.

30, 2015).[2]

Tennessee law has long recognized that where, as here, the gravamen of a complaint is

fraud—a point Westgate concedes, *see* Doc. 102, Defs'. Br. in Supp. at 15 (gravamen of TAC is

"fraud or misrepresentations")—courts are free to consider evidence outside of a contract whose

---

[2] Westgate asks the Court to consider materials outside the pleadings that it contends are referred to in the TAC and "central to [Plaintiffs'] claim[s]," *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Plaintiffs dispute that these transaction documents, cherry-picked by Westgate, are central to their claims. In the event the Court opts to convert the motion to a motion for summary judgment, Plaintiffs request that they be given an opportunity to obtain additional discovery and "respond with relevant evidence." *See Garrett v. J.D. Specialties, Inc.*, No. 2:09-CV-195, 2010 WL 3862891, at *3 (E.D. Tenn. Sept. 28, 2010) (Greer, J.) ("A district court must, however, provide a party with an opportunity to respond with relevant evidence before converting a motion to dismiss pursuant to Rule 12(b)(6) into a motion for summary judgment.") (citing *Briggs v. Ohio Elections Comm'n,* 61 F.3d 487, 493 (6th Cir. 1995)).

signing was induced by the fraud. "A claim for fraudulent misrepresentation in inducement seeks to *rescind the contract* on the grounds that one party fraudulently induced the other to enter the contract; such claims are based in tort, and the parol evidence rule does not bar parol evidence to prove the alleged fraud even where the evidence contradicts the written contract." *Butler v. Butler*, No. W2007-01257-COA-R3-CV, 2008 WL 5396019, at *6–7 (Tenn. Ct. App. Dec. 23, 2008) (holding that "the parol evidence rule does not apply to claims of fraudulent misrepresentation in inducement of a contract") (citations omitted); *Hayes v. Washburn*, No. M2006-01135-COA-R3CV, 2007 WL 3202765, at *4 (Tenn. Ct. App. Oct. 31, 2007) (stating that where contract was fraudulently induced, "defrauded party is entitled to rescission."). The Tennessee Court of Appeals recognized as much in *Overton*, repudiating Westgate's position in a case that is factually similar to this one. There, the Tennessee Court of Appeals observed that the plaintiffs who alleged (and subsequently proved) they were fraudulently induced into signing Westgate's timeshare contract were not bound by the contract's terms. 2015 WL 399218, at *12 (footnote omitted). The Court of Appeals reiterated its prior holding that "fraud in the underlying transaction renders a contract clause . . . unenforceable," and held that the trial court properly refused to enforce Westgate's forum selection clause. *Id.* (quoting *Lamb*, 26 S.W.3d at 631).

Here, Plaintiffs allege that Westgate engaged in a deliberate and common scheme to induce Plaintiffs and the class to purchase timeshare interests while uniformly failing to disclose to purchasers the true nature of their timeshares, including that owners would rarely, if ever, be able to use the units, rendering them of little value. *See, e.g.*, TAC ¶¶ 4, 36, 117, 169, 191-207. Plaintiffs are entitled to present evidence of such common fraudulent conduct at trial, even if it contradicts the contract. *Cf. Butler*, 2008 WL 5396019, at *6–7; *Cope v. Metro. Life Ins. Co.*, 82 Ohio St. 3d 426, 436 (1998) (fraudulent inducement cases involving common omissions "are generally certified as class

actions").

Westgate's authority is not to the contrary. In *Lyons v. Farmers Ins. Exch.*, an insurance agent sued Farmers' Insurance, alleging that although he signed a contract allowing Farmers to terminate their relationship on three months' notice, Farmers' representative said they would never do that. 26 S.W.3d 888, 890 (Tenn. Ct. App. 2000). Upholding dismissal, the Court noted that the parol evidence rule is intended to prevent someone from avoiding the sole obligation of a written contract—signing a contract that made one representation and later claiming he or she was verbally promised just the opposite. *Id.* at 892-93. It observed that parol evidence "is not admissible to contradict, vary, or alter a written contract, when a written instrument is valid, complete, and unambiguous, *absent fraud or mistake or any claim or allegations thereof.*" *Id.* at 892. Here, of course, Plaintiffs claim they were uniformly fraudulently induced to sign the contract. Unlike *Lyons*, this is not a case of one contract term contradicted by a verbal representation: Plaintiffs allege that Westgate fraudulently induced them to sign contracts by using a company-wide, uniform scheme that involved a high-pressure sales pitch, the concealment of legally required disclosures including Plaintiffs' right of rescission, and the failure to disclose adverse material facts about Westgate's policy of overselling the Resort and restricting unit availability. Westgate cannot win dismissal of Plaintiffs' well-pleaded claims under the Tennessee Timeshare Act and common law by enforcing purported contractual agreements that were obtained through fraud. *See Butler*, 2008 WL 5396019, at *6–7.[3]

---

[3] Westgate's reliance on *DBI Investments, LLC v. Blavin*, 617 F. App'x 374 (6th Cir. 2015)—a case applying Michigan law to a contractual dispute between sophisticated business investors—is similarly misplaced. Unlike this case, the plaintiff in *DBI Investments* did not allege that it was "'tricked' into entering the contract," but rather alleged "nonperformance of the relevant contract provisions." *Id.* at 382. In fact, the Sixth Circuit in *DBI Investments* expressly recognized that a tort claim for fraudulent inducement *can* proceed under Michigan law "notwithstanding the existence of a contract" under circumstances where consumers allege "a 'bait-and-switch' scheme by the defendants to sell properties other than the ones shown and pictured during the transaction." *Id.* (citing *Llewellyn–Jones v. Metro Property Group, LLC,* 22 F.Supp.3d 760, 778–79 (E.D. Mich. 2014)) (applying Michigan law). Here, Westgate's conduct in promising Resort customers one thing and selling them another amounts to a

*Footnote continued on next page*

Nor do Westgate's fraudulently induced contracts dispose of Plaintiffs' unjust enrichment claims. *See Laundries, Inc. v. Coinmach Corp.*, No. M2011-01336-COA-R3CV, 2012 WL 982968, at *6 (Tenn. Ct. App. Mar. 20, 2012) (Quasi-contractual obligation will be imposed when contract has become unenforceable or invalid and defendant will be unjustly enriched.). Here, Plaintiffs allege that they were induced to sign Westgate's contracts through fraud; because that renders the contracts invalid, Plaintiffs' unjust enrichment claim is proper. Westgate's contract-based defenses to Counts I-VIII fail, and its motion should be denied on that basis.

**C.    Plaintiffs properly plead claims for civil conspiracy.**

Westgate challenges Plaintiffs' civil conspiracy allegations on two grounds. The first—that Plaintiffs' civil conspiracy allegation fails because Plaintiffs fail to state an underlying tort claim—is entirely derivative of Westgate's flawed contract-based arguments, discussed above, and fails for the same reasons they do. The second—that Plaintiffs fail to allege sufficient facts to show an agreement among Defendants—is belied by the facts plausibly alleged in the TAC.

Civil conspiracy is "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Diamond Resorts Int'l, Inc. v. Phillips*, No. 3:17-CV-1124, 2018 WL 3326443, at *3 (M.D. Tenn. Jan. 24, 2018) (citing *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)). One Magistrate Judge in this District noted that direct evidence of an agreement to do unlawful acts is not required:

> Civil conspiracies are rarely proven directly. They are more often established using circumstantial evidence and inferences drawn from the evidence, coupled with common-sense knowledge of the behavior of persons in similar circumstances. Thus, fact-finders may consider the nature of the acts themselves,

*Footnote continued from previous page*
classic bait-and-switch scheme. *See* SAC ¶ 92 (alleging "bait-and-switch"). Westgate's own (out-of-state) authority thus recognizes that Plaintiffs' statutory and common-law claims can proceed "notwithstanding the existence of a contract."

the relationship of the parties, the interests of the conspirators, and other circumstances.

*Childs v. United Cmty. Bank*, No. 3:08-CV-271, 2009 WL 2244634, at *3 (E.D. Tenn. July 24, 2009) (quoting *Stanfill v. Hardney*, No. M2004-02768-COA-R3-CV, 2007 WL 2827498, at *8 (Tenn. Ct. App. Sept. 27, 2007) (Koch, J.) ("Conspiracies, by their very nature, are formed in secret. In the absence of testimony of one of the conspirators, it is unlikely that direct evidence of a conspiratorial agreement will exist.")).

Here, Plaintiffs amply allege a scheme with a "common design" and "concerted action" among the various Defendants. The 248-paragraph TAC describes with specificity Westgate's scheme to defraud timeshare purchasers by "specifically train[ing] its sales agents to make misrepresentations and omissions during the sales process, including training them "to 'lie' in order to complete a sale." TAC ¶ 38. Westgate's various corporate entities work together to take its customers—"mooches" who are "greedy," as one senior Westgate executive said while training its sales agents—"and get them to buy today" so Westgate can "sell every unit 52 times." *Id.* In addition to high-pressure sales tactic training, Westgate provides black folios to facilitate the concealment, and fosters a commission-based compensation system designed, Plaintiffs allege, to conceal information from its customers on a widespread basis. *See* TAC §§ 36-60 (describing elements of fraudulent scheme). Westgate's contention that Plaintiffs fail to plead an agreement among Defendants is belied by the detailed allegations in the TAC.

Westgate cites no Tennessee authority requiring Plaintiffs to plead agreement with particularity, instead inexplicably relying on Sixth Circuit cases discussing the standard for pleading conspiracy under 42 U.S.C. §§ 1983 & 1985—federal civil rights laws that have no bearing on this case. *See* Defs'. Br. in Supp. at 14 (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) and *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)). The Sixth Circuit itself recognizes that this body of

law relates to federal statutory civil rights conspiracies, not state common-law claims. *See Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000) (noting that *Gutierrez* deals with "conspiracy claims *under § 1983*"). Westgate's challenge to Plaintiffs' civil conspiracy claim not only relies on inapposite authority but overlooks abundant evidence from which an agreement can be inferred; for these reasons, dismissal is unwarranted.[4]

      **D.**    **Westgate's untimeliness defenses fail at the pleading stage given Plaintiffs' well-pleaded allegations of fraudulent concealment.**

Westgate argues that all of Plaintiff Moore's claims are time-barred by a purported statute of repose, and that Plaintiffs Moore's and Spado's non-contract claims, as well as civil conspiracy claims by Plaintiffs Loveless, the Gillilands, and Gallegos and Campbell, are untimely under the statute of limitations. Defs'. Br. in Supp. at 17-19.[5] It maintains these plaintiffs cannot rely on the discovery rule, fraudulent concealment, or equitable estoppel to toll the limitations period. These arguments are legally incorrect and premature at the pleading stage; because all plaintiffs plausibly allege that the statute of limitations should be tolled, Westgate's timeliness challenge should be considered with the benefit of discovery at summary judgment or trial.

Westgate mischaracterizes the Tennessee Timeshare Act's statute of limitations, Tenn. Code Ann. § 66-32-119, as a statute of repose. Defs'. Br. in Supp. at 15-16. The first sign that this reading is incorrect is the title of the statutory section in question: "Statute of limitations." *See In re Estate of Davis*, 308 S.W.3d 832, 839 (Tenn. 2010) (considering section heading in determining limitations period was not a statute of repose). The second sign is the text of the statute itself, which refers to a

---

[4] Westgate does not contend that Plaintiffs allege an intracorporate conspiracy, *see Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703-05 (Tenn. 2002) (There can be "no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, *each acting within the scope of his or her employment.*") (emphasis in original), and with good reason: Westgate's personal jurisdiction argument rests on the premise that the various corporate defendants are separate and distinct entities, not mere alter egos of one another.

[5] Westgate does not challenge the Millers' or Tonya Melfi's claims as untimely.

"period of limitation," only purports to limit the time period for filing suit after a timeshare-contract-based cause of action *accrues* or *re-accrues*, and does not include the telltale signs of being a statute of repose: two dates (one for limitations, one for repose) or language such as "notwithstanding any exceptions to these provisions [the action] must be brought within . . ."; "in no event"; or "in any event." *See generally Hayes*, 1996 WL 452916, at *2-3 (6th Cir. 1996) (analyzing plain language of statutes of repose)[6]; *SunTrust Bank v. Ritter*, No. E2017-01045-COA-R3-CV, 2018 WL 674000, at *4 (Tenn. Ct. App. Feb. 1, 2018) (discussing the difference between statutes of limitation and statutes of repose). The medical malpractice and products liability statutes of limitation and repose—to which Westgate analogizes—do, on the other hand, include that language.  Tenn. Code Ann. §§ 29-28-103, 29-26-116(3). The final sign that Westgate's statutory construction is mistaken is Westgate's utter failure to cite another court that has interpreted the Tennessee Timeshare Act's limitations period to be a statute of repose—because no court has ever done so—followed by its "assuming *arguendo* it's not a statute of repose" argument.  *See* Defs'. Br. in Supp. at 17-18. This Court should not become the first to adopt Westgate's novel reinterpretation of the Tennessee Timeshare Act's self-described "statute of limitations."

Westgate misstates the statute of limitations applicable to a civil conspiracy. Defs'. Br. in Supp. at 15 ("Claims for civil conspiracy are subject to a one-year statute of limitations."). The limitations period for a civil conspiracy is determined by the underlying tort.  *Swafford v. Memphis Individual Practice Ass'n*, No. 02A01-9612-CV-00311, 1998 WL 281935, at *11 (Tenn. Ct. App.

---

[6] Westgate reads *Hayes* to mean that because the legislature did not include "language affirming the supplemental nature of equitable principles" or the continued viability of fraudulent concealment tolling, it must not have intended for them to apply.  But that language is only necessary where, as in the products liability statute of repose, "the plain language is so broad as to displace pre-existing common law principles of law and equity." *Hayes*, 1996 WL 452916, at *2. No reaffirmations of equitable principles are needed here because the plain language of the Tennessee Timeshare Act is not similarly expansive. *Davis*, 308 S.W.3d at 842 (no specific exception needed because "courts may infer that our legislature knew that fraudulent concealment would typically apply as an exception to a statute of limitations").

June 2, 1998). In *Braswell v. Carothers*, which Westgate cites, the object of the conspiracy involved

personal injury, so the one-year statute of limitations governing personal injury actions applied. 863

S.W.2d 722, 725 (Tenn. Ct. App. 1993). Here, Westgate concedes that the gravamen of Plaintiffs'

complaint is "fraud and misrepresentations," so the three-year statute of limitations for fraud applies.

Mot. at 15.[7] *See Swafford*, 1998 WL 281935, at *11-13 (citing *Wyatt v. Union Mortgage Co.*, 598

P.2d 45, 53 (Cal. 1979)). The statute begins to run at the time of a co-conspirator's last overt act in

furtherance of the conspiracy. *Id.*

All Plaintiffs plausibly allege that the discovery rule, Westgate's fraudulent concealment of

the harm, and equitable estoppel toll the applicable limitations periods.[8] *See Redwing v. Catholic*

*Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (discussing these tolling

doctrines); *Overton*, 2015 WL 399218, at *11 (applying discovery rule in Westgate timeshare fraud

case); *see also In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 271 (N.D. Ohio 2014)

(finding that fraudulent concealment can toll limitations period on a class-wide basis). Whether in the

context of the discovery rule, estoppel, or concealment, "[t]he issue of whether [a plaintiff] exercised

reasonable diligence to discover his claims against the [defendant] is a question of fact"—evaluated

under an objective standard, *see In re Polyurethane Foam*, 314 F.R.D. at 271—and dismissal is

unwarranted where the allegations in the Complaint would permit a reasonable fact-finder to conclude

that a plaintiff exercised reasonable diligence, not expecting the defendant to deceive her, or that the

---

[7] To the extent Westgate argues this case merely stems from a contract dispute, a six-year statute of limitations would apply.

[8] Contrary to Westgate's assertion, Defs'. Br. in Supp. at 16, the discovery rule may apply to contract actions if the breach is "inherently undiscoverable," because "(1) the breach of contract was difficult for the plaintiff to detect, (2) the defendant was in a far superior position to comprehend the breach and the resulting damage, or (3) the defendant had reason to believe that the plaintiff remained ignorant that it had been wronged." *Goot v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2003-02013-COA-R3-CV, 2005 WL 3031638, at *11 (Tenn. Ct. App. Nov. 9, 2005) (citation omitted); *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, No. M2015-02524-SC-R11-CV, 2019 WL 256716, at *31 (Tenn. Jan. 18, 2019) (discussing policy considerations underlying discovery rule and declining to hold it inapplicable to contract actions).

defendant fraudulently concealed its knowledge of and responsibility for its agent's conduct. *Redwing*, 363 S.W.3d at 466-67.

Westgate contends that Plaintiff Moore failed to allege diligence. Defs'. Br. in Supp. at 18. But the TAC is replete with allegations demonstrating that Westgate, with its superior knowledge and bargaining power, deliberately misled her and all Plaintiffs in connection with their timeshare purchases, conditions of ownership, and purchase upgrades, omitting and concealing legally required disclosures from them—including their right to rescind the timeshare contracts—defrauding them notwithstanding any exercise of reasonable diligence. *See* TAC ¶¶ 62, 128, 130, 151, 212, 217 (explaining that Westgate's fraudulent conduct thwarted any exercise of diligence). If discovery reveals proof of Plaintiffs' allegations, a reasonable fact-finder could conclude, under the circumstances, that Westgate is not entitled to rely on the statute of limitations due to its fraudulent conduct.

None of the other Plaintiffs' claims are time-barred as pleaded, either. First, Plaintiffs allege that Westgate failed to provide adequate disclosures and often concealed the public offering statement from them, preventing them from knowing, among other things, that they had a legal right to rescind the contract. This is the essence of fraudulent concealment tolling, which is warranted when a defendant "tak[es] affirmative steps to conceal the cause of action" or injury from a plaintiff. *Redwing*, 363 S.W.3d at 462 (internal quotation marks omitted). Based on these allegations, dismissal of the Timeshare Act or tort claims would be inappropriate.

Second, Plaintiffs plausibly plead the discovery rule, estoppel, and fraudulent concealment tolling. Plaintiffs allege that their claims are timely because the facts common to the class establish that they could not discern the true nature and value of their property purchases until years after purchasing them, due to Westgate's actions; that Westgate, with superior knowledge and legal

position, fraudulently concealed rather than disclosing the material facts giving rise to Plaintiffs'

claims, including the right to rescind the transaction and/or receive a warranty deed; and that given its

ongoing concealment, Westgate is estopped from relying on the statute of limitations; all accompanied

by specific allegations of Westgate's continuing fraud. TAC ¶¶ 128-32. Westgate again cites its

purported disclosure documents as evidence it did not conceal or fail to disclose material facts, Defs'.

Br. in Supp. at 18, but Plaintiffs allege that the documents themselves were often concealed from them

"by commission-based sales and closing agents through the use of a folio containing a secret pocket

and the other high-pressure sales tactics described herein, including statements from licensed sales

agents which materially contradict the disclosure." *Id.* ¶ 132. Westgate cannot win dismissal of

Plaintiffs' claims merely by attaching the fruits of its fraud to the motion to dismiss. *See Butler*, 2008

WL 5396019, at *6–7.

Third, each Plaintiff whose allegations Westgate challenges describes the facts and

circumstances—which are common across the Named Plaintiffs and the class—preventing him or her

from discovering the fraud and seeking redress sooner, and Westgate does not challenge Plaintiffs'

substantive pleading of the fraudulent scheme:

- Plaintiff Marilyn Moore's last transaction occurred in November 2013—undeniably
  within the contractual limitations period—but due to Westgate's fraudulent concealment
  of the public offering statement, she did not know she had a right to rescind the contract
  until "years later"; only recently did she learn that "tens of thousands of people own
  timeshare properties at the Resort," a material fact that put her on notice of a cause of
  action for fraud. *See* TAC ¶¶ 75-78.

- Plaintiffs Spado allege that Westgate persuaded them to upgrade to a "specific unit" in
  2012, but despite their exercise of reasonable diligence, it only became apparent to them
  that the transaction was fraudulent in 2016, when Westgate claimed that an "error" in the
  closing papers would require them to sign a contract addendum. TAC ¶ 66.

- Plaintiffs Gilliland purchased in December 2015 and were subject to the same ongoing
  concealments described above, and were never informed of their right to rescind the
  contract; in May 2016 they "upgraded" to purchase what they had previously purchased.

TAC ¶¶ 86-94.

- Plaintiffs Gallegos and Campbell purchased their timeshare after Westgate subjected them to high-pressure sales tactics in September 2017. Westgate concealed their right to rescind and actually refused to refund their money when asked. Only recently have Plaintiffs learned that they cannot stay at the Resort due to the lack of availability of the unit they purchased. TAC ¶¶ 95-105.

Plaintiffs allege that Westgate fraudulently prevented them from discovering their claims, and that, for each Plaintiff, Westgate's last overt acts of misrepresentation and concealment continued well into any limitations period. *See Swafford*, 1998 WL 281935, at *11-13.

Finally, with respect to the civil conspiracy count, Plaintiffs allege that information detailing Defendants' conspiracy and the common control of all Defendants is "presently in the exclusive control of Defendants," who knowingly took fraudulent actions to conceal information material to their civil conspiracy claim. TAC ¶¶ 234-41. Under such circumstances, Plaintiffs could not learn of the conspiracy sooner. Westgate has not met its burden of establishing that Plaintiffs "can prove no set of facts establishing a defense to the ... statute of limitations," and its motion should be denied. *Berry v. Mortg. Elec. Registration Sys.*, No. W2013-00474-COA-R3CV, 2013 WL 5634472, at *6 (Tenn. Ct. App. Oct. 15, 2013).

## E.     The Court has jurisdiction over all Defendants.

Westgate does not challenge the Court's jurisdiction over Westgate Resorts, Ltd., Westgate Marketing, LLC, or CFI Resorts Management, Inc. Rather, it contends that Westgate Resorts, Inc., Westgate Vacation Villas, LLC, and Central Florida Investments, Inc. are not subject to Tennessee's jurisdiction. But all three defendants have sufficient contacts with the state to support its exercise of specific jurisdiction, and Westgate Resorts, Inc., has consented to the Court's jurisdiction by designating an agent for service of process in Tennessee.

Plaintiffs sought jurisdictional discovery regarding the so-called "Non-Resort Defendants," but Defendants refused to produce it, requiring Plaintiffs to file a motion to compel the production of

-14-

documents [Doc. 62] and to oppose Defendants' motion for a protective order from Plaintiffs' Notice of Corporate Representative [Doc. 86]. The Court determined that Plaintiffs have "established the need for further jurisdictional discovery" and has ordered the so-called Non-Resort Defendants to provide Plaintiffs with certain documents establishing the formal business relationship between the Resort and Non-Resort Defendants and to provide testimony through Rule 30(b)(6) depositions on jurisdictional issues. [Doc. 93 at 11; Doc. 100 at 9.] The parties have scheduled the Rule 30(b)(6) deposition on jurisdictional issues for February 26, 2020. Thus, any decision on the Court's jurisdiction over the Non-Resort Defendants should await the completion of jurisdictional discovery.[9]

### 1.    Legal Standard

To defeat Westgate's Rule 12(b)(2) motion, Plaintiffs' burden is "relatively slight": Plaintiffs need only make a prima facie showing of personal jurisdiction in order to quash Westgate's motion. *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991); *accord Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 720 (6th Cir. 2006). The Court must view the pleadings and any supporting materials in a light most favorable to Plaintiffs, and the Court should not weigh "the controverting assertions of the party seeking dismissal." *Theunissen,* 935 F.2d at 1459. "Any other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *Serras v. First*

---

[9] Notably, Defendants have not asked the Court to transfer this matter to the Middle District of Florida, where under Defendants' theory, the court would unquestionably have personal jurisdiction over all defendants. In that district, there is also another matter involving similar allegations of fraud and omissions pending against Westgate defendants related to another property (Branson, MO), where Westgate uses a substantially identical business model. *See Brannon*, *et al. v. Westgate Resorts, Inc., et al.,* No. 6:19-cv-01750 (M.D. Fla. Sept. 9, 2019). The Court has the authority, *sua sponte*, to order such transfer in lieu of dismissal for want of personal jurisdiction. *See* 28 U.S.C. § 1631 (Whenever a court "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed . . . ."); *Flatt v. Aspen Dental Mgmt., Inc.*, No. 2:18-CV-1278, 2019 WL 6044159 (S.D. Ohio Nov. 15, 2019)(Section 1631 "authorizes a district court to transfer a case to an appropriate district, 'in the interest of justice,' when the court finds 'a want of jurisdiction.'") (citing *Stanifer v. Brannan*, 564 F.3d 455, 456-457 (6th Cir. 2009)).

*Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)). If a defendant alleges facts that would defeat the court's personal jurisdiction, the district court may "order discovery broad enough to prepare the parties" for an evidentiary hearing on personal jurisdiction. *Id.* Or a district court "may find sound reasons to rule, on the basis of written submissions, that the plaintiff has made her *prima facie* showing that the court has personal jurisdiction over a defendant, and to reserve all factual determinations on the issue for trial." *Id.* at 1215.

### 2. Consent Jurisdiction

Westgate Resorts, Inc. consented to Tennessee's jurisdiction by registering an agent for service of process here. Consent jurisdiction has been the law in Tennessee since the late 1800s. *See Davenport v. State Farm Mut. Auto. Ins. Co.*, 756 S.W.2d 678 (1988) (observing that in Tennessee, by registering an agent for service of process a corporation consents to general personal jurisdiction); *see also* Wright, Miller & Steinman, Federal Practice & Procedure § 1067.3 (2015 4th ed.) ("Wright & Miller") (a defendant can manifest consent to jurisdiction by failing to object to jurisdiction "or appointing an in-state agent"). In *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*—a case relied on by Westgate—the Tennessee Supreme Court again reiterated that consent jurisdiction exists in Tennessee. 489 S.W.3d 369, 401 (Tenn. 2015), *cert. denied*, 136 S. Ct. 2511 (2016).

Westgate Resorts, Inc. appointed a registered agent to receive process in Tennessee. *See* Ex. A, Declaration of Christopher Coleman ("Coleman Decl."), ¶ 2 (attaching Tennessee Secretary of State Business Entity Record, *available at* https://bit.ly/2Few8ff). Accordingly, Westgate Resorts, Inc.'s jurisdictional challenge should be rejected because consented to general jurisdiction in Tennessee by registering an agent for service of process here.

### 3. Specific Jurisdiction

Tennessee's long-arm statute authorizes specific personal jurisdiction over a defendant that,

acting "directly or indirectly," transacts business in Tennessee, contracts in Tennessee, has an interest in real property in Tennessee, or causes tortious injury in Tennessee. Tenn. Code Ann. § 20-2-223. "A corporation or trust having any transaction with persons or having any transaction concerning any property situated in this state, through any agency whatever acting for it within the state, shall be held to be doing business here within the meaning of this section." *Id.* § 20-2-201. The long-arm statute extends to the limits of due process, meaning that specific jurisdiction is appropriate if the defendant has "minimum contacts" with Tennessee, meaning it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *First Cmty. Bank, N.A*, 489 S.W.3d at 389 (citation omitted).

Personal jurisdiction can be established by out-of-state conduct causing consequences for in-state residents. *See generally Theunissen*, 935 F.2d at 1460 ("Purposeful availment by the defendant of the privilege of acting in, or causing consequence in, the forum state is 'the *sine qua non* of *in personam* jurisdiction.'") (citation omitted). In *S. Mach. Co. v. Mohasco Indus., Inc.*, the Sixth Circuit, applying the "purposeful availment" standard, held that Tennessee courts had personal jurisdiction over a New York corporation that licensed its technology to a Tennessee company and profited from the arrangement. 401 F.2d 374, 385-86 (6th Cir. 1968) ("[Defendant] has a continuing interest in profiting from the Tennessee market. It cannot complain if along with the profits from the Tennessee market it must also accept the process from the Tennessee courts."). A defendant "has purposefully availed himself of the opportunity of acting [in a state] if he should have reasonably foreseen that the transaction would have consequences in that state." *United Agric. Servs., Inc. v. Scherer*, 17 S.W.3d 252, 259 (Tenn. Ct. App. 1999) (quoting *Mohasco*, 401 F.2d at 382-83).

Here, Plaintiffs allege sufficient facts to meet their low burden of making a *prima facie* showing of jurisdiction without access to discovery. Despite Westgate's claims that Westgate Resorts,

-17-

Inc. "has no involvement with the allegations of this case or contacts with Tennessee," Westgate

Resorts, Inc. literally *signed the warranty deeds* it attached to its motion to dismiss. *See* Mot., Exs. E,

I, Q, & X (depicting Westgate Resorts, Inc.'s name and authorized agent's signature on Plaintiffs'

Tennessee timeshare warranty deeds). Tennessee courts have held that jurisdiction is proper over an

out-of-state lawyer who never entered the state but *prepared* deeds to be filed here, because he

purposely availed himself of Tennessee laws and "should have reasonably anticipated having to

defend his actions in a Tennessee court." *Masada Inv. Corp. v. Allen*, 697 S.W.2d 332, 335 (Tenn.

1985). There can be no doubt that the entity that *signs* deeds that are filed in Tennessee is subject to its

jurisdiction.

Westgate likewise contends that Central Florida Investments, Inc. ("CFI") "has no

involvement with the allegations of this case or contacts with Tennessee"—a claim that is, again,

false. CFI is the Westgate entity that collected monthly mortgage payments from Plaintiffs in

Tennessee for property sold and located in Tennessee. Plaintiffs were asked to sign a form contract

authorizing CFI to charge these payments to their credit cards. *See, e.g.*, Ex. B (Coleman Decl.), ¶ 3.[10]

And CFI sent a privacy statement to one or more Plaintiffs explaining that "we" at CFI and in the

"CFI Family" of companies collect many forms of personal information arising from CFI customers'

use of the Westgate website, applications for credit and/or ownership, and other transaction related

information. *See, e.g.*, Ex. C (Coleman Decl.), ¶ 4. CFI charged customers in Tennessee for property

sold and located in Tennessee; it "should have reasonably foreseen that the transaction[s] would have

consequences in that state," and thus purposely availed itself of Tennessee laws. *Mohasco*, 401 F.2d at

382-83.

Finally, Plaintiffs allege that all Defendants are agents, alter egos of, and/or co-conspirators

---

[10] Westgate selectively omitted these documents from the exhibits attached to its motion to dismiss.

with one another liable for civil conspiracy, and that information relating to their corporate relationships is exclusively in Defendants' possession. TAC ¶¶ 20-22, 132, 234-41. They are subject to specific jurisdiction based on their co-conspirators' minimum contacts—unchallenged by three of the defendants—with Tennessee. *Chenault v. Walker*, 36 S.W.3d 45, 52-55 (Tenn. 2001) ("[G]iven the notion of conspiracy liability, the conspiracy theory of jurisdiction is premised on principles of common sense and basic fairness. As one court has put it, '[i]f through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction.'") (citing *Stauffacher v. Bennett,* 969 F.2d 455, 459 (7th Cir. 1992) (Posner, J.).[11]

## F. **Westgate has not met its burden of showing that the class allegations should be stricken.**

Westgate's motion to strike is an attempt to prematurely litigate class certification before discovery. The Third Amended Complaint plausibly alleges all the requirements of Rule 23, and the record at this stage is inadequate for the Court to make contrary factual determinations.

### 1. **Legal Standard**

Motions to strike class allegations are disfavored. *Phipps v. Wal-Mart Stores, Inc.*, No. 3:12-01009, 2016 WL 10649206, at *4 (M.D. Tenn. Nov. 18, 2016). To strike class allegations at the pleading stage, it is Westgate's burden to demonstrate "from the face of the plaintiffs' complaint that it will be *impossible* to certify the class as alleged, regardless of the facts plaintiffs may be able to prove." *Sherrod v. Enigma Software Grp., USA, LLC*, No. 2:13-cv-36, 2016 WL 25979, at *3 (S.D. Ohio Jan. 4, 2016) (emphasis added). Westgate admits that it can prevail only if the impossibility of class certification is "clear from the face of the complaint," and that striking the class allegations is inappropriate "if the existing record is inadequate." Defs'. Br. in

---

[11] Plaintiffs lack relevant discovery on Westgate Vacation Villas, LLC, but contend it is subject to personal jurisdiction under the theories described above.

Supp. 20 (citation omitted). In other words, if the Complaint's allegations, taken as true and construed in the light most favorable to the plaintiff, could plausibly establish that class certification were appropriate, then it is inappropriate to strike the class allegations. Westgate has failed to carry its burden.

### 2. Westgate only challenges predominance, but its challenge is premature.

Westgate argues that Plaintiffs' class allegations should be stricken because they fail to establish predominance.[12] *See* Defs'. Br. in Supp. at 20 (class allegations should be stricken "when individual issues predominate"), 22 ("because common questions do not predominate"), 23 (same). The "predominance requirement is met" if "there is a single factual or legal question common to the entire class" and that question "is at the heart of the litigation." *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). On a motion to strike, Westgate must show that it will be *impossible* for Plaintiffs' allegations to establish that "one or more of the central issues in this action are common to the class." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). But Westgate's arguments for why individual issues will predominate boil down to unsupported assertions of what *could* be true, without evidence and prior to discovery—such as assertions that its sales agents tell timeshare purchasers all sorts of varying things, or that that purchasers received widely varying contracts. But Plaintiffs plausibly allege the opposite, those allegations must be accepted as true at this stage, and discovery may prove Plaintiffs correct. *See, e.g.*, TAC ¶¶ 36-38 (discussing Westgate's sales agents' common training); 50, 54 (describing Westgate's common purchase documents and

---

[12] Westgate does not appear to dispute that Plaintiffs sufficiently allege the other elements of class certification—numerosity, commonality, typicality, adequacy, or superiority.

"standard practice" for providing them); 52 (alleging Westgate "routinely" hides the disclosures its contracts do contain). Westgate's motion to strike plainly fails.[13]

### 3. Tennessee Timeshare Act

The Tennessee Timeshare Act requires timeshare developers to provide purchasers with a Public Offering Statement fully and accurately disclosing the right to rescind. TAC ¶ 53 (quoting Tenn. Code Ann. § 66-32-112(9)). The complaint alleges that Westgate "routinely" failed to fully disclose this right to purchasers because as part of its "standard practice" it hid the disclosure in a secret pocket. TAC ¶¶ 52, 54-56. These allegations—taken as true at this stage—are sufficient to plausibly establish that common issues will predominate over individual ones. Specifically, if it is true that Westgate sales agents intentionally conceal the right to rescind in a secret pocket as a "standard practice" and "routinely do not inform purchasers" of those rights otherwise, TAC ¶¶ 54, 56, then the predominant common issue on this claim will be whether that widespread practice violates the Tennessee Timeshare Act.

Westgate argues (without citation) that "this is not a situation where form documents establish a universal violation," Defs'. Br. in Supp. 20, but Timeshare Act classes can be certified even "[t]hough the management agreements may vary slightly between the different developments." *Lowell v. Summer Bay Mgmt., L.C.*, No. 3:13-CV-229-TAV-CCS, 2014 WL 1092187, at *5 (E.D. Tenn. Mar. 17, 2014). Besides, Plaintiffs allege that Westgate's standard practice is to omit and conceal required disclosures uniformly, such that this *is* a situation alleging a universal omission. The extent to which that omission is in fact universal is precisely the type of question on which the parties must

---

[13] Westgate also asserts in passing that class allegations can be struck due to variation in state law, but it does not further argue this point and thereby waives it. Regardless, such an argument would not apply to the Tennessee Timeshare Act claims or breach of contract, for which no conflicts of substantive law exist among all fifty states. *See Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (Claims arising from interpretations of substantively similar contracts "appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such.").

conduct discovery; Westgate cannot counter Plaintiffs' allegations using statements drafted by its

counsel backed by no evidence. Moreover, Westgate itself argues for dismissing Plaintiffs' claims

because "all the Plaintiffs' Contracts provide" the same disclosures, suggesting Westgate agrees the

contracts are uniform in the respects material to this case. Defs'. Br. in Supp. 12-13. Plaintiffs disagree

that the contracts make the necessary disclosures, but agree that Westgate's contracts are sufficiently

uniform for the Court to assess their legality collectively. *See Daffin v. Ford Motor Co.*, 458 F.3d 549,

554 (6th Cir. 2006) ("predominance requirement [was] satisfied where all consumers received the

same service contract and the principal question was whether the service contract violated consumer

protection laws").

      Westgate also suggests these class allegations should be dismissed because each Plaintiff does

not allege the exact same facts. Defs'. Br. in Supp. at 21. But all Plaintiffs allege that Westgate

engaged in one or more common schemes that all had the same purpose and effect: to fail to provide

its customers the disclosures required by the Tennessee Timeshare Act. A class can be certified to

determine whether Westgate's common practice was to train and deploy its sales agents to use one or

more methods to hide disclosures from customers in violation of the law. *Cf. Monroe v. FTS USA,*

*LLC*, 860 F.3d 389, 403-04 (6th Cir. 2017) (affirming certification of collective action when

"employers used multiple means to undercompensate for overtime," citing cases and rejecting

dissent's argument that multiple methods of violation cannot be "unified by common theories").[14]

      Because Plaintiffs' Tennessee Timeshare Act claims will turn on Westgate's common

practices under a law that applies uniformly to all proposed class members, these claims are uniquely

---

[14] Westgate's argument appears to be that class certification is inappropriate because class members might have been defrauded in different ways. Even if some class members had not been defrauded *at all*—that is, even if some fraction of purchasers *had* been provided with all required information (which Plaintiffs do not concede and for which there is no evidence)—class certification does not require every member of the class to have been injured at all, let alone through the exact same scheme. *See Tyson Foods*, 136 S. Ct. at 1050 (affirming certification of class with uninjured members); *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) (Posner, J.) (rejecting argument on uninjured class members).

suited to class certification.  *See Lowell*, 2014 WL 1092187, at *5 (Timeshare Act plaintiffs "will proceed under the same legal theories, and to succeed, each potential class member and named Plaintiff must present the same proof").

### 4.　　Unjust Enrichment

Westgate argues that the elements of unjust enrichment inherently require individualized inquiries. Not so. *See, e.g.*, *id.* (certifying unjust enrichment class claim in timeshare case); *Ham v. Swift Transp. Co. Inc.*, 275 F.R.D. 475, 487 (W.D. Tenn. 2011) (certifying unjust enrichment claim under Tennessee law for class treatment); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 412 (S.D.N.Y. 2015) (certifying unjust enrichment claim under California law for failing to disclose a material fact about a product). Unjust enrichment is established when, in the absence of a contract, plaintiffs conferred a benefit on a defendant, the defendant appreciated that benefit, and retention of that benefit would be inequitable. *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). First, Plaintiffs allege Westgate used form contracts for the entire putative class that are void or voidable because they were premised on fraudulent omissions and violate statutes. TAC ¶¶ 133-36.  If Plaintiffs prove this is true, then contracts will be absent for the entire class.[15] Second, there is no dispute that all putative class members conferred a benefit on Westgate (or that Westgate appreciated that benefit) by paying for the timeshares; this is indisputably common across the proposed class.

Finally, the question of inequity can be decided in common. *See, e.g.*, *Ham*, 275 F.R.D. at 487 (finding "a common issue that predominates across the class."). If, as Plaintiffs plausibly allege, Westgate uses a set of common schemes to trick Plaintiffs into paying for something they did not want and have not been able to enjoy, inequity would be a common question. Timeshare availability

---

[15] Westgate argues that alleging the absence of a contract alongside a breach of contract claim is absurd, but Westgate overlooks that unjust enrichment may be pled in the alternative to breach of contract, as Plaintiffs do here.  *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796-97 (6th Cir. 2016) (reversing dismissal of unjust enrichment claim); *Ham*, 275 F.R.D. at 487 (certifying both unjust enrichment and breach of contract claims under Tennessee law for class treatment).

inequity, for example, could be analyzed with evidence of Westgate's common training practices for

sales agents, records of common complaints, and records of timeshare purchasers' requested stays

versus actual stays will serve as common proof. *See Tyson Foods*, 136 S. Ct. at 1047 (affirming

certification of class where plaintiffs used "a representative sample to fill an evidentiary gap created

by the [defendant's] failure to keep adequate records").[16]

### 5.    Fraud & Misrepresentation

Westgate's argument for striking the class allegations as to Plaintiffs' fraud and

misrepresentation claims misreads the Complaint.  Westgate bases its argument on "the fact that the

alleged fraud and misrepresentations consist of oral statements and not standardized documents."

Defs'. Br. in Supp. 22. But in fact, as explained above, the Complaint *does* allege that Westgate gave

purchasers the same documents, and concealed disclosures and/or omitted material facts as part of a

broader pattern and practice. *See* TAC ¶¶ 50-56, 133-36. Westgate also argues that reliance cannot be

shown on a classwide basis, but that too is incorrect. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750,

759-60 (7th Cir. 2014) (reversing denial of certification of a class including Tennessee because

reliance may be proven on a classwide basis for uniform misrepresentations or omissions). Whether

Westgate had a common duty to its purchasers not to omit material facts is a question of law common

to all purchasers, and whether the class suffered harm can be shown by classwide statistical evidence.

*See Tyson Foods*, 136 S. Ct. at 1048-49. Westgate cites cases denying class certification but not

---

[16] Westgate cites one case that struck class allegations for unjust enrichment claims, but it is clearly
distinguishable. In *Bearden v. Honeywell Int'l, Inc.*, the plaintiff suffered severe health problems because
of a product and then sought to certify a class of persons that expressly excluded anyone who suffered
physical injuries from that product, making the inequity for the plaintiff atypical and the potential inequity
for other class members an individualized inquiry.  No. 3:09-01035, 2010 WL 1223936, at *10 (M.D.
Tenn. Mar. 24, 2010). Here Plaintiffs are entirely typical timeshare purchasers with no individualized
injury differentiations. Westgate also cites *Crouch v. Bridge Terminal Transp., Inc.*, but that case
involved a denial of class certification, not a motion to strike, and also did not involve unjust enrichment
(or quasi-contract claims, despite Westgate's assertion otherwise). No. M2001-00789-COA-R3CV, 2002
WL 772998, at *1 (Tenn. Ct. App. Apr. 30, 2002).

striking class allegations for fraud or misrepresentation claims, and it thus does not meet its burden to show that it is *impossible* for the allegations on the face of the Complaint to establish predominance.

### 6.     Breach of Contract

Westgate argues that the breach of contract allegations cannot establish predominance because "there are many options and variations" that timeshare purchasers could have purchased. But the proposed class is limited to people who purchased "floating use plan" at the Resort. TAC ¶ 114. Plus Westgate effectively concedes that the contracts are uniform in the respects material to these claims, when it argues that "all the Plaintiffs' Contracts provide" the same disclosures. Defs'. Br. in Supp. at 12-13. Westgate's argument also necessarily concedes that all of the Plaintiffs' Contracts omit the same material facts.

Plaintiffs allege that the purchase documents made the same broad promise that purchasers would receive the "right to occupy" specified units, or at least a certain type of unit, but instead "Westgate routinely prevents owners from booking the unit type." TAC ¶¶ 49-51. Contrary to Westgate's claim, class certification will not require analysis of every individual class members' stays, but rather can be shown by representative evidence. *See Tyson Foods*, 136 S. Ct. at 1047-49; *Monroe*, 860 F.3d at 407-11. Besides, the question now is simply whether it is *plausible* that Westgate routinely failed to provide the whole class with what it led purchasers to believe it had promised. It is.

### 7.     Statute of Limitations

Plaintiffs explain above why Westgate's statute of limitations theories fail. *See supra* Section III.D. The Complaint alleges in detail how the statute of limitations is tolled not just for the Plaintiffs but for the entire class. TAC ¶¶ 128-32. Even if the Court concluded that claimants who purchased before a certain year were barred, Plaintiffs (or the Court) could easily amend the proposed class definition to exclude such purchasers by moving the start date later. *Cf. Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 825 (7th Cir. 2012)) (problems with class definitions "can and often should

be solved by refining the class definition rather than by flatly denying class certification on that basis").[17] Westgate's motion to strike should be denied.

### G. **Plaintiffs are entitled to a jury trial because the contract is void and was fraudulently induced.**

Tennessee's Constitution provides that "the right of trial by jury shall remain inviolate . . . ." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 364 (6th Cir. 2018) (quoting Tenn. Const. art. I, § 6.). Westgate seeks to strike the jury demand due to a clause in the contract, which was fraudulently induced and unenforceable. *See Webb v. First Tennessee Brokerage, Inc.*, No. E2012-00934-COA-R3-CV, 2013 WL 3941782, at *16 (Tenn. Ct. App. June 18, 2013) ("an agreement to arbitrate procured by fraudulent inducement is not enforceable"). Plaintiffs here uniformly did not know the true nature of what they were purchasing despite Westgate's legal duties under the Timeshare Act and as real estate licensees, and their signature of the contract with the jury waiver was thus unenforceable. TAC ¶¶ 133-36, 191-207. Westgate's effort to eliminate Plaintiffs' jury trial right at the pleading stage should be rejected.

---

[17] Westgate also argues, baselessly, that Plaintiffs' class allegations are a meritless extortion attempt. Plaintiffs explain above why their allegations plausibly state claims, demonstrating how these claims are not meritless. Besides, Westgate's authority stands only for the proposition that courts can choose not to *certify* claims at the class certification stage—and those claims were nothing like the ones here. *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1297 (7th Cir. 1995) (decertifying class consolidating mass tort with hundreds of personal injury cases); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 737, 746 (5th Cir. 1996) (reversing certification of a mass tort that "may be the largest class action ever attempted"). These cases are not only plainly distinguishable, but do not create a separate ground for striking class allegations beyond facial impossibility of certification. *Sherrod*, 2016 WL 25979, at *3.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss and strike should be denied.

Dated:  February 18, 2020                    Respectfully submitted,

                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

                                           By:  /s/ Christopher E. Coleman

                                           Mark P. Chalos (BPR #023541)
                                           Kenneth S. Byrd
                                           Christopher Coleman
                                           Kartik S. Madiraju (*pro hac vice*)
                                           LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                                           222 2nd Avenue South, Suite 1640
                                           Nashville, TN  37201
                                           Telephone:  615.313.9000
                                           Facsimile:  615.313.9965
                                           mchalos@lchb.com
                                           kbyrd@lchb.com
                                           kmadiraju@lchb.com

                                           *Attorneys for Plaintiffs and the Proposed Class*

                                           RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.

                                           Wayne A. Ritchie II (BPR #013936)
                                           606 W. Main Street, Suite 300
                                           P.O. Box 1126
                                           Knoxville, TN 37901-1126
                                           Phone: 865.524.8444
                                           war@rddjlaw.com

                                           *Co-Counsel for the Plaintiffs*

FARMER PURCELL WHITE & LASSITER, PLLC

John O. Belcher, Esq. (BPR #018335)
150 Fourth Avenue North, Suite 1820
Nashville, TN  37219
Telephone:  615.810.8777
Facsimile:  615.810.8770
jbelcher@fpwlegal.com

*Co-Counsel for the Plaintiffs*

WALLACE & ASSOCIATES

Richard T. Wallace, Esq. (BPR #010151)
Parkway Professional Plaza
109 Parkway - Suite 2
Sevierville, TN  37862
Telephone:  865.453.1143
Facsimile:  865.453.5448
wallace@rwallacelaw.net

*Co-Counsel for the Plaintiffs*

1928440.2

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By:  s/Christopher E. Coleman
    Christopher E. Coleman