UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| MARILYN MOORE, et al., individually and on behalf of all others similarly situated | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO.: 3:18-cv-00410 ) |
| WESTGATE RESORTS, LTD., et al. | ) ) |
| Defendants. | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION TO EXCLUDE CERTAIN OPINIONS OF HOWARD NUSBAUM**

Defendants Westgate Resorts, Ltd., Westgate Marketing, LLC, and CFI Resorts Management, Inc. ("Resort Defendants") and Westgate Resorts, Inc. and Central Florida Investments, Inc. ("Non-Resort Defendants")[1] (collectively, "Westgate" or "Defendants"), file this Opposition to Plaintiffs' Motion to Exclude Certain Opinions of Howard Nusbaum, and respectfully show as follows:

## I.
### INTRODUCTION

Defendants' proffered expert, Howard Nusbaum, is a bona fide expert, offering reliable opinions on legitimate topics for expert testimony. Notably, Plaintiffs do not challenge his primary opinions in the case. For example, as to the only "expert" issue Plaintiffs raised at class certification, Plaintiffs do not challenge Mr. Nusbaum's opinion that Ken Free's "stressed availability" opinion is not a valid methodology and is based on faulty assumptions. DE177-2 at 11 (Nusbaum Report); DE148 at 11-16 (Motion to Exclude Free); DE166 at 8-12 (Reply to

---

[1] Westgate Resorts, Inc. and Central Florida Investments, Inc. file this response subject to their Motion to Dismiss for lack of personal jurisdiction. DE101 and DE102.

1

Motion to Exclude Free). Plaintiffs also do not challenge Mr. Nusbaum's opinion that, after reviewing data on use rights and actual usage, Westgate did not oversell the Resort, Westgate did not use more inventory than it had the right to use, and there is no evidence Westgate's use of inventory prevented purchasers from using the Resort during appropriate booking windows. DE177-2 at 11-12. The opinions of Mr. Free and Mr. Nusbaum on these issues cannot coexist, and by not challenging Mr. Nusbaum on these opinions, Plaintiffs are accepting that Mr. Nusbaum's methodology is valid, the bases of his opinions are sufficient, his conclusions are reliable, and Mr. Free has no valid methodology or reliable opinion on availability.

Instead, Plaintiffs challenge Mr. Nusbaum on peripheral issues. First, Plaintiffs focus on portraying Mr. Nusbaum as biased, DE178 at 1-3, even though the supposed bias—grossly distorted by Plaintiffs—is not grounds to exclude an expert witness. Next, Plaintiffs imagine that Mr. Nusbaum is offering the same opinions as Mr. Free, and challenge Mr. Nusbaum because he did not review the same documents Mr. Free claims to have reviewed. DE178 at 3. But, Mr. Nusbaum is not offering the same types of opinions as Mr. Free, and nor would he, since Mr. Free's opinions fail every requirement of *Daubert* and Rule 702. DE148; DE166.

Mr. Nusbaum reviewed the Public Offering Statement ("POS"), the state-mandated and approved *written* disclosure all purchasers receive and have at least 10 days to review during the rescission period. Mr. Nusbaum is opining that the POS discloses the floating use plan *in writing*, in compliance with industry standard and state regulatory frameworks, regardless of what Plaintiffs now claim they were or were not told *verbally*. Only on Plaintiffs' fantasy island do *written* disclosures not count as disclosures.

Next, Plaintiffs challenge Mr. Nusbaum's opinion on entity structures, that "*this type of structure* is common-place, legal, and quite appropriate." DE177-2 at 13. Mr. Nusbaum's

2

opinion expressly states that it is addressing "the premise or undercurrent of Mr. Free's report" suggesting that the use of multiple company entities somehow suggests nefarious intentions or fraud. *Id.* This opinion also rebuts Plaintiffs' proffered expert, Alec Fahey, who impermissibly opines to the legal conclusion of alter ego, based solely on the fact that Defendants are related and share common ownership/management. DE153 (Motion to Exclude Fahey); DE171 (Reply to Motion to Exclude Fahey). Mr. Nusbaum's opinion merely explains what Plaintiffs' proffered experts pretend not to know—that it is common to have multiple different entities involved with a single project or comprising a large business. Mr. Nusbaum's opinion is on a factual issue borne of decades of business experience, and it does not preclude a finding of alter ego or conspiracy, if there were any actual evidence of same.

Finally, Plaintiffs challenge Mr. Nusbaum's opinion that Mr. Free is falsely holding himself out as the "key founder" of Hilton Grand Vacations ("HGV"). On this topic, Mr. Nusbaum's employment for the last 20 years included knowing who was involved in the timeshare industry, and he has researched the historical founding of HGV, including interviewing the actual founders of HGV and subsequent executives, to prepare a commemorative history piece. However, Mr. Nusbaum, during 20 years of intimate involvement in the timeshare industry, has never heard of Mr. Free, and he therefore opines that Mr. Free was not actively involved in the timeshare industry. DE177-2 at 16. Neither Rule 702 nor *Daubert* required Mr. Nusbaum to have interviewed everyone that might have known Mr. Free, or to review additional documents not provided by Mr. Free, to tell this Court that, contrary to what Plaintiffs repeatedly portray, Mr. Free is not actually the "key founder" of HGV. Moreover, one of the actual founders of HGV has also now provided a declaration that he has never heard of Mr. Free. Ex. B (Kreiger Declaration). Mr. Free ought not be permitted to testify for numerous

3

reasons, DE148; DE166, but if Mr. Free testifies, Mr. Nusbaum should be permitted to respond to the many things that Mr. Free has gotten wrong. This is a prime example of an issue that is not grounds for exclusion of Mr. Nusbaum's opinions, but should rather be explored through cross-examination.

As set forth in Mr. Nusbaum's report, his opinions are admissible and meet the requirements of Rule 702 and *Daubert*. As set forth below, Plaintiffs' motion fails to articulate any ground that would render Mr. Nusbaum's opinions inadmissible.

## II.
### OPINION REGARDING DISCLOSURES IS ADMISSIBLE

At the outset, Plaintiffs mischaracterize Mr. Nusbaum's opinion as one relating to Westgate's "sales practices." They set up this straw-man so they can criticize Mr. Nusbaum for not reviewing the sales or closing manuals, to argue he has no basis for his opinion. But, Mr. Nusbaum's opinion is not related to Westgate's sales practices. Rather, Mr. Nusbaum reviewed the POS, the state-mandated and approved, consumer-facing document that is given to all purchasers. All purchasers—including Plaintiffs—signed an acknowledgement that, along with other documents, they received the POS, and they had the document for at least 10 days during the rescission period. Mr. Nusbaum's report sets forth his opinion:

> Mr. Free's assertions that somehow Westgate did not adequately or clearly disclose information about the use plan and booking availability is truly perplexing and just plain wrong. No evidence was given supporting this flat wrong conclusion. I take exception to this as I believe the State of Tennessee would since they approved the POS. There are clear descriptions in the use plan with complete disclosures meeting industry standards and the State's respected regulatory bar.

DE177-2 at 14, ¶ 4. Mr. Nusbaum's report provided the basis for his analysis and establishes that his opinion is admissible. In their Motion to Exclude, Plaintiffs have not identified any

4

defect in Mr. Nusbaum's opinion that would justify exclusion. In any event, Defendants address Plaintiffs' arguments, in the order Plaintiffs raise them.

*A.     Sufficient Bases of Opinion*

In his deposition, Mr. Nusbaum testified unambiguously that he spent 20 years working on legislation and the design of model timeshare statutes, to make sure (1) there were consumer protections in place, (2) developers provided adequate financial assurances, (3) timeshare developers maintained at least a one-to-one ratio of available intervals to sold intervals, and (4) there was appropriate government oversight. Ex. A (Nusbaum Depo) at 34:13-22; 59:9-60:11; 65:21-66:19. For this case, and in the context of his expert experience, Mr. Nusbaum reviewed the POS, plaintiffs' purchase contracts, and the data on usage rights and actual usage of the Resort. Ex. A at 67:4-10;[2] DE146-14 (POS). The state-mandated and approved POS describes the floating use plan and reservations in consumer-friendly language. DE146 at 5-9. Mr. Nusbaum also asked questions of a Westgate executive involved in the reservations process as a form of due diligence, and to ensure that Westgate's practices at the Resort matched the disclosures in the POS. Ex. A at 14:8-18; 67:4-68:24.

Ultimately, Mr. Nusbaum explained that not only do purchasers hear verbal information from a salesperson and have an opportunity to ask questions, but then they go through a closing process, where they review documents and have another opportunity to ask questions. Ex. A at 34:23-36:6. Purchasers also receive the public offering statement, which has been vetted by the

---

[2]   Plaintiffs repeatedly argue that Mr. Nusbaum's opinion should be excluded because he "never reviewed Westgate's floating use plan." *E.g.*, DE178 at 6. But, this is a red herring. As discussed, Mr. Nusbaum reviewed the state-mandated and approved consumer-facing document (POS) that describes the use plan. The use plan is a legal document, which is also provided to purchasers, and which is recorded in the real property records. But, the purpose of the state-mandated and approved POS is to summarize the use plan in consumer-friendly language, which is why Mr. Nusbaum reviewed the POS and based his opinions on the POS. The POS is, in most basic terms, the disclosure that Plaintiffs are complaining was never made, and it was in the form that the State of Tennessee tells Westgate—and all other timeshare developers—to make that disclosure.

5

State and details exactly what is being offered, and how it works. *Id.* Purchasers are also informed of their rescission rights—they sign their name next to it—and then they have an opportunity to review everything during the rescission period to make sure that the purchase is right for them. *Id.* Plaintiffs live in a fantasy world where the only information a purchaser receives is verbal, and the actual documents that purchasers actually sign do not exist. Plaintiffs' argument that Mr. Nusbaum's opinion is "not based on any facts or data," DE178 at 6, is categorically untrue.

B.     *Opinion is Not a Legal Argument*

Plaintiffs' claim that Mr. Nusbaum's opinion is a legal argument also misses the mark. Here, Plaintiffs set up another straw-man, that Mr. Nusbaum is opining that the state-mandated and approved POS pre-empts Plaintiffs' claims. DE178 at 6. As Plaintiffs acknowledge, Defendants have never made such an argument. DE178 at 6. Yet, Plaintiffs then attack a legal argument that is not being made.

Mr. Nusbaum opines that the disclosures in the POS "meet industry standards." DE177-2 at 14. That is a factual opinion, and not a pre-emption argument. Mr. Nusbaum also opines that the disclosures in the POS "meet . . . the State's respected regulatory bar." DE177-2 at 14. Again, not a pre-emption argument. Plaintiffs merely want to dispense with the POS because purchasers, in accord with Tennessee law, do not receive it until the purchase decision is made and during the closing of the sale. DE178 at 7. Yet, Plaintiffs ignore all the documents and written disclosures they sign up through the closing, and Plaintiffs ignore the 10-day rescission period—which purchasers acknowledge in writing—and during which purchasers have the POS to review. The question in this case is what was disclosed: Plaintiffs claim the only disclosures are what the salesperson verbally states in tens of thousands of sales presentations, which we will

6

never be able to determine on a class-wide basis; Mr. Nusbaum bases his opinion on the uniform, written documents that all purchasers sign. It's not about pre-emption; it's about determining what was disclosed—in writing—and resolving Plaintiffs' claims. And, if Plaintiffs think that it is important that purchasers do not receive the POS until the closing of the transaction, Plaintiffs are free to cross-examine Mr. Nusbaum on that issue.

C. *Mr. Nusbaum is Qualified*

Although not expressly stated as an attack on Mr. Nusbaum's qualifications, Plaintiffs challenge Mr. Nusbaum's opinion because his job duties in the last 20 years did not include reviewing timeshare plans for legal compliance. DE178 at 7. Mr. Nusbaum explained his experience as follows:

> Q. Did you as part of your duties with ARDA, did you undertake to review timeshare plans for compliance with legislation or regulation?
>
> A. No. My -- my role would never be to review them for compliance unless a developer was asking a question or something. It's more a matter of understanding the nuances of those plans and how they fit in the regulation. And if they didn't fit in the regulation, how we would need to address that, either by changing the way you were doing it or changing the timeshare laws or looking at other ways to do it to try to create more uniform ways of doing it.

Ex. A at 66:7-19. And there was no follow-up questioning. Plaintiffs did not explore Mr. Nusbaum's experience working with or reviewing timeshare plans at all, other than this one very specific question. By the way, the only people who could truthfully testify that they reviewed timeshare plans for legislative or regulatory compliance would be lawyers or regulators. Mr. Free certainly does not meet that standard; he is neither a lawyer nor a regulator, and he has not identified any occasion in which he reviewed a floating use timeshare plan for any purpose. DE148; DE166. Unlike Mr. Free, however, Mr. Nusbaum has extensive experience in the timeshare industry working on model legislation, and working with timeshare developers to

7

ensure that their floating use timeshare plans comply. It is this experience that makes Mr. Nusbaum qualified to offer his opinions.

### D. *Opinion Sufficiently Identifies Source Document as Public Offering Statement*

Bizarrely, Plaintiffs also argue that Mr. Nusbaum's opinion is inadmissible because he does not cite to the POS. DE178 at 7. As quoted above, however, Mr. Nusbaum expressly referred to the POS in his written report, in the same opinion Plaintiffs now challenge, among many other places. To the extent Plaintiffs want a more-specific citation, same is not required here. The POS is 16 pages, including the cover page and index, the former of which notably includes another copy of the rescission right in all capital and bold letters. DE146-14. Attached to the POS as exhibits are charts regarding unit types, and a copy of the HOA's budget, and the entire document, with exhibits, is 27 pages. DE146-14. The index to the POS plainly reflects that the "Floating Use Plan" discussion begins on page 5. DE146-14. Then, the POS includes easy-to-read headings throughout the section discussing the "Floating Use Plan," and addresses reservations and availability, on a first-come, first-serve basis. DE146-14 at 5-9. To the extent a purchaser wants any additional information, the POS refers to the full use plan, which is also provided to purchasers. *Id.* Plaintiffs trot out the conclusory statement that Mr. Nusbaum has failed to cite to the POS, but Plaintiffs never asked Mr. Nusbaum to cite them to any more specific language in the POS, and the portion of the POS addressing the Floating Use Plan is <u>4 pages</u>.

Plaintiffs' theory of the case is <u>not</u> that there is some defect in the POS or any other uniform, written document. To the contrary, Plaintiffs pretend that written disclosures are meaningless. And, absent some specific dispute about the language in the POS, Defendants and Mr. Nusbaum refer to the 4-page portion of the POS that discuss the Floating Use Plan and

8

reservations, subject to availability and on a first-come, first-serve basis. There is no legitimate argument that Mr. Nusbaum's opinion is inadmissible based on how he refers to the POS.

E. *Opinion is Reliable / No Analytical Leaps*

Plaintiffs next argue that the POS is not a disclosure because even Mr. Nusbaum did not understand the POS. DE178 at 7-8. But, Plaintiffs again take too many liberties with the facts. As noted above, Mr. Nusbaum questioned a Westgate executive involved in the reservations process as a form of due diligence, and to ensure that Westgate's practices at the Resort matched the disclosures in the POS. Ex. A at 14:8-18; 67:4-68:24. Plaintiffs expressly asked Mr. Nusbaum if he had to ask questions because he did not understand the floating use plan after reviewing the POS, and Mr. Nusbaum testified as follows:

> Q. Why did you feel like you needed to talk with Mr. Saft and Mr. New?
>
> A. Because I wanted to make sure my understanding of floating time matched the way theirs did, because I wouldn't want to say anything that was incorrect. So I wanted to kind of means test how their floating plan worked. And there was nothing that seemed out of the ordinary to me. I asked, you know, about what would give somebody use rights for that year, who could be possibly excluded and why would they be excluded, and how would they know that. And those kind of questions.
>
> Q. And that wasn't apparent to you from the public offering statement?
>
> A. Yes, but I wanted to understand how it worked, I was making sure that what they did in practice matched what was said [in the POS]. So I wanted to understand how the reservation windows worked.

Ex. A at 68:7-24. Plaintiffs' argument is completely disconnected from the facts.

Plaintiffs also erroneously claim that Mr. Nusbaum's opinion includes impermissible analytical leaps. DE178 at 8. But there is no analytical leap whatsoever from (1) Mr. Nusbaum reviews the POS to (2) Mr. Nusbaum opines that the disclosures in the POS meet industry

9

practice and state regulations. There are no missing steps; there are no assumptions and no inferences.

### F. *Plaintiffs Conflate Two Different Opinions*

Finally, Plaintiffs challenge Mr. Nusbaum's statement, "I believe that there was enough inventory to make sure owners who had eligible use rights were accommodated through the use of appropriate reservation windows." DE178 at 8. Plaintiffs challenge this as being an explanation for Mr. Nusbaum's opinion that the disclosures in the POS meet industry standards and state regulatory requirements. *Id.* However, this statement is unrelated to the disclosures in the POS. Instead, this is a one sentence restatement of part of Mr. Nusbaum's primary opinion on availability. DE177-2 at 11-12.

Plaintiffs have not challenged Mr. Nusbaum's primary opinion at all. Nonetheless, the primary opinion is set forth on pages 11-12 of Mr. Nusbaum's report and includes several sub-points, *inter alia*:

(1) Mr. Free's "stressed availability" analysis is incorrect and unrealistic;

(2) the only standard is whether Westgate sold more intervals than it had available;

(3) Westgate did not oversell;

(4) Mr. Free failed to correctly define the universe of owners wanting a reservation, and used faulty assumptions instead, because he did not consider how many owners had use rights, and how many owners exercised those use rights at the Resort;

(5) contemporary property management systems and the myriad of booking options at the Resort provide a full menu of options to fulfill reservations requests;

(6) Westgate has rightful access to intervals that it owns, including for rental or marketing use; and

(7) after reviewing data on usage rights and actual usage, there is "no evidence of Westgate utilizing any inventory which would have kept a home resort all season owner employing appropriate booking windows from making use of their vacation interval."

10

DE177-2 at 11-12. In deposition, Plaintiffs chose not to question Mr. Nusbaum on any of these issues, despite this being the primary and first-listed opinion Mr. Nusbaum offered. Instead of addressing Mr. Nusbaum's primary opinion, Plaintiffs attack one sentence that restates a portion of the primary opinion. Plaintiffs claim that Mr. Nusbaum's opinion will not help the fact-finder and challenge Mr. Nusbaum's use of the phrase "I believe." DE178 at 8. Plaintiffs' argument is completely off-base.

The central theme of Plaintiffs' case is that supposed limited availability was not disclosed to them, and as a result, they overpaid for a timeshare that they could not use as they want. Mr. Nusbaum's primary opinion explains that there was no limited availability—Westgate did not oversell the Resort, and based on the data, there is no evidence that Westgate overused the Resort. This opinion goes directly to the factual basis of Plaintiffs' central theme. Based on his experience working with model legislation to protect consumers, working with developers on their use plans, his thorough understanding of the timeshare product and the timeshare industry, and his review of the actual usage rights and historical usage data, Mr. Nusbaum essentially opines that the factual basis of Plaintiffs' claim is false. Of course the opinion is relevant. That Mr. Nusbaum later restated a portion of his primary opinion by writing "I believe that there was enough inventory" does not diminish his qualifications or the reliability or relevance of his primary opinion, as stated on pages 11-12 of his report, and as unchallenged by Plaintiffs.

### III.
#### OPINION REGARDING ENTITY STRUCTURES

The second of Mr. Nusbaum's opinions that Plaintiffs challenge relates to entity structures. The opinion at issue is as follows:

> I also take issue with the premise or undercurrent of Mr. Free's report which portrays Westgate's use of multiple company entities as somehow being a

11

> suggestion of nefarious intentions or implies some type of fraud. It is simply not true. The structure of having multiple companies working within a family of companies which share some employees and missions is quite typical in hotel and timeshare structures. As I stated earlier in the report, this type of structure is not uncommon. There are many good legitimate business reasons to segregate these companies as well as have them work together to accomplish aligned goals. I know this from my experience at looking at various structures of timeshare companies when working on drafting legislative models that this type of structure is common-place, legal, and quite appropriate.

DE177-2 at 13. Plaintiffs have not alleged that Westgate's entity structure is illegal, and neither this Court nor the fact-finder will be asked to determine if the entity structure is legal or not. But, more importantly, Mr. Nusbaum is <u>not</u> opining that Westgate's structure is "legal," but rather that "*this type of structure* is common-place, legal, and quite appropriate."

Plaintiffs seem to believe that Mr. Nusbaum is opining on alter ego or conspiracy, when he plainly is not, and Plaintiffs challenge the fact that Mr. Nusbaum did not review documents and transactions involving the various entities. DE178 at 9. Ironically, Plaintiffs' proffered expert, Alec Fahey, did—actually did not do—exactly what Plaintiffs now challenge: he did not review accounting or financial transactions, and he is opining on the legal conclusion of alter ego. DE153; DE171. If Plaintiffs want to suggest, through their supposed experts, that having multiple entities is wrong, Defendants should be permitted to explain that it is commonplace. And, if Plaintiffs have some actual competent evidence of alter ego or conspiracy—that goes beyond the mere fact that there are multiple related entities involved in a project—they are free to present same.[3] Mr. Nusbaum is only opining that having multiple entities involved in a project is not nefarious or fraudulent; it is common, legal, and appropriate.

---

[3] Plaintiffs have never alleged facts relating to and have no actual evidence of alter ego or conspiracy. Instead, Plaintiffs' alter ego and conspiracy theories are based solely on the fact that Defendant entities are related and have common ownership/management. As set forth in prior briefing, Plaintiffs' arguments and Mr. Free's and Mr. Fahey's opinions, defy Tennessee law. DE117; DE153; DE171. This is why Plaintiffs seek to prevent Mr. Nusbaum from telling the fact-finder what Plaintiffs, Mr. Free, and Mr. Fahey all already know—the existence of multiple entities is no evidence of nefarious or fraudulent conduct, alter ego, or a conspiracy.

12

Given Mr. Nusbaum's opinion, it is not necessary for him to have reviewed the specific relationships or any transactions between the Defendant entities. Those types of documents would have nothing to do with whether it is common, legal, and appropriate to have the "type of structure" where multiple entities are involved in one project. With respect to whether Mr. Nusbaum's opinion is helpful to the fact-finder, it is as equally helpful as Mr. Free and Mr. Fahey's insinuations to the contrary. Frankly, Defendants do not consider either Mr. Free's or Mr. Fahey's insinuations of wrongdoing—which are based solely on multiple entities being involved in the project—to be helpful to the fact-finder. But, to the extent Mr. Free or Mr. Fahey would be permitted to offer their opinions—which directly contradict Tennessee law—then it is helpful to the fact-finder to hear expert testimony that what Mr. Free and Mr. Fahey are complaining about is common-place, legal, and appropriate.

## IV.
## OPINION REGARDING KEN FREE

The third of Mr. Nusbaum's opinions that Plaintiffs challenge relates to Plaintiffs' proffered expert, Ken Free, whom Mr. Nusbaum opines was <u>not</u> a "key founder" of Hilton Grand Vacations ("HGV") and has <u>not</u> actively been involved in the timeshare industry. DE177-2 at 16. As set forth in Defendants' Motion to Exclude, even Mr. Free's own testimony strongly suggests that he was not a "key founder" of HGV. DE148 at 7-8 (he worked in Hilton Hotels' real estate division where he was, in his own words, a "staff guy" that helped managed Hilton Hotels' hard real estate assets; he claims he worked on the business plan for the joint venture that became HGV; he never worked for HGV, and when he left Hilton Hotels (not HGV), no timeshares had been built, and HGV had not even decided whether the first resort would be fixed or floating, although it was assumed it would be fixed week); DE166 at 5-7. In fact, Mr. Free could not articulate any experience he had relating to timeshares since the 1990s, and even then

13

his experience was with business plans for hotel companies looking to get into the timeshare business, and none of Mr. Free's claimed experience involved floating use timeshares. *Id.* Now, one of the actual founders of HGV has provided an affidavit directly explaining who the founders of HGV were, what their involvement was, and that no one has ever heard of Mr. Free. Ex. B (Kreiger Declaration). Mr. Nusbaum just opined to what Plaintiffs refuse to acknowledge: Mr. Free padded his resume. DE177-2 at 16.

Mr. Nusbaum can offer this opinion for multiple reasons. First, it was literally his job, for approximately 20 years, to know who was involved in the timeshare industry. From 2000 to 2019, Mr. Nusbaum was the President and CEO of the American Resort Development Association, and its three component bodies—the 501(c)(6) trade organization ("ARDA"), the 501(c)(4) Resort Owners Coalition ("ARDA-ROC"), and the 501(c)(3) educational foundation ("AIF"). DE177-2 at 2. It is, of course, possible that Mr. Free did some work for a timeshare company about which Mr. Nusbaum would not have known. But, Mr. Nusbaum's point is that he would have at least heard Mr. Free's name if Mr. Free were the type of major player in the timeshare industry that he claims to be. To the extent Plaintiffs want to argue that Mr. Nusbaum just does not know Mr. Free because Mr. Free's last involvement with the timeshare industry was in the 1990s—before Mr. Nusbaum joined ARDA—Plaintiffs offer no explanation for how Mr. Free's supposed work in the timeshare industry almost 30 years ago qualifies him to offer opinions today about floating use timeshares.

Second, during Mr. Nusbaum's tenure at ARDA, the organization celebrated its 40th and 50th anniversaries. On both occasions, Mr. Nusbaum oversaw the creation of commemorative publications detailing milestones in the timeshare industry. DE177-2 at 16. To prepare those publications, ARDA interviewed many of the pioneer timeshare developers and early timeshare

14

owners, and Mr. Nusbaum participated in interviewing the individuals actually responsible for founding HGV. *Id.* For example, Mr. Nusbaum interviewed Al Ten Broek and Ed McMullen, the two men who brought timeshare expertise to the joint venture with Hilton Hotels that became HGV, and he interviewed them regarding the founding of HGV. *Id.* Mr. Nusbaum also interviewed HGV's first CEO, and more recent executives of HGV and Hilton Hotels, all concerning the founding of HGV. *Id.* None of these individuals ever mentioned Mr. Free's name in the context of the founding of HGV, or otherwise, leading to the inescapable conclusion that Mr. Free was not a "key founder," or any other type of founder of HGV. *Id.*; *see also* Ex. B (Kreiger Declaration).

Contrary to Plaintiffs' argument, DE178 at 10, and by definition, an expert witness does not need personal knowledge of the underlying facts to testify. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). However, as noted above, one of the actual founders of HGV has now provided a declaration, based on personal knowledge, confirming that Mr. Free was not involved. Ex. B (Kreiger Declaration). Further, having previously researched the founding of HGV, it was not necessary for Mr. Nusbaum to reconstruct the founding of HGV again for this case, to specifically try to determine if Mr. Free had some role that none of the actual founders recalled, or that might be disclosed on some 30-year old document. *Daubert*, 509 U.S. at 590 (1993) ("Of course, it would be unreasonable to conclude that the subject . . . must be known to a certainty.") Mr. Nusbaum is qualified as an expert on the timeshare industry, based on his experience, which Plaintiffs do not challenge. That experience included historical study and research into the founding of HGV, some of which is detailed above. His research into the founding of HGV was reasonable and carried out for non-litigation purposes,

including creating a record of the history of the timeshare industry, as told by the founders of the industry. Ex. A at 113:11-114:5.

An analogy is helpful here. Suppose a historical author researches a particular historical event, interviews all known witnesses, and writes a book. One man who is not mentioned in the book later claims that he was also there, and in fact, claims that he was a "key" part of the historical event. That man claims the author got it wrong, and simply did not do enough research; but the author had asked all known witnesses to tell the story, and none of the witnesses ever mentioned this man. Now, it's possible the man was there and no one remembered him. That seems unlikely if he was a "key" part of the story, but it's possible. But, we do not discard the book simply because none of the witnesses had any recollection of the man. Here, if Plaintiffs believe that additional research might have uncovered that one document or that one witness that would have mentioned Ken Free—research that, it seems, neither Plaintiffs nor Mr. Free have actually done themselves—that is a prime issue to be addressed through cross-examination. Mr. Nusbaum has described his qualifications, his methodology, and the bases of his opinion. Plaintiffs are not attacking any of those elements of Mr. Nusbaum's opinion, or arguing that any of the information Mr. Nusbaum relied upon was wrong. Plaintiffs simply do not like the final opinion, which is not the standard for admissibility under Rule 702 or *Daubert*. *Siewertsen v. Worthington Indus.*, 783 Fed.Appx. 563, 575 (6th Cir. 2019) (focus is on principles and methods, not on final conclusions).

And to the extent Plaintiffs want to apply this heightened standard to Mr. Nusbaum's opinion—*i.e.*, his research must have been exhaustive, and he must have personal knowledge—the same standard would have to be applied to Mr. Free, a degree of scrutiny that Mr. Free's opinions cannot survive. And it is Plaintiffs' burden to establish that Mr. Free is qualified; it is

16

not Defendants' burden to disprove. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001). Mr. Free has not come forward with any evidence that he was a "key founder" of HGV, and even his own testimony, *supra*, strongly suggests Mr. Free was not a "key founder" of HGV.

V.
## CONCLUSION

For the foregoing reasons, Westgate respectfully requests that Plaintiffs' Motion to Exclude Certain Opinions of Howard Nusbaum be denied.

DATED: August 14, 2020          **GREENSPOON MARDER, LLP**

By:  /s/ *Richard W. Epstein*
Richard W. Epstein (FL Bar #229091)
Jeffrey A. Backman (FL Bar #662501)
B. Eliot New (FL Bar #1008211)
*Admitted Pro Hac Vice*
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
(954) 491-1120
Richard.Epstein@gmlaw.com
Jeffrey.Backman@gmlaw.com
Eliot.New@gmlaw.com

**WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER PLLC**
Gregory C. Logue (BPR #012157)
Robert L. Vance (BPR #021733)
900 Riverview Tower, 900 S. Gay Street
Knoxville, TN 37902-1810
Telephone: (865) 215-1000
Facsimile: (865) 215-1001
glogue@wmbac.com
bvance@wmbac.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that, on August 14, 2020, a copy of the foregoing filing was filed electronically such that notice of this filing will be sent by the Court's electronic filing system. Any party who does not receive this filing through the Court's electronic filing system will be served by U.S. Mail.

                                              By: /s/ *Richard W. Epstein*
                                                    Richard W. Epstein