UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MARILYN MOORE et al., individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 3:18-CV-00410-DCLC-JEM |
| WESTGATE RESORTS, LTD., et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Leave to File Sur-Reply to Plaintiffs' Motion for Class Certification [Doc. 162], Plaintiffs' Response in Opposition [Doc. 168], and Defendants' Reply [Doc. 174]. For the reasons herein, the Court will grant in part and deny in part Defendants' motion.

### I. BACKGROUND

Defendants sell timeshare units to vacationers at Westgate Smokey Mountain Resort in Gatlinburg, Tennessee, and Plaintiffs Marilyn Moore, Ryan and Laura Spado, Ellen Gilliland,[1] Gerold Gallegos, Deborah Campbell, Brian and Danyelle Miller, and Tonya Melfi, at various points, bought timeshares from Defendants at this resort. [Third Am. Compl., Doc. 98, ¶¶ 39–40, 61, 68, 79, 90, 99, 107]. Plaintiffs allege that Defendants used "high-pressure sales tactics" to snooker them into purchasing their timeshares. [*Id.* ¶ 36; *see id.* at 1–2, 13–14 ]. Specifically, they claim that Defendants invite vacationers like themselves to tour the resort, but the tours turn into multi-hour sales pitches "designed to ensure that they do not leave without purchasing

---

[1] Plaintiffs have notified the Court of the death of Plaintiff Larry Gilliland. [Pls.' Notice, Doc. 197].

a timeshare property." [*Id.* ¶ 40]. During one of these sales pitches, for example, Defendants' agents allegedly refused to allow Mr. Gallegos and Ms. Campbell to leave to take prescription medications, and they "eventually succumbed to the high-pressure tactics" as the "closing process stretched beyond 10:00 p.m." [*Id.* ¶¶ 88–89].

According to Plaintiffs, Defendants "train[] [their] agents to make misrepresentations and omissions during the sales process." [*Id.* ¶ 31]. For instance, Defendants' agents allegedly tell prospective purchasers that they can use their timeshare units anytime so long as they book them twenty-four hours in advance, but after purchasing a unit, purchasers are unable to book their units even when they give as much as twelve months' notice. [*Id.* ¶¶ 44–45]. Plaintiffs claim that the units are actually unavailable to purchasers—and that Defendants know they are unavailable but do not say so upfront—because Defendants sell them to multiple buyers at a time, rent them to non-owners, use them as model units, and close them for maintenance. [*Id.* ¶ 36].

In short, purchasers "will not be able to use their timeshare purchase as advertised or as would be reasonably expected—or sometimes at all," [*id.*]; instead, they are at the mercy of a "floating use plan," which Defendants do "not adequately describe to timeshare purchasers," [*id.* ¶ 51]. The "floating use plan" allegedly "gives owners the right to use a certain type of unit, subject to availability." [*Id.* ¶ 49]. And although state law requires timeshare developers like Defendants to disclose to purchasers that they have a legal right to rescind their purchase agreements, Plaintiffs allege that Defendants hide these disclosures in a folio, in which they provide purchasers with documentation of their purchase but conceal their right of recission inside a "secret pocket." [*Id.* ¶¶ 2, 36b, 55].

Plaintiffs have now filed a proposed class-action suit against Defendants in this Court, seeking to sue on behalf of themselves and all others similarly situated to them. Plaintiff bring claims against Defendants for violations of the Tennessee Time-Share Act of 1981, Tennessee Code Annotated § 66-32-101 *et seq.* (Counts One and Two), unjust enrichment (Count Three), fraudulent misrepresentation by omission (Count Four), fraud in the inducement (Count Five), negligent misrepresentation by omission (Count Six), breach of the implied covenant of good faith and fair dealing (Count Seven), breach of contract (Count Eight), and civil conspiracy (Count Nine). Defendants moved to dismiss these claims, and the Court granted dismissal of some of them: Counts One and Eight in their entireties and Counts Two, Three, Four, Five, Six, and Nine only as to Ms. Moore, Mr. Spado, and Ms. Spado. [Mem. Op. & Order, Doc. 185, at 50–51]. As to the counts that survived dismissal, Plaintiffs move for class certification, and they propose the following class for certification: "All residents of the United States and its territories who purchased from Westgate an All Season 'floating use plan' vacation timeshare property at the Westgate Smoky Mountain Resort at Gatlinburg from September 25, 2008 through the date of class certification." [Pls.' Mem. Supporting Class Certification, Doc. 124-1, at 20].

The parties have fully briefed Plaintiffs' motion for class certification, and the Court is prepared to rule on the motion once United States Magistrate Judge Jill E. McCook addresses the parties' cross motions to exclude expert opinions under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals Corp.*, 509 U.S. 579 (1993). *See* [Order Referring Mots., Doc. 200]. In the interim, Defendants move the Court for leave, under Local Rule 7.1(d), to file a sur-reply to Plaintiffs' motion for class certification, and Plaintiffs oppose their motion.

3

Case 3:18-cv-00410-DCLC-JEM    Document 202    Filed 04/08/25    Page 3 of 14
PageID #: 7754

Having carefully considered the parties' arguments, the Court will now rule on Defendants' motion.

## II. LEGAL STANDARD

A district court's local rules have "the force of law," *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010) (quotation omitted), and under Local Rule 7.1(d), a party may not file a sur-reply without the Court's permission "except that a party may file a supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's final brief is filed," E.D. Tenn. Local Rule 7.1(d). "[S]ur-replies are 'highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter,'" but "a surreply may be appropriate when the movant raises new issues in its reply brief." *Loomis v. Unum Grp. Corp.*, 539 F. Supp. 3d 898, 905 (E.D. Tenn. 2021) (quotation omitted). A motion to file a sur-reply is an appeal to the Court's discretion. *See Roberts v. A&S Bldg. Sys., L.P.*, No. 3:07-cv-413, 2008 WL 223522, at *1 (E.D. Tenn. Jan. 25, 2008) ("[Sur-replies] . . . are governed by Local Rule 7.1(d), and the parties must be granted leave of court to file such briefs. This decision whether to grant leave is wholly within the court's discretion."). But when a plaintiff presents new arguments or evidence in a reply brief, a district court will abuse its discretion if it denies a defendant leave to file a sur-reply. *See Eng'r & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010) (determining that the district court abused its discretion in denying the defendant leave to file a sur-reply).

## III. ANALYSIS

In moving for permission to file a sur-reply to Plaintiffs' motion for class certification, Defendants argue that Plaintiffs "largely ignored key elements of their claims" in their motion and attempted to make up ground by addressing these elements for the first time in their reply

4

brief. [Defs.' Mot. at 1]. According to Defendants, "[t]his was Plaintiffs' litigation tactic to wait until the final brief, when their opponents could not respond, and attempt to shift the burden." [*Id.*]. In response, Plaintiffs contend that "the 'new' issues listed by Westgate were either previously raised or were directly responsive to Westgate['s] arguments in its response." [Pls.' Resp. at 2]. Defendants also ask for leave to address the applicability of the Federal Arbitration Act, ("FAA"), 9 U.S.C. § 1 *et seq.*, to Plaintiffs' pending motion for class certification and for leave to submit their own expert's report for the Court's consideration when it rules on that motion. [Defs.' Mot. at 2].

**A. Defendants' Accusation of New Arguments in Plaintiffs' Reply Brief**

Defendants identify ten arguments that they believe Plaintiffs broached in their reply for the first time, and the Court will now address each argument in turn.

1. *The Secret Pocket*

Defendants maintain that "Plaintiffs have brought back the alleged 'secret' pocket" in their reply brief. [Defs.' Mot. at 3]. Defendants, however, raised the secret pocket in their response, in which they asserted that Plaintiffs had failed to address the secret pocket in their class-certification motion despite alleging it in their complaint. [Defs.' Resp., Doc. 146, at 3, 14]. Plaintiffs, then, had license to address this assertion in their reply, and they did so by clarifying, in a footnote, that they "are not seeking certification of their stand-alone claim that Westgate's 'secret pocket' violates the Timeshare Act"[2] and that the object of their allegations and evidence as to the secret pocket is to "reveal[] the attitudes of a company that intends to deceive consumers." [Pls.' Reply, Doc. 157, at 2 n.2]. The secret pocket, therefore, constitutes

---

[2] The Court previously dismissed this claim, which Plaintiffs raised in Count One of their third amended complaint. [Mem. Op. & Order at 50].

5

Case 3:18-cv-00410-DCLC-JEM   Document 202   Filed 04/08/25   Page 5 of 14
PageID #: 7756

neither new argument nor new evidence, and Defendants are not entitled to revisit it in a sur-reply.[3]

    2. *Omissions under the Tennessee Timeshare Act*

Next, Defendants contend that Plaintiffs argue for the first time in their reply that the Tennessee Timeshare Act applies to omissions, [Defs.' Mot. at 3], but Plaintiffs push back against this contention, asserting that "[t]his is not a new argument," [Pls.' Resp. at 2], and indeed, it is not. Plaintiffs allege that "Defendants violated . . . the Tennessee Time-share Act by omitting . . . material facts from consumers regarding the lack of unit availability due to Defendants' practice of overselling the resort," [Third Am. Compl. ¶ 162], or in other words, that Defendants' alleged floating-use plan violates the Tennessee Timeshare Act. In lockstep with these allegations, Plaintiffs, in moving for class certification, argue multiple times over that Defendants omitted the floating-use plan from their disclosures to purchasers. *See* [Pls.' Mem. Supporting Class Certification at 5–6 ("[A]ll purchasers . . . paid far more for their timeshares than they would have in the absence of such misrepresentations and *omissions*— that is, if Westgate adequately disclosed . . . the floating use scheme. Plaintiffs here bring claims to recover money damages, including under the Tennessee Time-Share Act[.]" (emphasis added)); *id.* at 9 ("Through affirmative misrepresentations and material *omissions*, Westgate hides from prospective owners prior to them making the purchase decision that owners will likely not be able to use the units as promised." (emphasis added)); *id.* at 28 ("Here, liability is premised on Westgate's misrepresentations and *omissions* regarding its floating use scheme and the availability of units[.]" (emphasis added))]. Plaintiffs' argument that Defendants violated the

---

[3] Defendants also argue that Plaintiffs, in their reply, "have deceptively edited their quotation of a newly attached exhibit," [Defs.' Mot. at 3], but Defendants do not identify the particular exhibit at issue or explain how Plaintiffs have "deceptively edited their quotation" of it, so this argument is lost on the Court.

6

Tennessee Timeshare Act by omitting the alleged floating-use plan from their disclosures is therefore not a newfound one, and Defendants are not entitled to belabor it in a sur-reply.

   3. *Duty to Disclose under "Realtor Statutes"*

Defendants go on to assert that Plaintiffs "are now arguing that Defendants had a duty to disclose based on realtor statutes, which they previously did not mention at all" in their motion for class certification. [Defs.' Mot. at 3]. Plaintiffs do not respond to this particular assertion. Although Plaintiffs *allege* that Defendants represented to prospective purchasers that they were real-estate licensees and therefore owed the prospective purchasers certain duties of disclosure under Tennessee statute—duties that, allegedly, they breached—[Third Am. Compl. ¶¶ 18, 175, 194, 210–213], these allegations, and any accompanying arguments based on them, are absent from their motion for class certification. They are also absent from Defendants' response, but Plaintiffs nonetheless went on to raise them in their reply. *See* [Defs.' Reply at 11–12]. The Court will therefore allow Defendants to file a sur-reply and address Plaintiffs' argument that Defendants, as real-estate licensees, had a duty of disclosure under Tennessee law.

   4. *Verbal Disclosures*

Next, Defendants insist that Plaintiffs "are now arguing that no amount of due diligence would have obviated the alleged need for verbal disclosures, despite not previously addressing any duty to disclose or ordinary diligence at all" in their motion for class certification. [Defs.' Mot. at 3]. Plaintiffs may not have addressed the interplay between due diligence and verbal disclosures in their motion for class-certification, but Defendants did so in their response to that motion. *See* [Defs.' Resp. at 1, 2, 5, 11, 14–15, 18–20; *see id.* at 1, 19 (describing this case as a "verbal misrepresentation action" and going on to argue that factual findings as to the exercise of "ordinary diligence" should govern the outcome of class certification)]. Plaintiffs therefore

7

Case 3:18-cv-00410-DCLC-JEM   Document 202   Filed 04/08/25   Page 7 of 14
PageID #: 7758

had the right to counter Defendants' arguments on due diligence and did so in their reply. *See* [Pls.' Reply at 1, 12 ("Westgate presumes that class certification can never be appropriate in a case involving verbal misrepresentations" and "argues further that individual questions arise as to whether purchasers exercised ordinary diligence," but "no amount of diligence would have revealed the nature and operation of Westgate's floating use scheme prior to purchase.")]. The issue of due diligence as it relates to verbal disclosures is therefore neither a new argument nor new evidence, and Defendants are not entitled to retread the issue in a sur-reply.

5. *Selling a Product "Subject to Availability"*

Defendants also attack Plaintiffs for arguing, for the first time in their reply, "that selling a product 'subject to availability' is a deceptive practice if there is no intent to supply enough product to meet reasonable demand." [Defs.' Mot. at 3]. But in Defendants' response to the class-certification motion, Defendants assert that "[e]ach purchaser signs an acknowledgment and initials that she understands she is purchasing a floating use timeshare[] that is subject to availability." [Defs.' Resp. at 6]. The upshot of this assertion is that the floating-use scheme is not a scheme at all and that all prospective purchasers are aware of it upfront and voluntarily agree to it. Plaintiffs reply to this assertion by contending that a "severe imbalance between the number of intervals available and the demand for use by owners" can constitute evidence of a party's "intent not to supply reasonably expected public demand." [Pls.' Reply 13 (quoting Tenn. Code Ann. § 47-18-104(b)(1))]. The Court reads this contention not as a new argument but as a counterargument to Defendants' position that the floating-use plan is not a deceptive practice, and Defendants are therefore not entitled to address it in a sur-reply. *See* [Pls.' Resp. at 3 (arguing that Defendants had argued that "the phrase 'subject to availability' exonerates them

from liability" and that Plaintiffs "simply explained in their Reply why Westgate is wrong" in their reply)].

6. *Element of Reliance*

Defendants next maintain that "Plaintiffs have now decided to address the element of reliance" in their reply, but Defendants clearly raised the issue of reliance in their response to Plaintiffs' motion for class certification, [Defs.' Resp. at 16–17], and Plaintiffs therefore had every right to reply to it. Defendants are therefore not entitled to file a sur-reply on the issue of reliance.

7. *Harm*

Continuing to point fingers at Plaintiffs for assembling new arguments in their reply, Defendants fault them for asserting that "even if Plaintiffs or putative class members have not been harmed, they might be harmed in the future, supposedly justifying class treatment without an injury in fact." [Defs.' Mot. at 3]. But as far as the Court can tell, Plaintiffs' reply contains arguments of *existing* harm, not future harm. *See* [Pls.' Reply at 20 (arguing that "all owners were injured *at the point of sale*" (emphasis added))]. In addition, Plaintiffs raised the issue of harm in their motion for class certification, Defendants responded to it, and Plaintiffs replied to it. Each party has had their say, and no further briefing is permissible in the form of a sur-reply.

8. *New Hypothetical*

Next, Defendants claim that Plaintiffs "made up a new hypothetical to explain their novel damages theory—one that is materially different from what their 'expert' offered and unsupported by any factual basis." [Defs.' Mot. at 3]. But Plaintiffs' use of a hypothetical in their reply was in response to Defendants' own use of a hypothetical in their response. *Compare* [Defs.' Resp. at 22–23 (challenging the hypothetical of Plaintiffs' proposed expert Dr. Daniel

9

Werner), *with* Pls.' Reply at 16 (countering Defendants' "attempts to undermine" Dr. Werner's hypothetical by "[i]magin[ing]" another hypothetical)]. And in any case, Plaintiffs' hypothetical dealt with harm, which, again, is an issue that each party fully addressed in their briefs from start to finish. Defendants therefore fail to identify any new arguments or evidence that justify leave to file a sur-reply as to Plaintiffs' "new hypothetical."

9. *Certification of an Issue Class*

Defendants go on to argue that "Plaintiffs propose possible issue certification" in their reply "without previously raising this possibility." [Defs.' Mot. at 4]. Plaintiffs in their reply do indeed invite the Court to "certify [the] class under Fed. R. Civ. P. 23(c)(4) for liability purposes, leaving individual damages calculations for subsequent proceedings." [Pls.' Reply at 17]. A party seeking class certification must first satisfy the four factors under Federal Rule of Civil Procedure 23(a), and second, it must satisfy one of Rule 23(b)'s three criteria. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under this second requirement, Plaintiffs seek certification under Rule 23(b)(3). [Pls.' Mem. Supporting Class Certification at 24– 28]. But as an "alternative" to certification under Rule 23(b)(3), a party may pursue class certification under Rule 23(c)(4), *In re Ford Motor Co.*, 86 F.4th 723, 726 (6th Cir. 2023), and that rule states that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Because Plaintiffs propose class certification under Rule 23(c)(4) for the first time in their reply, the Court will allow Defendants to file a sur-reply and express their view as to whether class certification is proper under this rule.

10. *New Affidavit*

Finally, Defendants object to Plaintiffs' filing of a declaration from Kenneth Free and five exhibits, all of which Plaintiffs submitted with their reply. [Defs.' Mot. at 4]. Although

10

Defendants decry these filings as "new," they do so in a one-sentence argument without any effort to identify which portions of the declaration and exhibits contain new argument or new evidence. Even a cursory review of Mr. Free's declaration shows it is not comprised of new arguments in its entirety, if at all. *See* [Kenneth Free Decl., Doc. 161, ¶ 5 ("I have reviewed Westgate's Response in Opposition to Plaintiffs' Motion for Class Certification. . . . In this Declaration, I am responding to statements made by Westgate about my expert report and deposition testimony in Westgate's Opposition.")].

If Defendants want permission to file a sur-reply to Mr. Free's declaration and the exhibits accompanying Plaintiffs' reply, they need to muster a *specific* argument as to which portions of the declaration and exhibits constitute new argument or evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). As Defendants' argument stands, it is much too cadaverous to justify leave to file a sur-reply, which, again, is "highly disfavored." *Loomis*, 539 F. Supp. 3d at 905 (quotation omitted).

### B. The Federal Arbitration Act

Defendants next state that a sur-reply is necessary because Defendant Westgate Resorts, Ltd. "began entering into stand-alone arbitration agreements and class action waivers with new purchasers, beginning in February 2018, which affect thousands of putative class members who purchased after that date." [Defs.' Mot. at 2]. Defendants now wish "to present this information to the Court for consideration in connection with class certification." [*Id.*]. In response, Plaintiffs

maintain that arbitrability is "not an appropriate issue to raise for the first time in a sur-reply" because Plaintiffs have "never mentioned arbitration in any pleading to date." [Pls.' Resp. at 4].

"In the context of class action litigation, courts repeatedly have held that the earliest time to move to compel arbitration is *after* class certification," because "[at] that juncture, previously putative class members first become subject to a court's jurisdiction." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020) (emphasis added) (citations omitted); *see Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) ("This Court will not compel absent putative class members who are not before this Court to binding arbitration or issue a ruling regarding the enforceability of the [arbitration] provision. Any such ruling is procedurally improper and analogous to an advisory opinion." (citation omitted)); *Crosby v. Stage Stores, Inc.*, 348 F. Supp. 3d 742, 752 (M.D. Tenn. 2018) ("[D]etermining whether [the defendant's] arbitration [agreement] precludes a putative class member from joining the action is inappropriate at the class certification stage." (citations omitted)); *Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 607 (N.D. Ill. 2015) ("[T]he more appropriate time to address [a motion to compel arbitration] is after the class is certified[.]"); *see also Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) ("[I]t would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the District Court to rule on those motions before the class was certified."); *cf. Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997) (holding that class certification was proper even when some of the class members had signed papers releasing the defendant from liability); *Zepeda v. U.S. Immigration & Naturalization Servs.*, 753 F.2d 719, 727 (9th Cir. 1983) (holding that an injunction against putative class members was improper prior to class certification because the

12

putative class members were not parties before the court). A showing that thousands of putative class members' claims would be subject to arbitration is therefore of no consequence here in the class-certification stage, and the Court will not permit Defendants to brief the Court on the arbitrability of these claims at this time.

### C. Submission of an Expert Report

Lastly, Defendants seek leave "to submit their own expert's report for consideration in connection with class certification." [Defs.' Mot. at 2]. Neither party disputes that Defendants have timely served their expert disclosures. [*Id.*; Pls.' Resp. at 4]. In fact, having received Defendants' expert report, Plaintiffs now move to exclude it, and in doing so, they have filed it as an exhibit in the record. [Howard C. Nusbaum's Report, Doc. 177-2]. Defendants may file their expert report as a free-standing document in the record if they wish to, and the Court will consider it alongside their response in opposition to Plaintiffs' class-certification motion.

### IV. CONCLUSION

Defendants' Motion for Leave to File Sur-Reply to Plaintiffs' Motion for Class Certification [Doc. 162] is **GRANTED in part** and **DENIED in part**. Defendants' motion is **GRANTED** to the extent they seek leave to address Plaintiffs' argument that Defendants, as real-estate licensees, had a duty of disclosure under Tennessee law and to address whether class certification is proper under Rule 23(c)(4). Defendants' motion is also **GRANTED** to the extent they request leave to file their expert report in opposition to class certification. Their motion is **DENIED** in all other respects. Their sur-reply shall be no more than fifteen pages in length, and they shall file it within fourteen days of this Order's date.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge