| | |
|---|---|
| MARILYN MOORE, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:18-cv-410-DCLC-JEM |
| | ) |
| WESTGATE RESORTS LTD., L.P., | ) |
| a/k/a Westgate Resorts, LTD., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the Order referring the matter by United States District Judge Clifton Corker [Doc. 205].

Now before the Court is Plaintiffs' Motion to Exclude Certain Opinions of Howard Nusbaum [Doc. 177]. Defendants responded in opposition [Doc. 179], and Plaintiffs filed a reply [Doc. 180]. Given the passage of time since the briefing, the Court allowed the parties to file supplemental briefs [Doc. 206]. The parties did not file supplemental briefs. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a).

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the motion [**Doc. 177**].

**I. BACKGROUND**

On September 25, 2018, Plaintiffs filed their Complaint [Doc. 1], and later, on July 17, 2020, they filed the Third Amended Class Action Complaint ("Third Amended Complaint") [Doc. 98]. Plaintiffs are purchasers of timeshares at Westgate Smoky Mountain Resort ("Resort") [*Id*. ¶¶ 61, 68, 79, 88, 99, 107]. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, they also seek to bring this action on behalf of others, defining their proposed class as:

> All residents of the United States and its territories who purchased from [Defendant] a "floating use plan" vacation timeshare property at the Westgate Smoky Mountain Resort at Gatlinburg from September 25, 2008[,] through the date of class certification.

[*Id*. ¶ 114].[1] On May 1, 2020, Plaintiffs moved to certify the class and to appoint class counsel [Doc. 124].

Plaintiffs allege that "Defendants [are] various entities associated with the . . . Resort" [Doc. 98 p. 1]. Plaintiffs generally claim that Defendants "use a high-pressure scheme that involves convincing prospective purchasers to buy into [their] vacation timeshare program while failing to adequately disclose material and legally required information to buyers" [*Id*.]. According to Plaintiffs, Defendants failed to disclose material facts to timeshare purchasers by: (1) "fail[ing] to adequately train or to supervise their sales agents, and, . . . encourag[ing] their sales agents to utilize high-pressure sales tactics[,]" (2) "provid[ing] their sales and closing agents with a folio to give to purchasers with the purchasers' documentation; however, the folios provided by the Defendants contain a 'secret pocket' which Defendants know their sales and closing agents often use to conceal the required disclosures[,]" (3) "fail[ing] to adequately disclose to purchasers that they are not purchasing a share in a specific unit but are instead buying into a 'floating use plan[,]'" and they do not explain how those plans work, (4) "fail[ing] to adequately disclose that the Defendants may delay delivery of a deed to the purchasers for a period of years[,]" and (5) "fail[ing] to disclose to purchasers that because [Defendants] oversell[] and artificially restrict[] the availability of Resort properties . . . they will not be able to use their timeshare purchase as advertised or as would be reasonably expected" [*Id*. ¶ 36(a)–(d); *see also* ¶¶ 39–60]. Plaintiffs add that "Defendants['] sales agents pressure purchasers to sign a series of complex and misleading

---
[1] Plaintiffs define the "floating use plan" as a plan that provides "owners the right to use a certain type of unit, subject to availability" [Doc. 98 ¶ 48].

legal documents without giving purchasers the opportunity to read—or in some cases, see—the documents they are signing" [*Id*. ¶ 37]. In addition, Plaintiffs assert that "[Defendants] specifically train [their] sales agents to make misrepresentations and omissions during the sales process" [*Id*. ¶ 38]. Plaintiffs outline their experiences with purchasing and owning a timeshare [*Id*. ¶¶ 61–113].

Plaintiffs bring claims against Defendants for violations of the Tennessee Time-Share Act of 1981, Tenn. Code Ann. § 66-32-101 *et seq.* (Counts I and II), unjust enrichment (Count III), fraudulent misrepresentation by omission (Count IV), fraud in the inducement (Count V), negligent misrepresentation by omission (Count VI), breach of the implied covenant of good faith and fair dealing (Count VII), breach of contract (Count VIII), and civil conspiracy (Count IX) [*Id*. ¶¶ 150–241].

On November 18, 2020, Judge Corker granted in part and denied in part Defendants' motion to dismiss [Doc. 185]. He dismissed Counts I and VIII [*Id*. at 50]. In addition, he found Plaintiff Moore's, Plaintiff Ryan Spado's, and Plaintiff Laura Spado's claims under Counts I, II, III, IV, V, VI, and IX were barred by the statute of limitations [*Id*.].

In June 2020, Defendants disclosed Howard Nusbaum ("Mr. Nusbaum") as an expert [Doc. 177-2]. Mr. Nusbaum was the president and chief executive officer ("CEO") of American Resort Development Association ("ARDA") from 2000 to 2019 [*Id*. at 4]. During his time with ARDA, he "led all three of [its] not-for-profit organizations" [*Id*.]. He explains that "[t]he focus of the work was on research, education, best practices, and communications, as well as working with quality developers to enhance the industry" [*Id*.]. In addition, he "was responsible for leading the team that worked closely with regulators and lawmakers interpreting and educating on specific timeshare laws and regulations" [*Id*.]. His work included representing developers, timeshare

3

owners, consumers, and other stakeholders" [*Id*.]. Mr. Nusbaum states, "The constituency for my work included all stakeholders in the world of timeshare" [*Id*.]. He was also involved in "educat[ing] all stakeholders wishing to understand the industry" [*Id*.].

During his time as the CEO for ARDA, Mr. Nusbaum "was responsible for developing and overseeing educational programs, including the designation program (RRP) encouraging professionalism in timeshare, and the reading of the AIF [("ARDA International Foundation")] Timeshare Industry Manual" [*Id*.]. In addition, he submits that his "team had the responsibility to provide updates to the regulatory structure, changes in the laws, and sharing the contemporary environment for the industry" [*Id*.]. "[Mr. Nusbaum] oversaw the annual suite of research sponsored by the ARDA [International] Foundation[,]" much of which he utilizes in his expert report [*Id*.].

Currently, he "consult[s] with the industry and with timeshare owners' groups[,]" and he "work[s] with the agenda of the independent Timeshare Board Members Association" [*Id*.]. He also contributes to *Timesharing Today Magazine*, which "is a timeshare consumer operated publication for timeshare owners" [*Id*.].

Mr. Nusbaum provides an overview of timeshare history and its industry [*see id*. at 6–10] and regulatory matters [*see id*. at 10–13]. He then sets forth his disagreements with Plaintiffs' expert, Kenneth Free [*Id*. at 13–19]. First, Mr. Nusbaum opines, "Mr. Free's assertions that somehow [Defendants] did not adequately or clearly disclose information about the use plan and booking availability is truly perplexing and is just plain wrong" [*Id*. at 16]. Second, he states that he "take[s] issue" with how Mr. Free "portrays [Defendants'] use of multiple company entities as somehow being a suggestion of nefarious intentions or implies some type of fraud" [*Id*. at 15]. And third, Mr. Nusbaum addresses Mr. Free's claim that he "was a key founder of Hilton Grand

4

Case 3:18-cv-00410-DCLC-JEM   Document 214   Filed 06/27/25   Page 4 of 17
PageID #: 7950

owners, consumers, and other stakeholders" [*Id*.]. Mr. Nusbaum states, "The constituency for my work included all stakeholders in the world of timeshare" [*Id*.]. He was also involved in "educat[ing] all stakeholders wishing to understand the industry" [*Id*.].

During his time as the CEO for ARDA, Mr. Nusbaum "was responsible for developing and overseeing educational programs, including the designation program (RRP) encouraging professionalism in timeshare, and the reading of the AIF [("ARDA International Foundation")] Timeshare Industry Manual" [*Id*.]. In addition, he submits that his "team had the responsibility to provide updates to the regulatory structure, changes in the laws, and sharing the contemporary environment for the industry" [*Id*.]. "[Mr. Nusbaum] oversaw the annual suite of research sponsored by the ARDA [International] Foundation[,]" much of which he utilizes in his expert report [*Id*.].

Currently, he "consult[s] with the industry and with timeshare owners' groups[,]" and he "work[s] with the agenda of the independent Timeshare Board Members Association" [*Id*.]. He also contributes to *Timesharing Today Magazine*, which "is a timeshare consumer operated publication for timeshare owners" [*Id*.].

Mr. Nusbaum provides an overview of timeshare history and its industry [*see id*. at 6–10] and regulatory matters [*see id*. at 10–13]. He then sets forth his disagreements with Plaintiffs' expert, Kenneth Free [*Id*. at 13–19]. First, Mr. Nusbaum opines, "Mr. Free's assertions that somehow [Defendants] did not adequately or clearly disclose information about the use plan and booking availability is truly perplexing and is just plain wrong" [*Id*. at 16]. Second, he states that he "take[s] issue" with how Mr. Free "portrays [Defendants'] use of multiple company entities as somehow being a suggestion of nefarious intentions or implies some type of fraud" [*Id*. at 15]. And third, Mr. Nusbaum addresses Mr. Free's claim that he "was a key founder of Hilton Grand

4

Vacations Company" ("HGV") [*Id*. at 18 (emphasis and citation omitted)]. During his time with ADRA, Mr. Nusbaum states that he "was tasked with preparing anniversary commemorative publications detailing ARDA and timeshare industry milestone" and that "never once did [he] hear Mr. Free's name referenced" [*Id*.].

The parties dispute whether Mr. Nusbaum's three opinions about Mr. Free's opinions are relevant and reliable [Docs. 178, 179 & 180].

## II.    STANDARD OF REVIEW

"[Rule] 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[2] The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any

---

[2]    Rule 702 was amended on December 1, 2023, after the parties completed briefing on the motion. The Court utilizes the current version of Rule 702 because it governs "insofar as just and

5

Case 3:18-cv-00410-DCLC-JEM    Document 214    Filed 06/27/25    Page 5 of 17
PageID #: 7951

and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25, 2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (quoting *Daubert*, 509 U.S. at 593–94), *aff'd by* 89 F. App'x 927 (6th Cir. 2003). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers

---

practicable, all proceedings then pending." Prop. Ams. to the Fed. R. Evid., 344 F.R.D. 850, 851. *See also United States v. Candelaria*, No. 22-CR-767, 2023 WL 8185932, at *1 n.1 (D.N.M. Nov. 27, 2023) (applying amendment before the effective date of the amendment because the trial was scheduled to occur after the effective date); *Andrews v. Brethern Mut. Ins. Co.*, No. 4:19-cv-01107, 2023 WL 660710, at *6 (M.D. Pa. Oct. 12, 2023) (taking "heed of the forthcoming changes so as to avoid the misapplication of Rule 702 identified by the Advisory Committee"). But the result would be the same regardless of whether the Court applied the current or prior version of Rule 702. The changes to the rule are not substantive. *Nash-Perry v. City of Bakersfield*, No. 118CV01512, 2023 WL 8261305, at *13 (E.D. Cal. Nov. 29, 2023). Rather, "[t]he amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000--requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard." Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

6

many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id*. (citing *Kumho Tire*, 526 U.S. at 150).

With respect to expert testimony at the class certificate stage, recently, the United States Sixth Circuit Court of Appeals joined the majority view by finding, "If challenged expert testimony is material to a class certification motion, the district court must demonstrate the expert's credibility under *Daubert*." *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 253 (6th Cir. 2024). The rationale is that "[c]lass certification requires the plaintiffs to provide 'evidentiary proof' that they meet the elements of Rule 23," and unreliable expert testimony "cannot 'prove' that the Rule 23(a) prerequisites have been met 'in fact' through acceptable evidentiary proof." *Id*. (citation omitted). In other words, to the extent the expert's opinions do not pass muster under *Daubert*, the plaintiffs cannot establish "the Rule 23(a) prerequisites." *Id*. (quoting *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015)).

### III. ANALYSIS

Plaintiffs challenge the reliability and relevancy of Mr. Nusbaum's opinions. "Rule 702 guides the trial court by providing general standards to assess reliability: whether the testimony is based on 'sufficient facts or data,' whether the testimony is the 'product of reliable principals and methods,' and whether the expert 'has applied the principles and methods reliable to the facts of the case.'" *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702). It also requires that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'" *Daubert*, 509 U.S. at 591 (quoting 3 Weinstein & Berger ¶ 702[02], pp. 702–18). Some courts describe this inquiry as whether the opinion fits the facts of the case. *Id*; *see also*

*Ellipsis, Inc. v. The Color Works, Inc.*, 428 F. Supp. 2d 752, 757 (W.D. Tenn. 2006) ("The relevance step of the inquiry is designed to ensure that 'there is a "fit" between the testimony and the issue to be resolved by the trial.'" (quoting *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999)). An expert's legal conclusions are not helpful. *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997).

For the reasons explained below, the Court finds Mr. Nusbaum's opinions about Defendants' disclosures and corporate structures inadmissible. The Court, however, declines to exclude Mr. Nusbaum's statements about Mr. Free's claims of being a key founder of HGV.

### A. Mr. Nusbaum's Opinions Regarding Defendants' Sales Practices

According to Plaintiffs, "Mr. Nusbaum opined that 'Mr. Free's assertions that somehow [Defendants] did not adequately or clearly disclose information about the use plan and booking availability is truly perplexing and is just plain wrong'" [Doc. 178 p. 6 (citation omitted)]. Plaintiffs argue that Mr. Nusbaum's opinion is not based on sufficient facts and that he relies on three unsupported bases for this opinion [*Id.*].

First, they assert, Mr. Nusbaum relies on Defendants' Public Offering Statement ("POS") and makes "a legal argument masquerading as an expert opinion" [*Id.*]. "[Defendants have] never argued[,]" Plaintiffs assert, "that the State of Tennessee's approval of [their] POS somehow pre-empts Plaintiffs' claims" [*Id.*]. They state that Mr. Nusbaum was not aware that verbal statements are governed under the Tennessee Timeshare Act and that "his duties at ARDA did not include reviewing timeshare plans for their compliance with legislation and regulations" [*Id.* at 7 (emphasis and citation omitted)]. In addition, Plaintiffs contend that Mr. Nusbaum did "not cite to anything in [Defendants'] POS demonstrating that it adequately disclosed [Defendants'] floating use plan or 'booking availability'" [*Id.*]. And Plaintiffs state that Mr. Nusbaum testified that he

"still needed to talk to [Defendants'] representative and an attorney to 'understand how it worked'" [*Id*. at 8].

Second, Plaintiffs assert that Mr. Nusbaum relies on Defendants' experience, but they claim that is irrelevant [*Id*.].

Finally, Plaintiffs assert Mr. Nusbaum bases his opinion on his belief that Defendants have enough inventory [*Id.*]. But Plaintiffs assert it "is sheer *ipse dixit*" [*Id*.].

Defendants respond that "Plaintiffs mischaracterize Mr. Nusbaum's opinion as one relating to [Defendants'] sales practices[,]" but it does not [Doc. 179 p. 4]. Instead, Defendants state that Mr. Nusbaum reviewed the POS, and "[a]ll purchasers—including Plaintiffs—signed an acknowledgment that, along with other documents, they receive[d] [it]" [*Id*.]. They contend that Mr. Nusbaum's experience provides a sufficient basis for his opinion [*Id*. at 5–6]. And although Plaintiffs claim that "Mr. Nusbaum is opining that the state-mandated and approved POS pre-empts Plaintiffs' claims," Defendants state that "they have never made such an argument" [*Id*. at 6]. Instead, Defendants assert, "Mr. Nusbaum opines that the disclosures in the POS 'meet industry standards'" [*Id*. (citation omitted)]. "Although not expressly stated as an attack on Mr. Nusbaum's qualifications," Defendants state that "Plaintiffs challenge Mr. Nusbaum's opinion because his job duties in the last 20 years did not include reviewing timeshare plans for legal compliance" [*Id*. at 7]. But Defendants claim that he has "extensive experience in the timeshare industry working on model legislation[] and working with timeshare developers to ensure that their floating use timeshare plans comply" [*Id*. at 7–8]. Defendants argue that Mr. Nusbaum relied on the POS, he was not required to cite it more specifically in his opinion, and that Plaintiffs mischaracterize his deposition testimony about needing to discuss the POS with others

[*Id*. at 8–9]. They claim that Mr. Nusbaum's statement about Defendants having enough inventory "is unrelated to the disclosures in the POS" [*Id*. at 10].

Plaintiffs reply that "[t]he first of Mr. Nusbaum's opinions [they] seek to exclude . . . , is the 4-page description of [Defendants'] Floating Use Plan and booking availability in [Defendants' POS]" [Doc. 180 pp. 2–3].[3] They contend that Mr. Nusbaum "does not provide any basis for this opinion whatsoever" [*Id*. at 3 (emphasis omitted)]. "[T]he only basis Mr. Nusbaum provides for his opinion[,]" Plaintiffs assert "is his experience[,]" which they claim is the "hallmark of *ipse dixit* testimony" [*Id*.].

The Court has excluded Mr. Free's testimony about inadequate disclosures as unhelpful to the jury. Given that, it appears Plaintiffs' challenge to Mr. Nusbaum's testimony about Mr. Free's opinions is moot. To the extent Defendants attempt to rely on Mr. Nusbaum's opinions, the Court finds they are unhelpful for the same reasons the Court has excluded Mr. Free's opinions. *See Univ. of Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, No. 3:19-CV-508, 2024 WL 4011957, at *8 (E.D. Tenn. Sept. 1, 2024) ("[T]he parties are well-aware of the contents of [the magistrate judge's] *Daubert* orders, and the Court sees no reason to not apply these rulings equally to both parties' experts.").

As Defendants argued in their challenge against Mr. Free's opinions, "it is well within the experience of common men to determine whether availability was accurately and adequately disclosed" [Doc. 166 p. 21 (citations omitted)]. And here Defendants claim, "The state-mandated and approved POS describes the floating use plan and reservations in consumer-friendly language" [Doc. 179 p. 5 (citation omitted)]. *See Mem'l Hall Museum, Inc. v. Cunningham*,

---

[3] Plaintiffs state that they have moved to exclude "the 4-page description" [Doc. 180 p. 3]. But they have moved to exclude Mr. Nusbaum's opinions in paragraph 4 on page 16 of his report [*See* Doc. 178 p. 6].

10

455 F. Supp. 3d 347, 365 (W.D. Ky. 2020) ("What is or is not written . . . is a matter of fact and not an issue of expert testimony."); *see also Diamond Resorts U.S. Collection Dev., LLC v. Newton Grp. Transfers, LLC*, No. 9:18-CV-80311, 2022 WL 1642865, at *8 (S.D. Fla. Mar. 31, 2022) ("Neither does [the expert's] testimony offer 'special technical assistance' necessary to assist the jury in determining whether the Mailer is false or misleading. Once the Court instructs the jury on the parameters of Florida law, the jury can determine the accuracy of the Mailer."). While Defendants contend that "Mr. Nusbaum opines that the disclosures in the POS 'meet industry standards'" [Doc. 179 p. 6], similar to Mr. Free's opinion, Mr. Nusbaum does not discuss the industry standards to which he refers. *See Dunlap v. Choice Hotels Int'l, Inc.*, No. 5:20-CV-00159, 2021 WL 6126154, at *5 (W.D. Ky. Dec. 28, 2021) ("Although [the expert] states that Sleep Inn's procedures 'were not consistent with those that would have been employed by a reasonable . . . lodging operator,' [the expert] never states what those reasonable procedures would be. Claiming that an industry standard exists is not the same as discussing that standard." (ellipsis in original and citation omitted)).

Accordingly, to the extent Plaintiffs' challenge is not moot, the Court finds Mr. Nusbaum's opinions about Defendants' sales practices are not helpful and will be excluded.

### B. Mr. Nusbaum's Opinions about Corporate Structure

Plaintiffs state, "Mr. Nusbaum's opinion that [Defendants'] use of multiple company entities is 'legal' is obviously, a legal conclusion, and thus, inadmissible" [Doc. 178 p. 9 (citation omitted)]. In addition, Plaintiffs submit that "Mr. Nusbaum's opinion is not based on any information or data about the specific interrelationships between the various [Defendant] entities that are Defendants in this case" [*Id.*]. "Nor does Mr. Nusbaum's opinion relate in any way to Plaintiffs' specific allegations that the various [Defendant] entities 'agreed to join a conspiracy

11

related to defrauding consumers in the purchase of timeshares properties seemingly, but not actually, in compliance with the law of Tennessee'" [*Id*. (citing Doc. 98 ¶ 235)]. Plaintiffs therefore ask that "Mr. Nusbaum's opinion regarding [Defendants'] use of multiple company entities . . . be excluded as unreliable, irrelevant, and unhelpful to the jury in understanding the specific interrelationships between the Defendants in this case and how those interrelationships relate to Plaintiffs' civil conspiracy claim" [*Id*. at 9–10].

Defendants respond that "Mr. Nusbaum is not opining that [Defendants'] structure is 'legal,' but rather that 'this type of structure is common-place, legal, and quite appropriate'" [Doc. 179 p. 12 (emphasis omitted)]. They deny "that Mr. Nusbaum is opining on alter ego or conspiracy" [*Id*.]. Defendants submit that Plaintiffs "are free to present" any "competent evidence of alter ego or conspiracy" and that "Mr. Nusbaum is only opining that having multiple entities involved in a project is not nefarious or fraudulent; it is common, legal, and appropriate" [*Id*.].

Plaintiffs reply that "Mr. Nusbaum did not review any documents about the specific relationships between the various [Defendant] entities that are Defendants in this case" [Doc. 180 p. 4 (citations omitted)]. "Thus," Plaintiffs contend, "he has no basis to opine that [Defendants'] corporate structure is even the 'type of structure' to which he is referring" [*Id*.]. Plaintiffs argue that he "offered no industry examples to support his theory" and that "unlike Plaintiffs' expert Alec Fahey, . . . Mr. Nusbaum has no experience or credentials that would make him qualified to offer an opinion on conspiracy, alter ego, financial fraud, or agency matters" [*Id*. at 4–5].

The Court agrees that Mr. Nusbaum's discussion of Defendants' structure is not reliable. *See* Fed. R. Evid. 702. Mr. Nusbaum states that he "take[s] issue with the premise or undercurrent of Mr. Free's report[,] which portrays [Defendants'] use of multiple company entities as somehow

being a suggestion of nefarious intentions or implies some type fraud" [Doc. 177-2 p. 15]. Stating that Mr. Free's premise "is simply not true[,]" Mr. Nusbaum asserts:

> The structure of having multiple companies working within a family of companies which share some employees and missions is quite typical in hotel and timeshare structures. As I stated earlier in the report, this type of structure is not uncommon. There are many good legitimate business reasons to segregate these companies as well as have them work together to accomplish aligned goals. I know this from my experience at looking at various structures of timeshare companies when working on drafting legislative models that this type of structure is common-place, legal, and quite appropriate.

[*Id.*]. Yet, during his deposition, Mr. Nusbaum stated that he did not "read any financial documents showing the interrelationship of the various [Defendant] entities in connection with the [Resort]" [Doc. 177-3 p. 14]. And his expert report reflects that he "did not review any documents regarding the relationships between the various [Defendant] entities" [Doc. 178 p. 9 (citation omitted); *see also* Doc. 177-2 p. 25]. Mr. Nusbaum therefore "has no basis to opine that [Defendants'] corporate structure" "is common-place, legal, and quite appropriate" [Doc. 180 p. 4]. The Court therefore excludes Mr. Nusbaum's opinion about corporate structure.[4]

### C. Mr. Nusbaum's Opinions about Mr. Free's Experience

According to Plaintiffs, "Mr. Nusbaum takes particular issue with the background and qualifications of Plaintiffs' expert Kenneth Free" [Doc. 178 p. 10]. But Plaintiffs state that "Mr. Nusbaum . . . has no first-hand knowledge of Mr. Free's role in the founding of [HGV], which predated Mr. Nusbaum's entry into the industry by nearly a decade" [*Id.*]. Instead, Plaintiffs assert, "the sole basis for Mr. Nusbaum's opinion is that he had never heard of Mr. Free before becoming involved in this case" [*Id.*]. They submit that his "'studied historical memorialization'

---

[4] Given this finding, the Court need not consider Plaintiffs' remaining arguments.

13

consisted solely of preparing commemorative publications for the 40th and 50th anniversaries of ARDA" [*Id*. at 11 (citations omitted)]. This, Plaintiffs claim, "is a wholly inadequate basis to offer opinions about Mr. Free's background and qualifications" [*Id*.].[5]

Defendants respond that "Mr. Nusbaum can offer this opinion for multiple reasons" [Doc. 179 p. 14]. "First," they assert, "it was literally his job, for approximately 20 years, to know who was involved in the timeshare industry" [*Id*.]. "Second, during Mr. Nusbaum's tenure at ARDA, the organization celebrated its 40th and 50th anniversaries" and "Mr. Nusbaum oversaw the creation of commemorative publications detailing milestones in the timeshare industry" [*Id*. (citation omitted)]. As part of those projects, Defendants claim that Mr. Nusbaum interviewed "the two men who brought timeshare expertise to the joint venture with Hilton Hotels that became HGV, and he interviewed them regarding the founding of HGV" [*Id*. at 15 (citation omitted)]. He also interviewed HGV's first CEO and recent HGV's executives, but "none of these individuals ever mentioned Mr. Free's name in the context of the founding of HGV, or otherwise, leading to the inescapable conclusion that Mr. Free was not a 'key founder,' or any other type of founder of HGV" [*Id*. (citations omitted)].

Moreover, Defendants claim that "an expert witness does not need personal knowledge of the underlying facts to testify" [*Id*. at 15 (citation omitted)]. They state that they now have a declaration from Kim Robert Krieger [Doc. 179-2], who Defendants contend is an "actual founder[] of HGV[,]" [Doc. 179 p. 15]. Defendants claim that Mr. Krieger "confirm[s] that Mr. Free was not involved" [*Id*.]. Further, they argue that the timing of Mr. Nusbaum's research, which

---

[5] Plaintiffs title this section in their brief as "Mr. Nusbaum's Opinions Regarding Mr. Free's Qualifications Should be Excluded as Unreliable and Irrelevant" [Doc. 178 p. 10 (emphasis omitted)]. But they do not address relevancy in their filings. The Court therefore need not consider that issue.

14

occurred before this litigation, shows that it "was reasonable and carried out for non-litigation purposes" [*Id*.]. Stating that Plaintiffs' challenges are for cross examination, Defendants assert that Plaintiffs' objection to "the final opinion . . . is not the standard for admissibility under Rule 702 or *Daubert*" [*Id*. at 16 (citation omitted)].

Plaintiffs reply that "Mr. Nusbaum's opinions about the background and qualifications of Plaintiff's expert, Kenneth Free, are unreliable, and [Defendants'] last-ditch effort to rehabilitate Mr. Nusbaum's unfounded opinions with an *ex post facto* declaration . . . does not change that" [Doc. 180 p. 5 (citation omitted)]. Plaintiffs claim that Mr. Krieger's declaration contains inadmissible hearsay [*Id*.]. Plaintiffs filed the Declaration of Robert M. La Forgia [Doc. 180-2] and the Declaration of James Baum [Doc. 180-3]. They claim that these individuals "actually worked with Mr. Free at the Hilton Hotels Corporation" and that they "have first-hand knowledge of Mr. Free's role in the founding" [Doc. 180 p. 5]. According to Plaintiffs, "Mr. Nusbaum's opinion that Mr. Free has not been actively involved in the timeshare industry is also unreliable," noting that Mr. Nusbaum "was unaware that Mr. Free was an ARDA-certified Registered Resort Professional" [*Id*. at 6 (footnote omitted)]. In addition, Plaintiffs state that "Mr. Nusbaum[] was apparently unaware and took no steps to find out that his predecessor as President of ARDA, Thomas Franks, invited Mr. Free to join ARDA's 'Chairman's League' in 1993" [*Id*. at 6–7]. "If [Defendants] believe[] Mr. Free is puffing about the significance of his role in the Hilton's entry into the timeshare market," Plaintiffs assert, "[Defendants are] free to cross-examine Mr. Free at trial" [*Id*.]. "But," they state, "the Court should not admit baseless purported factual testimony by Mr. Nusbaum under the guise of expert opinion testimony" [*Id*.].

Upon review, Mr. Nusbaum's statements appear to be factual testimony as opposed to expert testimony. *See In re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 767 F. Supp. 3d 495,

15

504 (E.D. Mich. 2025) ("As a general matter, 'expert' testimony consists of opinions or commentary grounded in 'specialized knowledge,' that is, knowledge that is 'beyond the ken of the average juror.'" (citations omitted)). Even if Mr. Nusbaum's statements could be considered expert testimony, Plaintiffs do not challenge any methods of collecting the information for his commemorative publications; instead, they challenge that Mr. Nusbaum did not review certain records or talk to certain individuals [*See* Doc. 178 p. 10, Doc. 180 pp. 5–6]. These challenges go to the weight of Mr. Nusbaum's statements. *See Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012) ("[I]t is not proper for the Court to exclude expert testimony 'merely because the factual bases for an expert's opinion are weak.'" (quoting *Boyar v. Korean Air Lines Co.*, 954 F. Supp. 4, 7 (D.D.C. 1996))).

Plaintiffs also argue that "Mr. Nusbaum . . . has no first-hand knowledge of Mr. Free's role" [Doc. 178 p. 10]. But Mr. Nusbaum's statement flows from his "two-decade experience" in the timeshare industry [*see* Doc. 177-2 p. 4] and his role in collecting information for the commemorative book [*see id*. at 18]. If Plaintiffs believe that Mr. Nusbaum's statements are speculative or constitute hearsay, they may object to them at a later date.

Accordingly, the Court declines to exclude Mr. Nusbaum's statements at this time.[6]

---

[6] Both parties filed declarations in an attempt to prove or disprove Mr. Free's statement that he was a key founder of HGV [Docs. 179-2; Doc. 180-1; Doc. 180-2]. But these declarations are not helpful in determining whether Mr. Nusbaum's statements are admissible because Mr. Nusbaum did not rely on them [*See* Doc. 177-2 p. 25 (identifying the material Mr. Nusbaum relied on)].

16

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Exclude Certain Opinions of Howard Nusbaum [**Doc. 178**].

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge