UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

MARILYN MOORE, *et al.*,                    )
                                            )
            Plaintiffs,                     )
                                            )
v.                                          )          No. 3:18-cv-410-DCLC-JEM
                                            )
WESTGATE RESORTS LTD., L.P.,                )
a/k/a Westgate Resorts, LTD., *et al.*,     )
                                            )
            Defendants.                     )

**MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court,

and the Order referring the matter by United States District Judge Clifton Corker [Doc. 205].

Now before the Court is Defendants' Motion to Exclude Opinions of Alec Fahey

[Doc. 152]. Plaintiffs filed a response to the motion [Doc. 167], and Defendants filed a reply

[Doc. 171]. Given the passage of time since the briefing, the Court allowed the parties to file

supplemental briefs [Doc. 206]. Neither party filed a supplemental brief. On June 11, 2025, the

parties appeared before the Court for a motion hearing. Attorneys Christopher Coleman, John

Belcher, Kenneth Byrd, and Wayne Ritchie, II, appeared on behalf of Plaintiffs. Attorneys

Benjamin New and Robert Vance appeared on behalf of Defendants. The motion is ripe for

adjudication. *See* E.D. Tenn. L.R. 7.1(a).

For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART**

the motion [**Doc. 152**].

I.      **BACKGROUND**

On September 25, 2018, Plaintiffs filed their Complaint [Doc. 1], and later, on July 17,

2020, they filed the Third Amended Class Action Complaint ("Third Amended Complaint")

[Doc. 98]. Plaintiffs are purchasers of timeshares at Westgate Smoky Mountain Resort ("Resort") [*Id.* ¶¶ 61, 68, 79, 88, 99, 107]. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, they also seek to bring this action on behalf of others, defining their proposed class as:

> All residents of the United States and its territories who purchased from [Defendant] a "floating use plan" vacation timeshare property at the Westgate Smoky Mountain Resort at Gatlinburg from September 25, 2008[,] through the date of class certification.

[*Id.* ¶ 114].[1] On May 1, 2020, Plaintiffs moved to certify the class and to appoint class counsel [Doc. 124].

Plaintiffs allege that "Defendants [are] various entities associated with the . . . Resort" [Doc. 98 p. 1]. Plaintiffs generally claim that Defendants "use a high-pressure scheme that involves convincing prospective purchasers to buy into [their] vacation timeshare program while failing to adequately disclose material and legally required information to buyers" [*Id.*]. According to Plaintiffs, Defendants failed to disclose material facts to timeshare purchasers by: (1) "fail[ing] to adequately train or to supervise their sales agents, and, . . . encourag[ing] their sales agents to utilize high-pressure sales tactics[,]" (2) "provid[ing] their sales and closing agents with a folio to give to purchasers with the purchasers' documentation; however, the folios provided by the Defendants contain a 'secret pocket' which Defendants know their sales and closing agents often use to conceal the required disclosures[,]" (3) "fail[ing] to adequately disclose to purchasers that they are not purchasing a share in a specific unit but are instead buying into a 'floating use plan[,]'" and they do not explain how those plans work, (4) "fail[ing] to adequately disclose that the Defendants may delay delivery of a deed to the purchasers for a period of years[,]" and (5) "fail[ing] to disclose to purchasers that because [Defendants] oversell[] and artificially restrict[]

---

[1]    Plaintiffs define the "floating use plan" as a plan that provides "owners the right to use a certain type of unit, subject to availability" [Doc. 98 ¶ 48].

2

the availability of Resort properties . . . they will not be able to use their timeshare purchase as advertised or as would be reasonably expected" [*Id*. ¶ 36(a)–(d); *see also* ¶¶ 39–60]. Plaintiffs add that "Defendants['] sales agents pressure purchasers to sign a series of complex and misleading legal documents without giving purchasers the opportunity to read—or in some cases, see—the documents they are signing" [*Id*. ¶ 37]. In addition, Plaintiffs assert that "[Defendants] specifically train [their] sales agents to make misrepresentations and omissions during the sales process" [*Id*. ¶ 38]. Plaintiffs outline their experiences with purchasing and owning a timeshare [*Id*. ¶¶ 61–113].

Plaintiffs bring claims against Defendants for violations of the Tennessee Time-Share Act of 1981, Tenn. Code Ann. § 66-32-101 *et seq.* (Counts I and II), unjust enrichment (Count III), fraudulent misrepresentation by omission (Count IV), fraud in the inducement (Count V), negligent misrepresentation by omission (Count VI), breach of the implied covenant of good faith and fair dealing (Count VII), breach of contract (Count VIII), and civil conspiracy (Count IX) [*Id*. ¶¶ 150–241].

On November 18, 2020, Judge Corker granted in part and denied in part Defendants' motion to dismiss [Doc. 185]. He dismissed Counts I and VIII [*Id*. at 50]. In addition, he found Plaintiff Moore's, Plaintiff Ryan Spado's, and Plaintiff Laura Spado's claims under Counts I, II, III, IV, V, VI, and IX were barred by the statute of limitations [*Id*.].

On March 13, 2020, Plaintiffs disclosed Alec Fahey ("Mr. Fahey") as their expert witness [Doc. 152-1]. Mr. Fahey is a certified public accountant, a certified fraud examiner, and is certified in financial forensics [*Id*. at 4]. He is "a member of the American Institute of Certified Public Accountants and to the Association of Certified Fraud Examiners" [*Id*.]. "[Mr. Fahey's] professional background includes over 26 years of experience in financial and accounting

investigations" and "8 years of experience in tax compliance, auditing, and financial reporting conducted in accordance with Generally Accepted Auditing Standards and Generally Accepted Accounting Principles" [*Id.*]. He has also "conducted and managed the accounting and financial evaluation aspects of many litigation and insurance matters related to the measurement of business damages, financial impact analysis, as well as financial fraud investigations" [*Id.*]. In addition, he has been the project manager and a participant in financial investigation assignments, including those involving rental property and real estate [*Id.*].

Mr. Fahey states that Plaintiffs asked him "to determine whether alter ego and control factors [he] analyzed establish, from a financial and accounting standpoint, that the Defendants are alter ego of each other and whether Central Florida Investments, Inc. controlled the other Defendants" [*Id.* at 4]. He identifies Defendants as Central Florida Investments, Inc. ("Parent"), Westgate Resorts, Inc. ("GP"), Westgate Resorts, Ltd., CFI Resorts Management, Inc. and Westgate Marketing, LLC [*Id.*].[2] Mr. Fahey identifies the documents he reviewed—most of which are public records because "Defendants have not produced financial and other records that may be relevant to establishing financial relationships" [*Id.* at 4–5]. He summarizes his opinions:

> Documents reviewed support control factors that Central Florida Investments, Inc., through an integrated management team and common employees, dominates and controls the business practices and daily operations of the Defendants and their destiny, all acting as a single economic entity, and they do not exist as separate entities for purposes of jurisdiction.
>
> Defendants are alter ego and interdependent of each other. Their operations, assets and third- party agreements are commingled, are held jointly and severally liable for their debts, and maintain a shared identity or a unity of interest in their proprietary business practices and processes, marketing promotions, goodwill and their business brand.

---

[2]     Mr. Fahey states that he did not consider Defendant Westgate Vacation Villas, LLC "due to lack of sufficient data" [Doc. 152-1 p. 4].

4

> Defendants, through the same common management team and employees, jointly controlled the development, operations, sales & marketing and management of owners' services of the Westgate Smoky Mountain Resort and its home-owners association. The Westgate Smoky Mountain Resort, operates as part of the same shared identity or proprietary business of "Westgate Resorts" brand name, collectively owned by the Defendants and other commonly owned entities.

[*Id*. at 7].

## II.     POSITIONS OF THE PARTIES

Defendants move to exclude Mr. Fahey's opinions pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 609 U.S. 579 (1993) [Doc. 152]. First, they assert that he is not qualified [Doc. 153 pp. 7–8]. Second, Defendants contend that his "sole opinion is a legal conclusion" [*Id*. at 6]. Next, they claim that he ignored Tennessee law and that he did not employ a valid methodology [*Id*. at 8–14]. Lastly, Defendants state that the basis for his opinions are inadequate and that his opinions are unreliable [*Id*. at 14–16].

Plaintiffs respond that Mr. Fahey is qualified to render his opinions, noting that "[h]e is a certified public accountant, a certified fraud examiner, and is certified in financial forensics" [Doc. 167 p. 12]. In addition, Plaintiffs state that "[e]xperts, such as Mr. Fahey, are routinely permitted to opine on alter ego issues and fraudulent transactions based on their expertise and analysis as . . . forensic accountant[s]" [*Id*. at 14 (citations omitted)]. And because "he considered and relied on volumes of complex documents and financial records to arrive at his opinions[,]" Plaintiffs claim that "[h]is experience and ability to follow the maze of business records to understand ownership and structure of the Defendants will aid the Court and the jury" [*Id*. at 15].

5

They state that his opinions are reliable and argue that Defendants ignore the relevant law [*Id*. at 18–22].[3] Any remaining arguments, Plaintiffs contend, lack merit [*Id*. at 22–23].

Defendants filed a reply challenging the relevancy of Mr. Fahey's opinions [Doc. 171 pp. 2–4].[4] They maintain that Mr. Fahey is not qualified because "he is a forensic accountant, who admits he did not review any accounting or financial records, and who admits he is offering a legal conclusion under Tennessee law without reviewing or considering Tennessee law" [*Id*. at 7]. Defendants claim that they accurately stated the applicable standard to determine whether companies are alter egos and that Plaintiffs have mischaracterized the law [*Id*. at 12–14]. Defendants state that the basis for Mr. Fahey's opinions are not reliable and are speculative [*Id*. at 14–15]. Further, they argue that his opinions are not helpful [*Id*. at 15–16].

## III.  STANDARD OF REVIEW

"[Rule] 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

---

[3]     Plaintiffs address the circumstances that subject a parent company to personal jurisdiction [Doc. 167 p. 19], and Defendants reply thereto [Doc. 171 pp. 10–12]. On November 18, 2020, after the parties' briefing, Judge Corker denied Defendants' motion to dismiss for lack of personal jurisdiction [Doc. 185]. The Court therefore need not address the parties' arguments about personal jurisdiction.

[4]     During the hearing, the Court inquired if Mr. Fahey's opinions are material to class certification. To the extent Plaintiffs are not relying on Mr. Fahey's opinions to support their motion for class certification, Defendants noted that a *Daubert* ruling would not be necessary at this time. Plaintiffs clarified that they are relying on the entirety of Mr. Fahey's expert report to show that there are common questions to the class. Given Plaintiffs' representation, Defendants stated that a *Daubert* ruling is necessary at this time. The Court therefore finds it appropriate to rule on Defendants' objections.

6

opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)    the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

    (d)    the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[5] The Supreme Court of the United States stated in *Daubert* that a district court, when evaluating evidence proffered under Rule 702, must act as a gatekeeper, ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589.

"Although *Daubert* centered around the admissibility of scientific expert opinions, the trial court's gatekeeping function applies to all expert testimony, including that based upon specialized or technical, as opposed to scientific, knowledge." *Rose v. Sevier Cnty.*, No. 3:08-CV-25,

---

[5] Rule 702 was amended on December 1, 2023, after the parties completed briefing on the motion. The Court utilizes the current version of Rule 702 because it governs "insofar as just and practicable, all proceedings then pending." Prop. Ams. to the Fed. R. Evid., 344 F.R.D. 850, 851. *See also United States v. Candelaria*, No. 22-CR-767, 2023 WL 8185932, at *1 n.1 (D.N.M. Nov. 27, 2023) (applying amendment before the effective date of the amendment because the trial was scheduled to occur after the effective date); *Andrews v. Brethren Mut. Ins. Co.*, No. 4:19-cv-01107, 2023 WL 660710, at *6 (M.D. Pa. Oct. 12, 2023) (taking "heed of the forthcoming changes so as to avoid the misapplication of Rule 702 identified by the Advisory Committee"). But the result would be the same regardless of whether the Court applied the current or prior version of Rule 702. The changes to the rule are not substantive. *Nash-Perry v. City of Bakersfield*, No. 118CV01512, 2023 WL 8261305, at *13 (E.D. Cal. Nov. 29, 2023). Rather, "[t]he amendment clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000--requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard." Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

7

2012 WL 6140991, at *4 (E.D. Tenn. Dec. 11, 2012) (citing *Kumho Tire Co.*, 526 U.S. at 138–39). "[A] party must show, by a 'preponderance of proof,' that the witness will testify in a manner that will ultimately assist the trier of fact in understanding and resolving the factual issues involved in the case." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 970–71 (M.D. Tenn. 2002) (quoting *Daubert*, 509 U.S. at 593–94), *aff'd by* 89 F. App'x 927 (6th Cir. 2003). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10.

"District courts generally have 'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Madej v. Maiden*, 951 F.3d 364, 374 (6th Cir. 2020) (quoting *Kumho Tire*, 526 U.S. at 152). Decisions by the district court are thus reviewed for an abuse of discretion. *See id.* (citing *Kumho Tire*, 526 U.S. at 142). "This deferential standard makes sense because *Daubert* establishes a 'flexible' test that considers many indicia of reliability[,]" and relevance will depend "on the particular science and the particular scientist before the court." *Id.* (citing *Kumho Tire*, 526 U.S. at 150).

With respect to expert testimony at the class certification stage, recently, the United States Sixth Circuit Court of Appeals joined the majority view by finding, "If challenged expert testimony is material to a class certification motion, the district court must demonstrate the expert's credibility under *Daubert*." *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 253 (6th Cir. 2024). The rationale is that "[c]lass certification requires the plaintiffs to provide 'evidentiary proof' that they meet the elements of Rule 23," and unreliable expert testimony "cannot 'prove' that the Rule 23(a) prerequisites have been met 'in fact' through acceptable evidentiary proof." *Id.* (citation omitted). In other words, to the extent the expert's opinions do not pass muster under *Daubert*, the

plaintiffs cannot establish "the Rule 23(a) prerequisites." *Id.* (quoting *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015)).[6]

## IV.    ANALYSIS

The Court finds Mr. Fahey is qualified to render his opinions. The Court will exclude his legal conclusions, but the Court finds that his remaining opinions are admissible under Rule 702.

### A.    Mr. Fahey's Qualifications

Defendants state that "[Mr.] Fahey is a forensic accountant who did not analyze a single accounting-related document and whose sole opinion is a legal conclusion that Defendants are all alter egos of one another" [Doc. 153 p. 1]. They argue that Mr. Fahey could not explain why Plaintiffs asked him to render his opinions [*Id.* at 5]. According to Defendants, "Mr. Fahey has never before offered opinions without reviewing accounting or financial records" [*Id.* at 7–8 (citation omitted)]. Defendants state that since his work did not involve forensic accounting, "Plaintiffs cannot meet their burden to establish that Mr. Fahey is qualified to offer his opinion because they cannot establish that his qualifications provide a basis to answer the specific question, that his supposed specialized knowledge is more than a subjective belief, or that it is more than a summary of information from the parties" [*Id.* at 8 (citations omitted)].

Plaintiffs respond that Mr. Fahey is qualified because "[h]e is a certified public accountant, a certified fraud examiner[,] and is certified in financial forensics" [Doc. 167 p. 12]. They claim that "[h]e has testified on exactly these matters at trial as an expert regarding the issues of corporate alter ego, corporate independence, and dominance and control of a corporation" [*Id.* (citation omitted)]. "Mr. Fahey's qualifications serve the purpose contemplated by *Daubert*—to dissect and

---

[6]      The Sixth Circuit's decision was issued after the parties filed their briefs. To the extent the parties argue otherwise [*see, e.g.*, Doc. 167 pp. 6–7], the Sixth Circuit's decision is dispositive of this issue.

explain the meaning of voluminous business and financial records and what it means for the Court and to the jury in understanding the relationships, power and control between all Defendants" [*Id*. at 12–13]. Plaintiffs state, "Defendants' suggestion that he did not review a single financial or accounting record of Defendants is misleading" [*Id*. at 13 (citation omitted)]. They also accuse Defendants of "misquot[ing] and mischacteriz[ing] deposition testimony in numerous places" [*Id*.]. Plaintiffs state that "[e]xperts on complex financial issues are routinely admitted by courts" [*Id*. (citations omitted)]. In support of their position, Plaintiffs rely on Mr. Fahey's Declaration, which generally discusses his testimony in a previous case [Doc. 167-3].

Defendants reply "that Mr. Fahey's potential expertise is as a forensic accountant, and whatever Mr. Fahey has done here is not within the scope of his potential expertise as a forensic accountant" [Doc. 171 p. 7]. "By his own admission," Defendants claim, "he did not look at any financial or accounting records" [*Id*.] Further, Defendants assert that he did not identify "any 'generally accepted accounting principles' that involve 'tracing business records'" [*Id*. (emphasis omitted)]. According to Defendants, Plaintiffs' reference to another matter in which Mr. Fahey was permitted to testify, "only highlights why Mr. Fahey is not qualified in this case, because in this case, he did not review any particular accounting transactions, and is not opining on whether the transaction was arm's length or not" [*Id*. at 8]. And "Mr. Fahey testified under oath[] that he did not review any accounting records" [*Id*. at 9]. Defendants argue that unlike the cases Plaintiffs rely on, Mr. Fahey did not utilize his financial accounting knowledge [*Id*. at 9–10].

Rule 702 requires that experts have "knowledge, skill, experience, training, or education[.]" The United States Court of Appeals for the Sixth Circuit has explained that "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."

*Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). "[Courts] take a liberal view of what 'knowledge, skill, experience, training, or education' is sufficient to satisfy the requirement." *Bradley v. Ameristep, Inc.*, 800 F.3d 205, 209 (6th Cir. 2015) (quoting *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000)).

The Court finds Mr. Fahey qualified to render his opinions in this case. Mr. Fahey has "over 26 years of experience in financial and accounting investigations" and has over "8 years of experience in tax compliance, auditing and financial reporting conducted in accordance with Generally Accepted Auditing Standards and Generally Accepted Accounting Principles" [Doc. 152-1 p. 4]. As part of his work, he has "conducted and managed the accounting and financial evaluation aspects of many litigation and insurance matters related to the measurement of business damages, financial impact analysis, as well as financial fraud investigations[,]" which "include[es] . . . alter ego, sham transactions, economic substance and arm's length transactions" [*Id*.]. During his deposition when asked about his alter ego analysis, Mr. Fahey testified, "I've been doing this work for many years. I have studied, I've taken courses, and I have developed from personal education and outside education [about] this analysis" [Doc. 152-2 pp. 21–22].

Defendants' primary argument is that Mr. Fahey "did not look at any financial or accounting records" [Doc. 171 p. 7]. But Plaintiffs contend that "Defendants provided few, if any, financial documents for [him] to review" [Doc. 167 p. 13]. And, as Plaintiffs point out, Mr. Fahey did "review[] numerous financial records of the Homeowners' Association, which gave a financial picture of the Defendants and their [alleged] commingling of funds" [*Id*. (citing Doc. 152-1 pp. 19–20)]. Indeed, in section six of his report, he discusses his review of the audited financial statements from 2008 to 2018 of the Westgate Smoky Mountain Resort at Gatlinburg Owners Association, Inc. (the "Association") [Doc. 152-1 pp. 19–21]. According to Mr. Fahey, they

11

"reflect millions of dollars in intercompany transactions showing substantial financial interdependence between the Association and Defendants Westgate Resorts, Ltd, and CFI Resorts Management Inc." [*Id*. at 19]. During his deposition, Mr. Fahey acknowledged that Defendants' accounting records had not been provided to him, but he testified "there are documents that make up the financial records which include agreements, which includes intercompany agreements, which included third-party agreements, contracts" [Doc. 152-2 p. 12]. And he reviewed such documents [*See* Doc. 152-1 pp. 4–7].

Considering the liberal view of what "knowledge, skill, experience, training, or education" is sufficient to satisfy Rule 702, the Court finds Mr. Fahey is qualified to render his opinions.

### B.    Mr. Fahey's Alleged Legal Conclusion

According to Defendants, "Mr. Fahey's formal, written opinion is that 'Defendants are alter egos and interdependent of each other'" [Doc. 153 p. 6 (citing Doc. 152-1 p. 7)]. They assert that this opinion is an inadmissible legal conclusion [*Id*.]. "In fact," Defendants state, "Plaintiffs objected to the question [during Mr. Fahey's deposition] as calling for a 'legal conclusion'" [*Id*. (citation omitted)]. They also submit that "given the applicable standard for alter ego, . . . the relevant questions to resolve the issue of alter ego are well within the jury's common understanding, and for that reason, whether Defendants were alter egos is not a proper topic for expert opinions" [*Id*. at 7].

Plaintiffs respond, stating that Mr. Fahey did not offer legal conclusions, but instead, he discusses certain facts related to Defendants' structures and transactions [Doc. 167 p. 12]. "Experts, such as Mr. Fahey," Plaintiffs contend, "are routinely permitted to opine on alter ego issues and fraudulent transactions based on their expertise and analysis as a forensic accountant"

[*Id*. at 14 (citations omitted)]. Plaintiffs argue that experts are allowed to embrace ultimate issues [*Id*. at 17].

Defendants filed a reply that reiterates their point that "the only opinion Mr. Fahey offers is a legal conclusion that Defendants are alter egos" [Doc. 171 p. 6]. They also reiterate that Plaintiffs' counsel objected during Mr. Fahey's deposition when defense counsel asked questions about alter ego [*Id*. (citation omitted)]. And while Plaintiffs state that Mr. Fahey merely opines about factual issues, Defendants state that "Plaintiffs' argument completely ignores several Sixth Circuit opinions prohibiting expert testimony on the law or legal conclusions, particularly if it is likely to contradict the Court's instructions to the jury" [*Id*.].

Rule 704 requires that an expert's testimony be helpful to the jury. Fed. R. Evid. 704(a). Legal conclusions are not helpful because they "do[] little more than tell the jury what result to reach[.]" *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). Another problem with an expert testifying to a legal conclusion is that it "convey[s] the witness' unexpressed, and perhaps erroneous legal standards to the jury." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150–51 (6th Cir. 1985). "An expert testifies to a legal conclusion when they 'define[] the governing legal standard or appl[y] the standard to the facts of the case." *Iannone v. AutoZone, Inc.*, 344 F.R.D. 319, 330 (W.D. Tenn. 2023) (quoting *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 959 (E.D. Mich. 2018)) (alterations in original); *see also Berry*, 25 F.3d at 1353 ("It is the responsibility of the court, not testifying witnesses, to define legal terms.").

Mr. Fahey's opinion that Defendants are alter egos is a legal conclusion. *See Innovation Ventures, L.L.C. v. Custom Nutrition Lab'ys, L.L.C.*, No. 4:12-CV-13850, 2021 WL 12255004, at *11 (E.D. Mich. Sept. 29, 2021) ("[T]he Court will not permit [the expert] to offer legal

13

conclusions. [The expert] may not testify as to the applicable legal standard, nor may he offer conclusions about whether the [d]efendants are alter egos of each other or merely affiliates under the law of Texas."); *In re Centrix Fin., LLC*, No. 09-CV-01542, 2015 WL 3523399, at *1 (D. Colo. June 3, 2015) ("Plaintiffs specifically challenge [the expert's] conclusion that Mr. Sutton was the alter ego of Centrix as an impermissible legal conclusion. . . . The Court agrees. The ultimate conclusion that Mr. Sutton was Centrix's alter ego is impermissible." (citing cases)); *Lim v. Miller Parking Co.*, 526 B.R. 202, 217 (E.D. Mich. 2015) ("Likewise, the 'opinion' . . . that Miller Detroit operated as an *alter ego* of Miller Chicago will be excluded as an improper legal conclusion.").[7] Indeed, when defense counsel asked Mr. Fahey what he meant by "alter ego," Plaintiffs' counsel objected on the basis of it calling for a legal conclusion [Doc. 152-2 pp. 3–4].

Yet, Plaintiffs contend that "Mr. Fahey is not offering legal opinions here: he is providing context and explaining the significance of certain facts related to Defendants' corporate structure, transactions, and the true nature of whether these entities are separate or actually one-in-the-same" [Doc. 167 p. 12]. Defendants argue that "the relevant questions to resolve the issue of alter ego are well within the jury's common understanding" [Doc. 153 p. 7].

"An expert may testify to the facts supporting a legal conclusion without testifying about the ultimate legal conclusion." *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 944 (E.D. Mich. 2014) (citation omitted). Hence, Mr. Fahey may discuss the significance of certain facts that are indicative of Defendants' alleged alter ego. The Court finds such testimony helpful. *See Titan*

---

[7]     Plaintiffs cite to several cases in their response [Doc. 167 pp. 12–13], but none of them stand for the proposition that an expert may testify that the defendants are alter egos. And in *Grayiel v. AIO Holdings, LLC*, No. 315CV00821, 2019 WL 2372901 (W.D. Ky. Mar. 15, 2019), *report and recommendation adopted*, No. 3:15-CV-821, 2019 WL 2372899 (W.D. Ky. Apr. 29, 2019), the expert opined that the defendants were alter egos, but the court did not reference this opinion in its analysis. *See id*. at *3–4.

14

*Feeding, LLC v. Corey Cattle Co., LLC*, No. 19-CV-02541, 2023 WL 2743277, at *7 (D. Colo. Mar. 31, 2023) (finding that the expert may testify "that indicia of the alter ego criteria exists" because it was "not equivalent to an opinion that the legal criteria to determine whether an alter ego exists have been satisfied" (citation omitted)); *In re Centrix Fin., LLC*, 2015 WL 3523399, at *1 (finding that the expert may not testify to the legal conclusion that alter ego existed but he was "free to testify about the significance of certain events as it relates to [company's] failure to observe corporate formalities" (citation omitted)); *Lim*, 526 B.R. at 217 (acknowledging that "[t]estimony about the significance of certain transactions and their conformance (or lack of conformance) with prudent and customary practices of corporate governance is permissible"); *Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp. 2d 845, 853 (E.D. Mich. 2010) (concluding that the expert "may testify as to issues of structure and function of the defendants compared to comparable practices in the industry, but he may not provide opinions on the consequences of a liability finding against the defendants").[8]

The Court therefore finds Defendants' objections well taken in part. Mr. Fahey cannot testify that Defendants are alter egos.

### C.      Mr. Fahey's Methodology

Defendants claim that Mr. Fahey did not employ a methodology [Doc. 153 pp. 8–9]. "[T]o the extent he employed any methodology," Defendants assert that "it was the wrong methodology because it directly contradicts Tennessee law" [*Id*. at 8]. They argue that "[t]he factors that Mr. Fahey considered . . . are not formatted as a list of factors, but are instead conclusory statements

---

[8]      Plaintiffs also note that Mr. Fahey's organizational chart is helpful and admissible under Rule 1006 [Doc. 167 p. 15]. Defendants counter that it is not admissible but state that "[t]he Court should not rule on Plaintiffs' apparent proffer of Mr. Fahey's chart under Rule 1006" [Doc. 171 p. 16]. The admissibility of the chart may be litigated at a later date.

that Defendants in this case engaged in conduct that met whatever subject standard he was applying" [*Id*. at 10 (citation omitted)]. Defendants contend "that Mr. Fahey has simply parroted all the same arguments Plaintiffs made in opposition to Non-Resort Defendants' Motion to Dismiss for Lack of Personal Jurisdiction" [*Id*. at 11 (citation omitted)]. According to Defendants, Mr. Fahey's methodology "was subjectively made-up for this litigation" [*Id*. at 14].

Plaintiffs respond that "Mr. Fahey's job is not to choose the correct law to apply or to argue veil-piercing law vs. alter ego law[,]" but instead, his method was to review records and determine Defendants' relationship [Doc. 167 p. 16]. Plaintiffs assert that "Defendants ignore the relevant alter ego analysis and jump to Tennessee law on piercing the corporate veil" [*Id*. at 20 (citation omitted)].[9]

Defendants reply that they "accurately stated the applicable standard to hold Central Florida Investments, Inc., or Westgate Resorts, Inc. liable, whether under an alter ego (the phrase alleged by plaintiffs) or under general concepts of veil-piercing" [Doc. 171 p. 13]. They accuse Plaintiffs of "mischaracteriz[ing]" Tennessee law [*Id*.]. According to Defendants, "Mr. Fahey did not consider any of the[] [relevant] factors, [and] instead focus[ed] only on common ownership and control" [*Id*. at 14 (citation omitted)]. "Because Mr. Fahey's subjective 'methodology' that he applied to reach his pre-determined conclusion is inconsistent with applicable Tennessee law," Defendants assert that "his 'methodology' is invalid" [*Id*. (citation omitted)].

To be admissible, Mr. Fahey's opinions must be reliable. Generally, the factors relevant in evaluating the reliability of the testimony include: "whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the

---

[9]      Plaintiffs also address the appropriate considerations for assessing personal jurisdiction [Doc. 167 pp. 19–20], and Defendants addressed Plaintiffs' arguments in their reply [Doc. 171 pp. 10–12]. The Court need not address these arguments [*See supra* p. 6 n.3].

16

method is generally accepted within the scientific community." *Coffey*, 187 F. Supp. 2d at 970–71 (citing *Daubert*, 509 U.S. at 593–94). But these factors do not constitute a definite checklist or test. *Kumho Tire Co.*, 526 U.S. at 138–39 (citing *Daubert*, 509 U.S. at 593). Instead, the "inquiry is 'a flexible one.'" *Id.* at 150 (quoting *Daubert*, 509 U.S. at 593); *see also Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 152 (3d Cir. 1999) (explaining that these factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted"). Indeed, *Daubert's* reliability factors may not be useful in the context of addressing non-scientific opinions. *First Tenn. Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001).

Defendants argue that Mr. Fahey did not utilize a methodology [Doc. 153 pp. 8, 9]. But Plaintiffs counter that Mr. Fahey "investigate[d] complex business records from an accounting and forensic perspective and dr[e]w[] logical conclusions and opinions about the connectedness and relationships between the entities in question[]" [Doc. 167 p. 16]. Courts have found similar methods reliable. *See Grover v. BMW of N. Am., LLC*, No. 1:19-CV-12, 2022 WL 205249, at *7 (N.D. Ohio Jan. 24, 2022) ("Although somewhat conclusory, [the expert's] application of his knowledge and experience to his examination of documents . . . utilizes a reliable methodology sufficient to satisfy the Court's gatekeeping function." (citation omitted)); *Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2020 WL 7318087, at *4 (E.D. Tex. Dec. 11, 2020) ("Because [the expert] utilized a reliable methodology in reaching his conclusion—namely, coupling his experience and knowledge with a review of various internal documents—the Court declines to exclude this opinion."). The Court finds so here.

Yet, Defendants argue that Mr. Fahey's methodology "directly conflicts with Tennessee law" [Doc. 153 p. 8]. Specifically, Defendants argue that Mr. Fahey's opinions do not address the elements to pierce the corporate veil [Doc. 153 pp. 11–12]. Plaintiffs contend that "Mr. Fahey's

17

[r]eport and opinions analyze the primary feature of the analysis (control) and most of the factors"
[Doc. 167 p. 22].

In 2025, the Tennessee Supreme Court clarified the test to "hold one corporation liable for the debts of another[.]" *Youree v. Recovery House of E. Tenn., LLC*, 705 S.W.3d 193, 208, 211 (Tenn. 2025) (quoting *Cont'l Bankers Life Ins. Co. of the S. v. Bank of Alamo*, 578 S.W.2d 625, 631 (Tenn. 1979)). There are three elements to the test:

> (1)  The parent corporation, at the time of the transaction complained of, exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will, or existence of its own.
>
> (2)  Such control must have been used to commit fraud or wrong, to perpetuate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of a third parties' rights.
>
> (3)  The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Id*. at 209 (quoting *Cont'l Bankers Life Ins. Co. of the S.*, 578 S.W.2d at 631). In addition, there are factors, commonly referred to as the *Allen* factors, that the Supreme Court of Tennessee said "may be relevant to the existence of one or more of the three *Continental Bankers* elements":

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

18

*Id.* at 210 (footnote omitted). It further explained that "the eleven circumstances listed in *Allen*, or any other relevant circumstance, may be used in determining whether the three required elements from *Continental Bankers* have been established." *Id.* at 211 (citation omitted). "As a general matter, not every such circumstance need be present to establish the three elements, nor will any single circumstance be conclusive." *Id.*

During his deposition, Mr. Fahey testified that different states apply different factors, and that he utilized the factors he understood to be applicable, but he did not specifically look at the list of factors that would apply in Tennessee [Doc. 152-2 p. 22]. Mr. Fahey nevertheless discusses several of the *Allen* factors [*See* Doc. 152-1 pp. 8–9], and he references facts regarding the alleged Parent's control, including (1) common ownership that conducts business as one company, (2) a partnership agreement that the Parent executed showing that the Parent governs the subsidiaries, (3) "[the] Parent exercises control of the Defendants'/subsidiaries' income or losses" and "guaranteed payments and distributions of subsidiaries' available cash to [the] Parent[,]" (4) the Parent gave Westgate Resorts, Inc., "authority to manage the business and execute documents[,]" but the Parent limited that authority such that Westgate Resorts, Inc. cannot make "major decisions," such as selling or disposing property, (5) "[the] Parent maintains an active and integrated management team, or common officers and common employees exerting control and performing Defendants' daily operations[,]" (6) "[the] Parent engages in the same business enterprise and maintains a shared identity with the Defendants and the commonly owned resort developers and associations as they collectively own their proprietary business practices and processes, marketing promotions, goodwill, and their brand name[,]" (7) "[the] Parent, Defendants and all the commonly owned resort developers use and commingle the same assets[,] including goodwill and the business brand name acting as a single economic venture, resulting in confusion

19

in the records whether the entities are separate[,]" (8) "[the] Parent and Defendants comingle their operations, or the use of another commonly owned entity to produce the services for another related entity[,]" (9) "[the] Parent accepts responsibility of other Defendants' liabilities, or [the] Parent and other Defendants were held jointly and severally liable[,]" (10) "Parent identified Westgate Resorts as its division" and it "own[s] the Westgate Resorts trademark brand name[,]" and (11) "[Defendants] share the same address and various telephone numbers" [Doc. 152-1 pp. 8–9].

The Court therefore does not find Mr. Fahey's opinions to be so lacking in reliability as to render it to be the "exception to the rule." *See Brackett v. Columbia Gulf Transmission, LLC*, No. 1:20-CV-00168, 2024 WL 3205416, at *8 (W.D. Ky. June 27, 2024) ("'[R]ejection of expert testimony is the exception, rather than the rule,' and '[a]ny doubts regarding the admissibility of an expert's testimony should be resolved in favor of admissibility.'" (quoting *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008)) (alterations in original). Indeed, "[e]ven 'shaky' expert testimony should be admitted, and "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' should be employed to attack the testimony." *Elliot v. Humana Inc.*, No. 3:22-CV-00329, 2025 WL 953009, at *2 (W.D. Ky. Mar. 28, 2025) (quoting *Daubert* 509 U.S. at 596) (alteration in original). To the extent Mr. Fahey did not consider certain factors, the Court finds that this objection goes to the weight of his opinion and not to its admissibility. *See Shupe v. Rocket Cos, Inc.*, 752 F. Supp. 3d 689, 719 (E.D. Mich. 2024) (finding that the defendant's argument that the expert should have considered an additional factor "goes to weight" of the evidence (citation omitted)); *Thomas v. Lambert*, 606 F. Supp. 3d 592, 603 (E.D. Mich. 2022) ("Indeed, arguments related to 'contrary evidence' or 'incompleteness' go to the weight of the evidence rather than its admissibility and are, therefore, properly rejected at this juncture." (quoting *United States v. Lang*, 717 F. App'x 523, 536

(6th Cir. 2017)); *EEOC v. Tepro, Inc.*, 133 F. Supp. 3d 1034, 1050 (E.D. Tenn. 2015) ("That the opposing party believes that different data should have been used, additional factors considered, or alternate conclusions reached does not render contrary expert opinions irrelevant and unreliable.").

### D.     The Basis for Mr. Fahey's Opinions

Defendants claim that "Mr. Fahey's work consisted of conducting online research as to public records for various Defendants" [Doc. 153 p. 14 (citations omitted)]. They submit that he did not review Plaintiffs' depositions and that he was not aware several of Defendants' practices that he referenced in his report were common in American business [*Id*. at 14–15]. According to Defendants, Mr. Fahey lacks knowledge about "how business is routinely conducted" [*Id*. at 15]. In addition, Defendants state that Mr. Fahey "relies on unsworn allegations in various lawsuits involving affiliated entities" and "on issues involving the non-party HOA" [*Id*.]. They contend that "[t]he absence of underlying facts or information cannot be considered to be reliable" [*Id*. at 15].

Plaintiffs respond that Mr. Fahey "reviewed the operative [C]omplaint" and that "whether Plaintiffs knew which entities were actually pulling the strings is irrelevant to his opinions" [Doc. 167 p. 22]. "[While Defendants] claim that some of the items listed by Mr. Fahey . . . are common practices among related entities[,]" Plaintiffs contend that "Defendants ignore the primary factors of common ownership and control listed by Mr. Fahey" [*Id*.]. According to Plaintiffs, "The Court or the trier of fact will look at all the evidence and a combination of the factors to make a determination" [*Id*. at 23].

Defendants reply that "the only fact Mr. Fahey culls from these public records is that Central Florida Investment Inc. owns 99% of Westgate Resorts, Ltd. and other entities" [Doc. 171 p. 14]. They claim that this fact is undisputed [*Id*.]. Defendants argue that "the documents on which

Mr. Fahey relies on do not support the sweeping arguments that Plaintiffs make or the opinion that Mr. Fahey parroted from them" [*Id*. at 15].[10]

Mr. Fahey details the items that he reviewed to prepare his opinions [Doc. 152-1 pp. 5–7]. During his deposition, Mr. Fahey stated that he was not sure if it was common for related entities to share a brand name but that it was possible [Doc. 152-2 p. 38]. Defendants asked whether it was "common for related entities to use one merchant processing account to accept payments," and Mr. Fahey responded that it was possible, but it would create a problem with separating the operations [*Id*. at 38–39]. It is well established that "mere weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1224 (6th Cir. 2025) (quoting *In re Scrap Metal*, 527 F.3d at 530) (omission in original). The Court therefore finds Defendants' challenges are not grounds for excluding Mr. Fahey. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 ("[W]e will generally permit testimony based on allegedly erroneous facts when there is some support for those facts in the record."); *see also In re Katrina Canal Breaches Consol. Litig.*, No. 10-866, 2012 WL 4328354, at *1 (E.D. La. Sept. 20, 2012) (concluding that *Daubert* motions are not appropriate when they attack "the underlying facts upon which [an expert's] opinion was based" because "[t]hat approach is not contemplated under a *Daubert* challenge").[11]

---

[10] Defendants also argue that "Plaintiffs cross the line from speculation to deception, and falsely state that Central Florida Investments, Inc., has stipulated and admitted that it 'dominates and controls the acts and practices of Westgate Resorts, Ltd.'" [Doc. 171 p. 15 (quoting Doc. 167 p. 9)]. They acknowledge that they "entered into a stipulated civil judgment in resolving the complaint," but they claim that they "did not stipulate or admit to the quoted allegation" [*Id*.]. Mr. Fahey, however, did not make this statement [*See* Doc. 152-1 p. 12].

[11] As for Defendants claim that Mr. Fahey's conclusions are wrong [*see* Doc. 153 p. 14], their disagreement with Mr. Fahey's conclusion is not a ground to exclude him. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 529 ("[A] determination that proffered expert testimony is reliable does not indicate, in any way, the correctness or truthfulness of such an opinion."); *Daubert v.*

The Court declines to exclude Mr. Fahey's testimony on these grounds.[12]

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART**

Defendants' Motion to Exclude Opinions of Alec Fahey [**Doc. 152**].

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge

---

*Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("But the test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology.").

[12]    Defendants also argue in part VII of their brief that "Mr. Fahey's opinions are unreliable" [Doc. 153 p. 16 (emphasis omitted)]. But this paragraph repeats their other arguments in support of their request to exclude Mr. Fahey. The Court therefore need not separately address it.

23