UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| MARILYN MOORE et al., individually and on behalf of all others similarly situated, | ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:18-CV-00410-DCLC-JEM |
| WESTGATE RESORTS, LTD., et al., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Class Certification and Appointment of Class Counsel [Doc. 124] Plaintiffs' Memorandum of Law [Doc. 126], Defendants' Response in Opposition [Doc. 146], and Plaintiffs' Reply [Doc. 157]. For the reasons herein, the Court will deny Plaintiffs' motion with leave to renew.

### I. BACKGROUND

Defendants sell timeshare units to vacationers at Westgate Smokey Mountain Resort in Gatlinburg, Tennessee, and Plaintiffs Marilyn Moore, Ryan and Laura Spado, Ellen Gilliland,[1] Gerold Gallegos, Deborah Campbell, Brian and Danyelle Miller, and Tonya Melfi, at various points, bought timeshares from Defendants at this resort. [Third Am. Compl., Doc. 98, ¶¶ 39–40, 61, 68, 79, 90, 99, 107]. Plaintiffs allege that Defendants used "high-pressure sales tactics" to snooker them into purchasing their timeshares. [*Id.* ¶ 36; *see id.* at 1–2, 13–14 ]. Specifically, they claim that Defendants invite vacationers like themselves to tour the resort, but the tours turn into multi-hour sales pitches "designed to ensure that they do not leave without purchasing

---

[1] Plaintiffs have notified the Court of the death of Plaintiff Larry Gilliland. [Pls.' Notice, Doc. 197].

a timeshare property." [*Id.* ¶ 40]. During one of these sales pitches, for example, Defendants' agents allegedly refused to allow Mr. Gallegos and Ms. Campbell to leave to take prescription medications, and they "eventually succumbed to the high-pressure tactics" as the "closing process stretched beyond 10:00 p.m." [*Id.* ¶¶ 88–89].

According to Plaintiffs, Defendants "train[] [their] agents to make misrepresentations and omissions during the sales process." [*Id.* ¶ 31]. For instance, Defendants' agents allegedly tell prospective purchasers that they can use their timeshare units anytime so long as they book them twenty-four hours in advance, but after purchasing a unit, purchasers are unable to book their units even when they give as much as twelve months' notice. [*Id.* ¶¶ 44–45]. Plaintiffs claim that the units are actually unavailable to purchasers—and that Defendants know they are unavailable but do not say so upfront—because Defendants sell them to multiple buyers at a time, rent them to non-owners, use them as model units, and close them for maintenance. [*Id.* ¶ 36].

In short, purchasers "will not be able to use their timeshare purchase as advertised or as would be reasonably expected—or sometimes at all," [*id.*]; instead, they are at the mercy of a "floating use plan," which Defendants do "not adequately describe to timeshare purchasers," [*id.* ¶ 51]. The "floating use plan" allegedly "gives owners the right to use a certain type of unit, subject to availability." [*Id.* ¶ 49]. And although state law requires timeshare developers like Defendants to disclose to purchasers that they have a legal right to rescind their purchase agreements, Plaintiffs allege that Defendants hide these disclosures in a folio, in which they provide purchasers with documentation of their purchase but conceal their right of recission inside a "secret pocket." [*Id.* ¶¶ 2, 36b, 55].

Plaintiffs have now filed a proposed class-action suit against Defendants in this Court, seeking to sue on behalf of themselves and all others similarly situated to them. Plaintiff bring claims against Defendants for violations of the Tennessee Time-Share Act of 1981, Tennessee Code Annotated § 66-32-101 *et seq.* (Counts One and Two), unjust enrichment (Count Three), fraudulent misrepresentation by omission (Count Four), fraud in the inducement (Count Five), negligent misrepresentation by omission (Count Six), breach of the implied covenant of good faith and fair dealing (Count Seven), breach of contract (Count Eight), and civil conspiracy (Count Nine). Defendants moved to dismiss these claims, and the Court granted dismissal of some of them: Counts One and Eight in their entireties and Counts Two, Three, Four, Five, Six, and Nine only as to Ms. Moore, Mr. Spado, and Ms. Spado. [Mem. Op. & Order, Doc. 185, at 50–51].

As to the counts that survived dismissal, Plaintiffs move for class certification under Federal Rule of Civil Procedure 23, and they propose the following class for certification: "All residents of the United States and its territories who purchased from Westgate an All Season 'floating use plan' vacation timeshare property at the Westgate Smoky Mountain Resort at Gatlinburg from September 25, 2008 through the date of class certification." [Pls.' Mem. Supporting Class Certification, Doc. 124-1, at 20]. The parties have now fully briefed Plaintiffs' motion for class certification.

## II. LEGAL STANDARD

Rule 23 governs class-action suits. A class-action suit under Rule 23 is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979), and it "'economiz[es] on the expense of

litigation' by resolving key issues in one stroke," *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 321 (6th Cir. 2025) (quotation omitted). Under Rule 23, the plaintiff must first demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Second, the plaintiff must satisfy one of Rule 23(b)'s three criteria. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Plaintiffs here seek certification under Rule 23(b)(3), which requires "the court [to] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. ANALYSIS

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart*, 564 U.S. at 350–51 (quotation omitted). One of those prerequisites is commonality, i.e., the requirement that the plaintiff must identify "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(3). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" but the plaintiff must do more than show "merely that they have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349–50 (quotation omitted). Rather, the plaintiff must show that the claims "depend upon a common contention . . . that is central to the validity of each one of the claims in one stroke." *Id.* at 350 (quotation omitted). "Commonality drives

4

Case 3:18-cv-00410-DCLC-JEM   Document 218   Filed 09/16/25   Page 4 of 8
PageID #: 8066

the initial Rule 23(a) inquiry," *In re Nissan N. Am., Inc., Litig.*, 122 F.4th 239, 246 (6th Cir. 2024), and over the last two to three years, the Sixth Circuit has expatiated on how district courts must perform a rigorous analysis of Rule 23(a)'s commonality requirement.

A rigorous analysis of the commonality requirement now "turns on whether the court examined the material elements of each claim and determined which ones, if any, yield a common answer." *Id*. Put a little differently, district courts "must walk through each cause of action, identify the relevant elements, and evaluate which elements, if any, submit to common answers." *Id.* at 246–47. This summer, the Sixth Circuit—in *Speerly v. General Motors, LLC*, 143 F.4th 306 (2025), a relatively rare en banc decision—not only reiterated that this element-by-element inquiry controls an analysis of commonality under Rule 23(a) but also applied it to an analysis of predominance under Rule 23(b). *Id.* at 317–335.

So what does that mean for this case? Plaintiffs, in arguing that they meet Rule 23(a)'s commonality requirement, identify the following "common questions," the answers to which, they say, will be the same for every class member:

- Whether the structure and operation of Westgate's floating use scheme provides owners with a reasonable opportunity to use their timeshare;

- Whether, in the course of its uniform sales presentation, Westgate adequately disclosed that its floating use scheme fails to provide owners with a reasonable opportunity to use their timeshare;

- Whether Westgate's uniform sales presentation violates the Tennessee Timeshare Act's prohibition on misleading or deceptive advertising;

- Whether the misrepresentations and omissions constitute common law fraudulent or negligent misrepresentations;

- Whether Westgate's uniform conduct breached its uniform contract and the implied warranty of good faith and fair dealing; and,

5

- Whether, as a result of Westgate's uniform conduct, Plaintiffs and class members have suffered damages (regardless of amount at this point).

[Pls.' Mem. Supporting Class Certification at 23]. These questions—and, by extension, their answers—are too general. They lack any inquiry into which specific elements of Plaintiffs' claims, if any, generate common answers, and they therefore are insufficient to establish commonality under Rule 23(a). *See Speerly*, 143 F.4th at 318 ("A court may not simply ask whether generalized questions yield a common answer. That would undermine the bedrock principle that courts must identify common questions with respect to *concrete elements of each claim*." (emphasis added)).

Again, the pertinent analysis requires "identif[ication] [of] the relevant elements" for each claim and an "evaluat[ion] [of] which elements, if any, submit to common answers." *Nissan*, 122 F.4th at 246–47. Plaintiffs have not performed this analysis. *See Wal-Mart*, 564 U.S. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]."); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) ("The party seeking the class certification bears the burden of proof." (citations omitted)). Ordinarily, a plaintiff's failure to satisfy the commonality or predominance requirements is fatal to a motion for certification. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b). (citation omitted)).

Despite Plaintiffs' deficient showing of commonality and predominance, the Court is loath to deny their request for class certification without giving them leave to incorporate the new legal standards in *Nissan* and *Speerly* into their brief. Plaintiffs could have, and arguably should have, moved to supplement their brief with arguments under *Nissan* and *Speerly*, which

6

undeniably control the issues of commonality and predominance, but the Court can understand why they did not. Through no fault of their own, their motion for certification has been pending for over five years, and the parties have already briefed this case to smithereens, with myriad reply briefs, sur replies, and supplemental briefs. At this point, Plaintiffs undoubtedly expect a ruling on their motion without the need for further briefing, and the Court, in intending to rule on their motion without further delay, recently indicated that it was not inclined to entertain additional briefing. *See* [Mem. Op. & Order, Doc. 202, at 3 ("The parties have fully briefed Plaintiffs' motion for class certification, and the Court is prepared to rule on the motion once United States Magistrate Judge Jill E. McCook addresses the parties' cross motions to exclude expert opinions[.]")]. So, again, the Court can understand why Plaintiffs have not sought to perpetuate this litigation by seeking leave to brief the Court on *Nissan* and *Speerly*.

Further briefing is necessary for another reason. Defendant Westgate Resorts, Ltd., had requested leave to brief the Court on the applicability of the Federal Arbitration Act, ("FAA"), 9 U.S.C. § 1 *et seq.*, to Plaintiffs' motion for class certification because it "began entering into stand-alone arbitration agreements and class action waivers with new purchasers, beginning in February 2018, which affect thousands of putative class members." [Def.'s Mot., Doc. 162, at 2]. The Court denied that request, citing case law showing that it lacked jurisdiction over the putative class members, who are not yet parties before the Court, and deciding that it therefore could not address whether their claims are subject to arbitration at this time. [Mem. Op. & Order, Doc. 202, at 11–13].

In *Speerly*, the Sixth Circuit recognized, as this Court did, that "[f]ederal courts may not resolve the rights of 'third persons not parties to' suit," *Speerly*, 143 F.4th at 335–36 (quoting *Singleton v. Wulff*, 428 U.S. 106, 113 (1976)), but even so, the Sixth described an

7

arbitration agreement as a potential "defense to . . . the class's claims" and stated that Rule 23(a) "applies to . . . 'the defenses of the class.'" *Id.* at 335 (quoting Fed. R. Civ. P. 23(a)(3)). Issues of arbitrability therefore factor into the analysis under Rule 23(a). They can "overwhelm the common [questions] in th[e] class" and can "require the district court to bifurcate the class into the [percentage] who must proceed through arbitration, and the [percentage] who may proceed through trial." *Id.*

To satisfy Rule 23, Plaintiffs must therefore "interpret each arbitration agreement and identify which ones warrant extension to the class's claims against" Defendants. *Id.* Having failed to do so, they are not entitled to class certification on their current motion. But for the reasons that the Court has already mentioned, it will grant them leave to refile their motion for certification so that they at least have the opportunity to comply with Rule 23(a)'s revamped requirements, as the Sixth Circuit has articulated them in *Nissan* and *Speerly*.

## IV. Conclusion

Plaintiffs' Motion for Class Certification and Appointment of Class Counsel [Doc. 124] is **DENIED with leave to renew** in a manner that is consistent with this Memorandum Opinion and Order. Plaintiffs **SHALL** file their renewed motion by **Friday, October 31, 2025**, and Defendants **SHALL** file their response by **Monday, December 15, 2025**. The Court does not require reply briefs or supplemental briefing and will not consider them.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge
